**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY PAUWELS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIT DIGITAL, INC., MIN HU, and ERKE HUANG,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anthony Pauwels ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Bit Digital, Inc. ("Bit Digital" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Bit Digital; and (c) review of other publicly available information concerning Bit Digital.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Bit Digital securities between December 21, 2020 and January 8, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Bit Digital is a holding company that purports to engage in the bitcoin mining business through its wholly owned subsidiaries in U.S. and Hong Kong.

3.      On January 11, 2021, J Capital Research issued a research report alleging, among other things, that Bit Digital operates "a fake crypto currency business" "designed to steal funds from investors." Though the Company claims "it was operating 22,869 bitcoin miners in China," J Capital alleged that "is simply not possible" and stated that "[w]e verified with local governments supposedly hosting the BTBT mining operation that there are no bitcoin miners there."

4.      On this news, Bit Digital's stock price fell $6.27 per share, or 25%, to close at $18.76 per share on January 11, 2021, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Bit Digital overstated the extent of its a bitcoin mining operation; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11.     Plaintiff Anthony Pauwels, as set forth in the accompanying certification, incorporated by reference herein, purchased Bit Digital securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Bit Digital is incorporated under the laws of Cayman Islands with its principal executive offices located in Flushing, New York. Bit Digital's shares trade on the NASDAQ exchange under the symbol "BTBT."

13.     Defendant Min Hu ("Hu") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Erke Huang ("Huang") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Hu and Huang (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Bit Digital is a holding company that purports to engage in the bitcoin mining business through its wholly owned subsidiaries in U.S. and Hong Kong.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on December 21, 2020. On that day, the Company announced its revised third quarter 2020 financial results in a press release that stated:

**Financial Highlights for the Third Quarter 2020**

- Revenue from bitcoin mining business was $7.91 million.

- The number of bitcoins earned from bitcoin mining business was 739.51.

- The number of miners was 22,869, with 16,865 miners   acquired in the third quarter 2020.

- The net income from continuing operations of $0.10 million was all from bitcoin mining business, compared to the net loss of $1.79 million   for the third quarter 2019.

- The net loss from discontinued operations was $0.10 million for the third quarter 2020, as we disposed of peer-to-peer and car rental business in the PRC, compared with the net loss from discontinued operations of $1.22 million for the third quarter 2019.

- The net income was $54 and the earnings per share was $0.00 for the third quarter 2020, compared with the net loss of $3.0 million and loss per share of $0.20 for the same period last year.

**Financial Highlights for the Nine Months 2020**

- Revenue from bitcoin mining business was $8.60 million.

- The number of bitcoins earned from bitcoin mining business was 814.23.

- The number of miners was 22,869, all miners acquired in the nine months 2020.

- The net loss from continuing operations of $0.73 million was all from bitcoin mining business, compared to $1.79 million for the nine months 2019.

- The net loss from discontinued operations was $3.83 million for the nine months 2020, as we provided full impairment on assets for our discontinued peer-to-peer and car rental business in the PRC, compared with the net loss from discontinued operations of $7.68 million for the nine months 2019.

- The net loss was $4.56 million and the loss per share was $0.18 for the nine months 2020, compared with $9.47 million and $0.63 for the same period last year.

*     *     *

As of September 30, 2020, our hash rate reached 1,250 Ph/s. In December 2020, we closed an asset acquisition of 17,996 bitcoin miners with total hash rate of 1,003.5 Ph/s, worth of $13,902,742, at a consideration of issuance of an aggregate of 4,344,711 common shares, par value $0.01 per share, at a per share price of $3.20. The closing of the acquisition increased the Company's total hash rate by approximately 1,003.5 Ph/s, from 1,250 Ph/s to 2,253.5 Ph/s. The average energy efficiency of these miners is 47.45 (+/-5%) joules per terahash (J/TH). With these miners being fully deployed, the total energy efficiency is expected to be decreased from 61.88 (+/-5%) J/TH to 55.33 (+/-5%) by 10.59%, consuming 124 megawatts of power. The total 17,996 miners acquired in December 2020 were comprised of 7,025 Antminer S17+, 9,110 Antminer T17, 195 Antminer S17E, 32 Antminer S17Pro, 105 Antminer S19Pro, 1,429 Whatsminer M20S and 100 Whatsminer M31S.

As of the date of this Report, we had a total of 40,865 miners, including 7,025 Antminer S17+, 195 Antminer S17E, 32 Antminer S17Pro, 105 Antminer S19Pro, 800 Antminer T3, 9,110 Antminer T17, 256 Antminer T17+, 2,200 Whatsminer M10, 4,125 Whatsminer M20S, 16,917 Whatsminer M21S and 100 Whatsminer M31S, spreading over Xinjiang, Inner Mongolia and Sichuan Provinces, PRC and Texas and Nebraska in the United States.

By December 18, 2020, we have earned an aggregation of 1,331.2 bitcoins and recognized unaudited revenues of approximately $16.50 million.

18.    The above statements identified in ¶ 17 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Bit Digital overstated

the extent of its a bitcoin mining operation; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

19.    On January 11, 2021, J Capital Research issued a research report alleging, among other things, that Bit Digital operates "a fake crypto currency business" "designed to steal funds from investors." Though the Company claims "it was operating 22,869 bitcoin miners in China," J Capital alleged that "is simply not possible" and stated that "[w]e verified with local governments supposedly hosting the BTBT mining operation that there are no bitcoin miners there." Specifically, the report stated:

**Fraudulent "mining" operations**

We think the bitcoin business BTBT discloses is completely fraudulent.

