phone: 617-398-5600 | email: jeff@blockleviton.com

September 9, 2021

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *In re Bit Digital, Inc. Securities Litigation* (1:21-cv-00515-ALC)

Dear Judge Carter:

We represent Lead Plaintiff Joseph Franklin Monkam Nitcheu ("Plaintiff") in this action brought on behalf of a class of investors who purchased or otherwise acquired Bit Digital, Inc. ("Bit Digital" or "BTBT" or the "Company") common stock between December 21, 2020 and January 11, 2021, inclusive (the "Class Period"). This letter responds to the pre-motion letter filed by Defendants on September 3, 2021, in which Defendants identify a list of legal conclusions purportedly supporting their proposed motion to dismiss Plaintiff's Consolidated Class Action Complaint (Dkt. No. 24, the "Complaint" or "¶_").

Pursuant to the Stipulation and Order Regarding Case Schedule dated May 7, 2021 (Dkt. No. 23), any motion to dismiss should have been filed by Tuesday, September 7, 2021. Defendants waited until September 3, 2021 to file their pre-motion letter. For the reasons discussed below (among others), Defendants' proposed motion is meritless and would unduly delay litigation of this action. To prevent further delay, Plaintiff respectfully requests that the Court deny Defendants' request for a pre-motion conference and direct Defendants to file their motion to dismiss no later than Monday, September 13, 2021.

*Background*. As alleged in the Complaint, Bit Digital is a company with a fraudulent history. Prior to entering the bitcoin mining business, the Company claimed to operate a peer-to-peer ("P2P") lending business. Chinese authorities shut down the Company's P2P lending business for illegal fundraising and criminal charged 17 members of the Company's top management, including its former CEO and Chairman. By the end of 2019, the Company essentially had no operations. ¶ 5.

Seeking to capitalize on the significant increase in the value of bitcoin, the Company rebranded itself as a bitcoin mining operation, and by the end of 2020, Bit Digital went from having virtually no value to a market capitalization of well over $1 billion. ¶ 6. The Company's new-found success, however, was short lived. On January 11, 2021, analyst J Capital Research ("J Capital") published a report alleging that Bit Digital had operated fraudulent P2P lending and

rental car businesses and had moved on to operating a fraudulent bitcoin mining business designed to steal funds from investors. ¶ 7. Among other things, the J Capital Report alleged that despite registration requirements, local Chinese officials had never heard of Bit Digital, that no major bitcoin mining equipment manufacturer had ever heard of the Company, and that Bit Digital failed to disclose that XMAX, the company acquired in order to enter the bitcoin mining business was marred in fraud allegations and was founded by an individual Bit Digital had just appointed as executive director and Chief Strategy Officer. ¶¶ 126-28. This news shocked investors and caused Bit Digital's share price to plummet approximately 25% in a single day. ¶ 8.

*The Complaint Adequately Pleads False and Misleading Statements.* Among others, Defendants made the following materially false and misleading statements in a December 21, 2020 press release announcing Bit Digital's revised third quarter 2020 financial results:

- Defendants made materially false and misleading statements concerning their bitcoin mining operations in China, including that "Our mining operations are distributed in Xinjian, Inner Mongolia and Sichuan Provinces PRC." Chinese law, however, requires companies to register with the government in order to maintain a data center or bitcoin mining operations. J Capital spoke with government officials from the locations described by Defendants as hosting Bit Digital's mining operations. These officials stated that there were no bitcoin mining operations in their locales and that they had never heard of Bit Digital. Furthermore, Bit Digital had disposed of all of its Chinese business interests, and, as a result, any Chinese operations were illegal and Bit Digital's equipment subject to seizure. ¶¶ 96-104, 126.

- Defendants also made false statements concerning the extent of their bitcoin mining operations, including that the Company acquired 22,869 miners in the first nine months of 2020 and that "As of the date of this Report, we had a total of 40,865 miners." As the J Capital Report revealed, none of the major bitcoin mining equipment manufacturers in China that Bit Digital claimed to have purchased mining machines from had ever heard of the Company. At the time of the report, Bit Digital claimed to operate nearly all of its equipment in China, but local Chinse government agencies were not aware of any Bit Digital operations in their jurisdiction. ¶¶ 105-07, 126.