In September 2020, BTBT changed its company name from Golden Bull Limited to Bit Digital, Inc. and its ticker from DNJR to BTBT. It announced it would be going into bitcoin mining. But without a Chinese-registered entity, that would not be legal. Companies are required to show a registration document from a domestic legal entity before they can sign a lease or a hosting contract. Yet the company clearly claims that it both operates and leases mining facilities in China[.]

BTBT disclosed that, until September 2020, all its bitcoin mining operations were in China.

"Our mining operations are in Wuhai, Zhundong, Xinlinhot and Sichuan, China."

In China, you have to register with the government to have a data center, and local governments have records of all data centers and bitcoin mining operations. But J Capital contacted the governments of Wuhai, Inner Mongolia, Zhundong, Xinjiang, and Xilinhot, Inner Mongolia. In telephone calls, local government officials of each locality told us they had no bitcoin mining operations and had not heard of Bit Digital.

"Big data, crypto currency, cloud computing parks or data centers—none of these have registered here," said an official of Zhundong.

"There is no bitcoin center here," said an official of Xilinhot.

"There's no bitcoin center here," said an official of Wuhai. "I've never heard of Bit Digital."

\*       \*       \*

**Fake purchases?**

The company says it has been investing in bitcoin miners and uses these miners to mine on behalf of customers: "We will continue to invest in the miners to increase the hash rate capacity, as a percentage of total computing power contributed by all mining pool participants. Our mining operations are distributed in Xinjiang, Inner Mongolia and Sichuan Provinces PRC, and in Nebraska and Texas, United States which was newly launched in September 2020." But how can auditors determine whether mining activity is being conducted?

We spoke with all the major manufacturers in China of bitcoin mining equipment. None had heard of BTBT.

One employee of MicroBT, a Shenzhen-based company from which BTBT reported buying 21,713 machines in 2020, told J Capital that BTBT had not purchased equipment from them. "I have never heard of Bit Digital," he said. We provided the name of the company's former VIE with no better result. Three other MicroBT employees said they were not permitted to discuss customers.

Bitmain, from which BTBT said it bought 256 miners in the first nine months of 2020, drew a blank when we inquired about BTBT. Bitmain supplies roughly 65% of the world market for miners and is unlikely not to know of a company that has purchased more than 41,000 machines in one year—even if the machines were bought second-hand.

We suspect that the capex spent in the first nine months of 2020--$18.8 mln—was simply stolen.

20.    On this news, Bit Digital's stock price fell $6.27 per share, or 25%, to close at $18.76 per share on January 11, 2021, on unusually heavy trading volume.

## <u>CLASS ACTION ALLEGATIONS</u>

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Bit Digital securities between December 21, 2020 and January 8, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate

families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Bit Digital's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Bit Digital shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Bit Digital or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Bit Digital; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

26.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

27.      The market for Bit Digital's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Bit Digital's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Bit Digital's securities relying upon the integrity of the market price of the Company's securities and market information relating to Bit Digital, and have been damaged thereby.

28.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Bit Digital's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Bit Digital's business, operations, and prospects as alleged herein.

29.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bit Digital's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

30.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

31.     During the Class Period, Plaintiff and the Class purchased Bit Digital's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

32.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Bit Digital, their control over, and/or receipt and/or modification of Bit Digital's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bit Digital, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

33.     The market for Bit Digital's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Bit Digital's securities traded at artificially inflated prices during the Class Period.  On January 4, 2021, the Company's share price closed at a Class Period high of $29.27 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Bit Digital's securities and market information relating to Bit Digital, and have been damaged thereby.

34.     During the Class Period, the artificial inflation of Bit Digital's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bit Digital's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Bit Digital and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

35.     At all relevant times, the market for Bit Digital's securities was an efficient market for the following reasons, among others:

(a)     Bit Digital shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Bit Digital filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Bit Digital regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Bit Digital was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

36.     As a result of the foregoing, the market for Bit Digital's securities promptly digested current information regarding Bit Digital from all publicly available sources and reflected such information in Bit Digital's share price. Under these circumstances, all purchasers of Bit Digital's securities during the Class Period suffered similar injury through their purchase of Bit Digital's securities at artificially inflated prices and a presumption of reliance applies.

37.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## <u>NO SAFE HARBOR</u>

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Bit Digital who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

39.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Bit Digital's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

41.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Bit Digital's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Bit Digital's financial well-being and prospects, as specified herein.

43.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Bit Digital's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Bit Digital and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

44.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

45.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Bit Digital's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Bit Digital's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Bit Digital's securities during the Class Period at artificially high prices and were damaged thereby.

47.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Bit Digital was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Bit Digital securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     Individual Defendants acted as controlling persons of Bit Digital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Bit Digital and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 20, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

      and

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Anthony Pauwels*

## SWORN CERTIFICATION OF PLAINTIFF

Bit Digital Inc., **SECURITIES LITIGATION**

I,     Anthony Pauwels           , certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Bit Digital Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Bit Digital Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _____          1/16/2021

DocuSigned by:

*Anthony Pauwels*

8684A76EE1794F1...

_____

Anthony Pauwels

**Anthony Pauwels's Transactions in Bit Digital Inc. (BTBT)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/31/2020 | Bought | 1,000 | $21.81 |