- The December 21, 2020 press release also stated that on April 8, 2020, the Company acquired XMAX Chain Limited ("XMAX") and that "After the acquisition, XMAX became a wholly owned subsidiary of the Company. XMAX is a Hong Kong company, engaged in bitcoin mining business[.]" The statements concerning XMAX were materially false and misleading as Bit Digital failed to disclose: (1) that Hong Yu, who the Company appointed as executive director and Chief Strategy Officer just two weeks after the acquisition, was an original investor in XMAX and continued to control the entity; (2) that Yu and XMAX were the subject of numerous fraud allegations; and (3) that Yu had stated that he discontinued XMAX's crypto currency's mining because the mining machines were confiscated and that a lawsuit was being filed as a result. ¶¶ 89-95, 128.

Contrary to Defendants' assertions of unreliability, the J Capital report was the product extensive research and interviews with pertinent sources. Indeed, a profile of the J Capital report's author published by *Barron's* on December 6, 2014, highlighted that "[f]ew foreigners know China as intimately as Anne Stevenson-Yang does." ¶ 79. J Capital's founders lived and worked in China for 25 and 18 years respectively and possess particular expertise in the Chinse market. ¶ 78.

***The Complaint Adequately Pleads a Strong Inference of Scienter***. As an initial matter, Defendants misstate Plaintiff's scienter allegations and argue that certain allegations are insufficient to plead scienter in isolation. The scienter inquiry, however, is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

The allegations, taken together, raise a strong inference of scienter. Defendants, among other things:

- Vastly overstated the qualifications of its officers and directors and omitted to disclosed material adverse information concerning those individuals. ¶¶ 113-20, 131.

- Had three independent registered accounting firms resign in just a fifteen-month period – the last two of which attributed their resignations to their inability to audit the Company's new bitcoin mining business. ¶¶ 37, 54-55, 68-70, 132.

- Failed to rectify material weaknesses in the Company's internal control over financial reporting prior to issuing the alleged false statements despite being aware of issues since 2018. ¶ 133.

- Acknowledged that former executives Liu and Erxin – who were both criminally charged in connection with the P2P lending fraud – "have, and will continue to have, substantial influence over our business." ¶ 134.

Furthermore, in the wake of the J Capital report, Bit Digital announced the resignation and removal of numerous members of Bit Digital's top-level management. ¶ 135. First, the Chairwoman of the Board resigned "for personal health reasons." The Company claimed that the individual appointed in her place had an accounting degree, but the institution that person attended "is a high school-level institution whose matriculating students are young teenagers." ¶ 136. Next, Bit Digital announced that its CEO, Min Hu had been removed "as he was not participating in the Company's bitcoin mining operations" – despite the fact that the Company had no purported operations other than bitcoin mining. ¶ 137. Finally, Bit Digital announced that Hong Yu – who the J Capital report alleged founded XMAX and was subject of numerous fraud allegations – had departed the Company. ¶ 138. The sudden departures of these high-level executives less than one-month after the J Capital report give rise to a strong inference of scienter.

***Plaintiff Adequately Pleads Section 20(a) Claims.*** Plaintiff alleges a primary violation by Bit Digital and control by Defendant Huang. The Court should sustain Plaintiff's Section 20(a) claim.

For the reasons discussed above, the Court should deny Defendants' request for a pre-motion conference and order that any motion to dismiss be filed no later than Monday, September 13, 2021.

    Respectfully submitted,

    */s/ Jeffrey C. Block*

    Jeffrey C. Block
    Jacob A. Walker (*pro hac vice*)
    Nathaniel Silver
    **Block & Leviton LLP**
    260 Franklin Street, Suite 1860
    Boston, MA 02110
    Tel: (617) 398-5600
    Fax: (617) 507-6020
    jeff@blockleviton.com
    jake@blockleviton.com
    nate@blockleviton.com

    *Lead Counsel for Lead Plaintiff and the Class*