**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x
                                                              :
IN RE BIT DIGITAL, INC. SECURITIES           :
LITIGATION                                              :     Index No. 21-cv-00515 (ALC)
                                                              :
Pertains to All Associated Actions                  :
                                                              :
                                                              :
—————————————————————— :
                                                              x


# MEMORANDUM OF LAW IN SUPPORT OF
# BIT DIGITAL, INC'S MOTION TO DISMISS
# <u>THE CONSOLIDATED CLASS ACTION COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 4

   A.  Defendants ...................................................................................................... 4

   B.  Legacy Operations ........................................................................................... 4

   C.  The Company Launches A New Bit Coin Mining Business ............................... 5

   D.  Class Period Disclosures and Warning ............................................................ 7

   E.  JCAP Report ................................................................................................... 8

   F.  The Company's Continuing Operations and Financing ..................................... 9

ARGUMENT ....................................................................................................................... 9

   I.  THE COMPLAINT FAILS TO ADEQUATELY ALLEGE
      THE ELEMENTS OF A SECTION 10(B) CLAIM ............................................... 9

      A.  The Challenged Statements Are Based Entirely on an
          Unreliable Source and Non-Actionable ................................................... 11

      B.  The CCAC Fails To Adequately Plead Scienter ...................................... 14

        1.  The CCAC Does Not Allege Motive to Commit Fraud ........................ 14

        2.  The CCAC Fails To Plead Strong Circumstantial Evidence
            Of Conscious Misbehavior ........................................................... 16

           a.  Huang's Position As An Officer And Director Of Bit Digital ........... 16

           b.  Officer and Director Credentials ............................................... 17

           c.  Auditor Resignations ............................................................... 19

           d.  Internal Controls ...................................................................... 20

           e.  Fraud of Former Executives ...................................................... 21

           f.  Resignation or removal of officers/directors ............................... 22

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................................................... 4, 14

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................................................................... 23

*City of Brockton Ret. Sys. v. Avon Prods.*,
   2014 U.S. Dist. LEXIS 137387 (S.D.N.Y. Sept. 28, 2014) ................................................... 11

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015) ..................................................................................... 10

*Cortina v. Anavex Life Scis. Corp.*,
   2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ........................................................................ 15

*Cox v. Blackberry Ltd.*,
   660 F. App'x 23 (2d Cir. 2016) .............................................................................................. 17

*Das v. Rio Tinto Pub. Ltd. Co.*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018) ................................................................................... 22

*Deluca v. GPB Auto. Portfolio, LP*,
   2020 U.S. Dist. LEXIS 234443 (S.D.N.Y. Dec. 13, 2020) ............................................... 3, 19

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ........................................................................................ 9, 14, 16

*Fecht v. N. Telecom Ltd.  (In re N. Telecom Ltd. Sec. Litig.)*,
   116 F. Supp. 2d 446 (S.D.N.Y. 2000) ............................................................................... 3, 15

*Gillis v. QRX Pharm. Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) .............................................................................. 10, 22

*Glasser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. Mar. 28, 2011) .................................................... 2, 12, 13, 22

*In re GLG Life Tech Corp. Sec. Litig.*,
   2014 WL 464762 (S.D.N.Y. Jan. 31, 2014) ......................................................................... 22

*In re HEXO Corp. Secs. Litig.*,
   2021 U.S. Dist. LEXIS 43851 (S.D.N.Y. Mar. 8, 2021) ....................................................... 19

*Hoi Ming Michael Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012) ................................................................................... 10

*Iconix Brand Grp., Inc.*,
   2017 U.S. Dist. LEXIS 177986 (S.D.N.Y. Oct. 24, 2017) .............................................. 15, 22

*Kocourek v. Shrader*,
   2019 U.S. Dist. LEXIS 98785 (S.D.N.Y. June 12, 2019) ..................................... 10

*Lefkowitz v. Synacor, Inc.*,
   2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) ....................................................... 22

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) .................................................................... 13

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014) .................................................................... 21

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007) ............................................................. 22-23

*In re Neustar Secs. Litig.*,
   83 F. Supp. 3d 671 (E.D. Va. Jan. 27, 2015) ....................................................... 12

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ......................................................................... 15, 17

*In re Optionable Sec. Litig.*,
   577 F. Supp. 2d 681 (S.D.N.Y. 2008) .................................................................. 11

*PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) .................................................................. 23

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ......................................................................... 10, 15

*S. Cherry St., L.L.C. v. Hennessee Grp. L.L.C.*,
   573 F.3d 98 (2d Cir. 2009) ................................................................................. 14

*San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 1996) ................................................................................. 15

*Schiro v. Cemex*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019) .................................................................. 13

*SEC v. Iannazzo*,
   2006 U.S. Dist. LEXIS 117701 (S.D.N.Y. Jan. 23, 2006) ........................... 3, 18, 19

*Shemian v. Rsch. in Motion Ltd.*,
   2013 U.S. Dist. LEXIS 49699 (S.D.N.Y. Mar. 28, 2013) ................................. 3, 16

*Shields v. Citytrust Bancorp.*,
   25 F.3d 1124 (2d Cir. 1994) ............................................................................... 15

*In re Lehman Bros. Secs. & Erisa Litig.*,
   2013 U.S. Dist. LEXIS 107559 (S.D.N.Y. July 31, 2013) ....................... 1, 2, 12. 13

*In re Sibanye Gold Ltd. Sec. Litig.*,
    2020 U.S. Dist. LEXIS 210099 (E.D.N.Y. Nov. 10, 2020) .................................................. 11

*Smith v. Bank of Am.*,
    2013 U.S. Dist. LEXIS 123350 (E.D. Tex. Aug. 28, 2013) ................................................ 12

*Stratte-Mcclure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) .......................................................................................9,  14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008) ................................................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) .................................................................................... 3-4, 14, 15

*In re UBS Ag Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................................................... 9

*VNB Realty, Inc. v. Bank of Am. Corp.*,
    2013 U.S. Dist. LEXIS 132250 (S.D.N.Y. Sept. 16, 2013) ............................................. 12, 13

*Wachovia Equity Sec. Litig. v. Wachovia Corp.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) .......................................................................... 22, 23

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. Aug. 28, 2007) .................................................................. 12

*Wilbush v. Ambac Fin. Grp., Inc.*,
    271 F. Supp. 3d 473 (S.D.N.Y. 2017) ............................................................................... 10

*Wyche v. Advanced Drainage Sys.*,
    2017 U.S. Dist. LEXIS 34656 (S.D.N.Y. Mar. 10, 2017) ................................................... 23

## Statutes and Rules

15 U.S.C. § 78u-4 ................................................................................................ 1, 2, 14

Fed. R. Civ. P. 9 ............................................................................................. 1, 4, 10

Fed. R. Civ. P. 11 ................................................................................................ 13, 14

Fed. R. Civ. P. 12 ...................................................................................................... 4

Defendants Bit Digital, Inc. ("Bit Digital" or the "Company) and Erke Huang ("Huang") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' consolidated class action complaint (the "CCAC" or "Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.

## PRELIMINARY STATEMENT

Plaintiffs bring this securities class action based almost entirely upon the report of a short seller whose own purported investigatory "reports" disclaim the veracity of each and every statement contained therein.  Attempting to transform the Company's pivot from one sector to another into a plot to commit wholesale fraud upon the market, the CCAC devotes pages upon pages largely repeating the claims made by an avowed short seller in the Company's stock.

The report itself provides all the caution that this Court requires to conclude that the Complaint merits dismissal.  By its own terms, the report (i) makes no representation as to the accuracy of any information contained in the report; (ii) provides virtually no information concerning the third-party (anonymous) sources it purports to rely on; and (iii) discloses that it is shorting the Company's stock and may benefit significantly from a decline in stock value.  (*See* CCAC Ex. 1 at 1.)  Where the basis of a complaint has "significant motive and opportunity . . . to misuse or mischaracterize confidential witness statements," such information lacks the probative value of other, reliable sources.  *Stichting Pensioenfonds ABP v. Merrill Lynch & Co. (In re Lehman Bros. Secs. & Erisa Litig.)*, 2013 U.S. Dist. LEXIS 107559 at *13 (S.D.N.Y. July 31, 2013).

The content of the report—and all of Plaintiffs' allegations based upon it—are similarly suspect.  Plaintiffs make claims concerning the Company's failure to register its business in China,

1

but provide no detail concerning who provided the information, when the inquiries were made, or how the anonymous individuals obtained the information.  In short, Plaintiffs do not provide the necessary detail concerning the identity of the witnesses that would "indicate a high likelihood that [the source] actually knew facts underlying [his or her] allegations." *Glasser v. The9, Ltd.*, 772 F. Supp. 2d 573, 590 (S.D.N.Y. Mar. 28, 2011).  The Company, and the Court, are simply left to guess.

The infirmity of Plaintiffs' claims is further compounded by what Plaintiffs *did not do*: Plaintiffs conducted no independent investigation of the claims in the report, choosing instead to take at face value the claims made by a market participant with significant incentive to harm the Company.  Counsel for Plaintiffs represented to this Court that it "verified" the claims made in the report "through other sources," Tr. of H. dated Oct. 29, 2021, Taylor Ex. A, but a plain reading of the Complaint demonstrates that this is simply false. Under such circumstances, the allegations based on the unverified report "provide the Court little assurance that the factual contentions have any evidentiary support." *In re Lehman Bros.*, 2013 WL 3989066 at *4.

Even if one were to credit the third-party report—and there is ample reason not to—the Complaint also fails to establish the scienter necessary to support a securities fraud claim.  Rather than "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), the Complaint instead relies on the Company's supposed inflation of its executives' credentials, the fact that it changed auditors as it pivoted into a new business, and Huang's role as an officer to broadly intimate that the Company had a motive to lies to its investors.  None are sufficient to establish scienter.

As to the Company's statements concerning its executives' credentials, the Complaint identifies no duty for the Company to disclose the purportedly material negative facts, and this

Court's authority makes clear that "no reasonable investor" would conclude that a disclosure concerning an executive's credentials means that there are no other negative facts concerning those executives. *SEC v. Iannazzo*, 2006 U.S. Dist. LEXIS 117701 (S.D.N.Y. Jan. 23, 2006). Nor does the Complaint allege that Huang, or any other insiders, traded during the class period, negating the inference that the Company made false statements to inflate value of stock. The absence of such an allegation "is inconsistent with an intent to defraud shareholders." *In re N. Telecom Sec. Litig*., 116 F. Supp. 2d at 462.

Plaintiffs' allegations concerning the Company's auditors similarly fall short. As a general matter, the resignation of an auditor does not raise an inference of scienter absent allegations of non-speculative facts linking the resignation to the alleged fraud. *See Deluca v. GPB Auto. Portfolio, LP*, 2020 U.S. Dist. LEXIS 234443 at *45 (S.D.N.Y. Dec. 13, 2020). And, as set forth more fully herein, there are plausible, non-culpable explanations for the auditors' resignations that are at least as compelling as any inference that they resigned as a result of any fraud at Bit Digital.

Finally, Plaintiffs claim that—because of his position in the Company—Huang "knew that the adverse facts specified" in the Complaint were being concealed from the public. But it is "well established" that accusations of this kind "founded on nothing more than a defendant's corporate position are entitled to ***no weight***." *Shemian v. Research in Motion Ltd.,* 2013 U.S. Dist. LEXIS 49699 at *48 (S.D.N.Y. March 28, 2013), *aff'd* 570 F. App'x 32, 35 (2d Cir. 2014) (emphasis added). Taken together, Plaintiffs' allegations simply do not demonstrate "a mental state embracing intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 319 (2007) (citation omitted), and the Complaint should be dismissed for that reason alone.

Taken together, Plaintiffs' unverified regurgitation of a short seller's "report" and its failure to adequately plead the necessary scienter dooms the Complaint. And under the heightened pleading standards of Rule 9(b) and the PSLRA, which require plaintiffs to state "with particularity" both the facts establishing misrepresentation and the facts evidencing scienter, *Tellabs*, 551 at 313, the Complaint must be dismissed.

**BACKGROUND**[1]

**A.     Defendants**

Bit Digital is a bitcoin mining company. (CCAC ¶ 2.) Its ordinary shares are listed on the Nasdaq Capital Market under the symbol "BTBT." (CCAC ¶ 18.) Huang is, and was at the time of the events pled the CCAC, the chief financial officer of Bit Digital and a member of its board of directors. (CCAC ¶ 19.)

**B.     Legacy Operations**

The Company began operations in 2015 and on March 22, 2018 completed an initial public offering on the Nasdaq under the name Golden Bull Limited. (CCAC ¶ 23-24.) At the time, the Company reported operating as an "online marketplace, or 'peer-to-peer' lending company" providing "borrowers access to short-term loans" through an "online marketplace." (CCAC ¶ 28.)

On October 31, 2019, the Company announced that the Shanghai Public Security Bureau had completed an investigation against the Company for suspected illegal collection of public

---

[1]     In addition to allegations contained in the CCAC, on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Defendants include as Exhibits ("Taylor Ex.") to the accompanying Declaration of Joel M. Taylor, Esq. certain SEC filings and other documents referenced in the Complaint that the Court may consider on this motion.

deposits and that criminal enforcement measures were being taken against seventeen suspects, of which six had already been detained.  (CCAC ¶ 38.)  In connection the investigation, the Company removed certain officers and directors that it believed may have been the subject of the criminal enforcement measures – namely, CEO and Director Erxin Zeng, CFO and Director Jing Leng, and Director Xiaohui Liu.  (CCAC at ¶ 39.)  In their place, the Company appointed three new officers and directors:  Ping Liu, as a director and chairwomen of the board; Min Hu, as CEO and Director; and Defendant Huang, as CFO and Director.[2]  (CCAC ¶¶ 47-50.)

In the same October 31 filing, the Company disclosed that it expected to "discontinue it P2P business in the near future."  (CCAC ¶ 41.)

## C.      The Company Launches A New Bitcoin Mining Business

In a December 4, 2019, Form 6-K the Company announced plans to launch a bitcoin mining business under Huang's leadership.  (CCAC ¶ 52; Taylor Ex. B.)  Two weeks later, the Company's auditor, Wei, Wei & Co. LLP ("WWC"), resigned because "it was not familiar with bitcoin mining."  (CCAC ¶ 54; Taylor Ex. C.)  On January 3, 2020, the Company appointed a new independent registered public accounting firm, JLKZ CPA, LLP, to audit the Company's 2019 financial statements.  (CCAC ¶ 68.)

On April 8, 2020, the Company purchased XMAX Chain Limited, a Hong Kong entity with no operations, in order to enter the bitcoin mining business.  (CCAC at 59.)  Eleven days later, the Company appointed Hong Yu as an executive director and chief strategy officer of the Company, and Yan Xiong as an independent director.  (CCAC ¶ 90.)

---

[2]      As a "foreign private issuer" within the meaning of the rules under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Company files annual reports on Form 20-F and current reports on Form 6-K

In a Form 6-K announcing the appointments of Messrs. Yu and Xiong, the Company also disclosed the effects of the Covid epidemic on its operations and the timing of filing audited 2019 financial statements.

> The outbreak of the COVID-19 pandemic in mainland China greatly affected our operations and the preparation for and the actual audit of our financial statements for the year ended December 31, 2019. Commencing with the outbreak in December, it was difficult for our employees to resume work at our corporate office in Shanghai. All of our employees were asked to work from home. Some of our employees began to return to work in our office in early March. The preparation of audit materials was significantly delayed. Our auditors were initially scheduled to perform an 11-day field work starting on March 2, 2020. However, due to the delay of preparing audit materials and travel restrictions in Beijing and Shanghai, field work was delayed and rescheduled. The Company estimates that it will be able to file its Annual Report on Form 20-F on or before June 14, 2020.

(Taylor Ex. D.)

On May 8, 2020, the Company completed the sale of 6,500,000 shares of common stock at $0.40 per share for gross proceeds of $2,600,000. The sale was made to eight (8) unaffiliated investors. Each investor signed a Stock Purchase Agreement (the "SPA") which contained non-U.S. Person Representations pursuant to Regulation S under the Securities Act of 1933, as amended (the "Act"). (Taylor Ex. E.)

On May 27, 2019, the Company began to enter into certain SPAs with certain "Non-U.S. Persons" (the "Purchasers") as defined in Regulation S under the Securities Act in connection with a private placement (the "Offering"). Pursuant to the SPA, the Company agreed to sell up to an aggregate of 21,500,000 ordinary shares (the "Shares"), par value $0.01 per share, at a per share purchase price of $0.80. The maximum gross proceeds to the Company from such Offering will be $17,200,000. The net proceeds of the Offering shall be used by the Company in connection with the Company's purchase and acquisition of bitcoin mining machines, car rental sites, and working capital, including general corporate purposes. (Taylor Ex. E.) On July 6, 2020, following

the completion of the Company's audit, Golden Bull Limited completed the sale of 21,500,000

shares of common stock at $0.80 per share, for gross proceeds of $17,200,000.

The Company first described its new bitcoin mining business in its Annual Report for the

year ended December 31, 2019.   (CCAC ¶ 59; Taylor Ex. F.)   Under the heading "Recent

Developments" the Report states:

> On April 8, 2020, Golden Bull Limited entered into an Instrument of Transfer with
> Mr. Ching Yeh to acquire his 100% of the ownership interest (10,000 shares) in
> XMAX Chain Limited ("XMAX") for HKD 10,000 (HKD 1.00 per one share).
> After the acquisition, XMAX became a wholly owned subsidiary of Golden Bull
> Limited. XMAX is a Hong Kong company and was incorporated on March 21,
> 2018.

> The Report further disclosed that:

> The Company operates a recently updated bitcoin mining facility for the sole
> purpose of mining bitcoin. Our facility and mining platform are operating with the
> primary intent of accumulating bitcoin which we may sell for fiat currency from
> time to time depending on market conditions and management's determination of
> our cash flow needs. Our mining operations are in Wuhai, Zhundong, Xinlinhot and
> Sichuan China hosting about 21,800 Application Specific Integrated Circuits
> ("ASIC") miners since May 2020 which have access to approximately 74.5
> megawatts of power supplied to our facilities.

**D.      Class Period Disclosures and Warning**

The Complaint challenges three sets of statements made by Bit Digital in a December 18,

2020 press release titled "Bit Digital, Inc. Announces the Third Quarter of Fiscal Year 2020

Financial Results" (the "3Q20 Press Release").   A copy of the 3Q20 Press Release is appended to

the Declaration of Joel Taylor as Ex. G.

*First*, the Complaint challenges the following statement regarding Bit Digital's operations

in China: "Our mining operations are distributed in Xinjiang, Inner Mongolia and Sichuan

Provinces PRC." (CCAC ¶126.)

*Second*, the Complaint challenges the following statements concerning Bit Digital's bitcoin

mining operations: "The number of miners [in the Third Quarter 2020] was 22,869, with 16,865

miners acquired in the third quarter 2020," "The number of miners [for the first Nine Months of 2020] was 22,869, all miners acquired in the nine months of 2020," and "As of the date of this Report, we had a total of 40,865 miners."  (CCAC ¶127.)

*Third*, the Complaint challenges the following statements concerning Bit Digital's acquisition of XMAX:

> On April 8, 2020, the Company entered into an Instrument of Transfer with Mr. Chung Yeh to acquire his 100% of the ownership interest (10,000 shares) in XMAX Chain Limited ("XMAX") for HKD 10,000 (approximately $1,200).  After the acquisition XMAX became a wholly owned subsidiary of the Company.  XMAX is a Hong Kong company, engaged in bitcoin mining business and was incorporated on March 21, 2018.  On the acquisition date, XMAX had a negative net asset of $674, and the Company recorded a loss of $1,984 from the acquisition of XMAX.

(CCAC ¶¶ 89-95.)

## E.    JCAP Report

The core of Plaintiffs' allegations is based upon a report issued by J Capital Research ("JCAP") on January 11, 2020 (the "JCAP Report").  (*See generally* CCAC ¶¶ 78-120; CCAC Ex. 1.)  The JCAP Report makes clear at the outset that "You should assume that as of the publication date of our reports and research, J Capital Research USA LLC may benefit from positions a client has in all stocks (and/or options, swaps, and other derivatives related to the stock) and bonds covered herein, and therefore stands to realize significant gains in the event that the price of either changes."  (CCAC Ex. 1 at 1.)  It further discloses that the information contained in the Report "is presented "as is," without warranty of any kind, whether express or implied. J Capital Research USA LLC makes no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use."  (*Id.*)

Before even accessing the JCAP Report on JCAP's website, users must agree to JCAP's Terms of Service, which states that "J Capital Research USA LLC will benefit financially from the Short Positions, and therefore stands to realize significant gains in the event that the price of the relevant stocks and/or bonds declines."

## F.    The Company's Continuing Operations and Financing

Since the class period, the Company has raised significant sums of additional capital from institutional investors, including an $80 million private placement on September 29, 2021.  (*See* Taylor Ex. H.)

## **ARGUMENT**

## I.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THE ELEMENTS OF A SECTION 10(B) CLAIM

To state a Section 10(b) claim, Plaintiffs must allege that each Defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury."  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (internal citation omitted).  Section 10(b) claims are subject to the heightened pleading standards of Rule 9(b) and the PSLRA, which require plaintiffs to state "with particularity" both the facts establishing misrepresentation and the facts evidencing scienter.  *Tellabs*, 551 at 313.[3]

---

[3]    Courts applying these standards routinely grant motions to dismiss, including in cases involving complaints far more detailed than here.  *See, e.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *1 (S.D.N.Y. Sep. 28, 2012) (dismissing with prejudice 548-page complaint that includes statements from 17 confidential witnesses), *aff'd* 752 F.3d 173 (2d Cir. 2014); *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 480, 484 (S.D.N.Y. 2017) (dismissing with prejudice 241-page complaint that included statements from four confidential witnesses); *ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Co.*, 553 F.3d 187, 193 (2d Cir. 2009) (affirming dismissal with prejudice of 190-page complaint that cited multiple internal documents).

For the reasons set forth below, the Complaint fails to adequately plead the first and second elements of a Section 10(b) claim and should be dismissed in its entirety.

"A Section 10(b) plaintiff who challenges a statement must allege adequately that the statement is untrue." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,129 F. Supp. 3d 48, 67 (S.D.N.Y. 2015). To do so a plaintiff "must do more than say that the statements . . . were false and misleading; it "must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). To demonstrate the falsity of a statement, plaintiff must plead facts that contradict the statement. *Hoi Ming Michael Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 572 (S.D.N.Y. 2012) ("Plaintiff provides no SAIC filing or other report of financial figures to contradict the Third Quarter and Fourth Quarter results for 2010."); *Kocourek v. Shrader*, 2019 U.S. Dist. LEXIS 98785, at *27 (S.D.N.Y. June 12, 2019) (allegations are "unavailing because [they do] not contradict or render misleading any information contained in" Aphria's statements.); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 597 (S.D.N.Y. 2016) (no actionable misstatement where alleged fact "does not contradict [defendant's] statements.")

The Amended Complaint identified three statements that it says are false and misleading: (1) Statements regarding the registration of operations in China; (2) statements regarding the number of miners; and (3) omissions of information regarding XMAX acquisition. None of these statements are actionable, as each are based solely on an unverified third-party report issued by an acknowledged short-seller of the Company's stock.

These statements are not actionable under any applicable theory of liability. As an initial matter, the anonymously sourced, admittedly biased third party JCAP Report cannot be credited: Lacking the necessary indicia of reliability, it is not a reliable source of information on which to base a claim. *Second*, even if those anonymously sourced statements in the JCAP Report were

credited, they relate to statements of opinion concerning legal requirements in China that are not actionable under prevailing law.

### A. The Challenged Statements Are Based Entirely on an Unreliable Source and Non-Actionable

The Complaint alleges that the following statement in the 3Q20 Press Release was misleading:  "Our mining operations are distributed in Xinjiang, Inner Mongolia and Sichuan Provinces PRC."  (CCAC ¶ 36.)  It claims the statement is false because, according to the third-party JCAP Report, Chinese law requires companies to register with the government in order to maintain a data center or bitcoin mining operations, and because JCAP supposedly called government officials from the locations described by Defendants as hosting Bit Digital's mining operations who purportedly claimed that no such operations were registered in those geographic areas.  (*See* CCAC ¶ 126.)

Virtually all of Plaintiffs' allegations are simply copy-and-pasted statements made in an unverified, third-party report published by an acknowledged short-seller in the Company's stock. This is particularly true as to Plaintiffs' claim concerning the Company's disclosures about its mining operations in China.

For purposes of pleading a Section 10(b) claim, allegations based on an anonymously sourced publication, such as a newspaper article, are credited only to the extent that the publication provides a "basis for believing that the unidentified source is likely to have known the relevant facts."  *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) (description of source as "a source familiar with the report" not sufficiently particular and detailed); *In re Sibanye Gold Ltd. Sec. Ligit.,* 2020 U.S. Dist. LEXIS 210099 at *52 (E.D.N.Y. Nov. 10, 2020) (description of source as a "miner" not sufficiently particularized to support claim); *City of Brockton Ret. Sys. v. Avon Prods.*, 2014 U.S. Dist. LEXIS 137387 at *67-68 (S.D.N.Y. Sept. 28, 2014) (description

of source as "a person familiar with the matter" provided "no basis to evaluate its reliability");

*accord In re Neustar Secs. Litig.*, 83 F. Supp. 3d 671, 686 (E.D. Va. Jan. 27, 2015) ("the

Court . . . has no way to assess the credibility of anonymous sources quoted in the article, whether

the sources have personal knowledge of the events described, and whether the sources were in a

position to learn of such events personally."); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148,

(C.D. Cal., Aug. 28, 2007).

Courts are particularly skeptical of second-hand anonymous sources, when the publication

in which they are originally cited has "significant motive and opportunity . . . to misuse or

mischaracterize confidential witness statements."  *In re Lehman Bros. Secs. & Erisa Litig.*, 2013

U.S. Dist. LEXIS 107559 at *13 (declining to credit confidential witness statements recounted in

a separate complaint); *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 123350

(S.D.N.Y. Sept. 16, 2013).  That is the case here, where the author of the JCAP report both (i) made

no representation as to the accuracy of any information contained in the report; (ii) undertook no

steps to independently verify the information contained in the anonymously sourced and biased

report; and (iii) disclosed that it is shorting BTBT and may benefit significantly from a decline in

stock value.  (*See* CCAC Ex. 1 at 1.)

Taken together, the results are to be expected: the allegations attributed to the anonymous

governmental sources bear ***none*** of the indicia of reliability that have led courts to sustain

anonymous source witnesses as worthy of crediting.  *First*, the Complaint does not contain ***any***

"independent [well-pled] factual allegations" to corroborate [the] anonymous witnesses'

statements.  *Glasser*, 772 F. Supp. 2d at 590.   *Second*, the witnesses' position and job

responsibilities are not described at a sufficient level of particularity to "indicate a high likelihood

that [the source] actually knew facts underlying [his or her] allegations."  *Glasser*, 772 F. Supp.

2d at 590.  *Finally*, the content of the anonymous source's allegations, far from being particular, is uncommonly hazy, providing no detail concerning the government officials' identity, basis of information, or expertise.  *Schiro v. Cemex*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 579-81 (S.D.N.Y. 2014).  Apart from these shortcomings, Plaintiffs took no steps to confirm the veracity of the anonymous sources cited in the JCAP Report, which provides "the Court little assurance that the factual contentions have any evidentiary support."  *In re Lehman Bros.*, 2013 WL 3989066 at *4.

Courts that have permitted Plaintiffs to rely upon anonymous sources have done so, in part, because any pleading signed by counsel is subject to Federal Rule of Civil Procedure 11, which requires that counsel certify that, to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support."  FED. R. CIV. P. 11(b); *see also In re Lehman Bros.*, 2013 U.S. Dist. LEXIS 107559, at *11.  Such assurance is entirely absent here.  Indeed, Plaintiffs are attempting to "rely on the substance of [statements by confidential witnesses] without being held responsible for certifying that they are supported by some factual basis, or at least that the witnesses did in fact make such statements."  *VNB Realty, Inc.*, 2013 U.S. Dist. LEXIS 132250 at *21.  "Such reliance is impermissible."  *Id.*  In fact—just as in *In re Lehman Bros.*—"there is no suggestion [here] that counsel in this action has spoken with these confidential witnesses or even knows who they are," and thus "it would be inappropriate to give any weight to these alleged confidential witness statements."  2013 U.S. Dist. LEXIS 107559, at *11.  For that reason alone, all of the Complaint's allegations based upon the JCAP Report are unreliable and cannot form the basis of a securities fraud claim.

### B. The CCAC Fails To Adequately Plead Scienter

Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 (2007) (citation omitted).   "To meet the 'strong inference' standard, it is not sufficient to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge 'does not capture the stricter demand Congress sought to convey . . . ." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009) (emphasis in original) (quoting *Tellabs*, 551 U.S. at 314).   To be "strong," the inference of scienter must be "more than merely reasonable or permissible - it must be . . . cogent and at least as compelling as any opposing inference [of nonfraudulent intent]." *Tellabs*, 551 U.S. at 323-24.   Where, as here, "plausible, nonculpable explanations" are more likely than fraud, a plaintiff fails to plead scienter. *Id.* at 324.   Moreover, "when the defendant is a corporate entity, . . . the pleaded facts must create a ***strong inference*** that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (emphasis added).

A plaintiff can adequately plead scienter only by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte-McClure*, 776 F.3d at 106 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)); *ECA*, 553 F.3d at 198.   Neither is present here.

### 1.   The CCAC Does Not Allege Motive to Commit Fraud

To plead facts supporting a strong inference of the requisite scienter by showing motive and opportunity, Plaintiffs must allege facts showing "concrete benefits that could be realized by

14

one or more of the false statements and wrongful nondisclosure alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). General allegations of motive "possessed by virtually all corporate insiders" are insufficient to raise a strong inference of fraudulent intent. *Novak*, 216 F.3d at 307.

Here, the CCAC does not allege that Huang or the Company had any motive to commit fraud. The Complaint does not allege that Huang, or any other insiders, traded during the class period, negating the inference that the Company made false statements to inflate value of stock. *San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996), 75 F.3d 801, 814 (failure of some defendants to sell stock during class period undermined allegations that any defendant intended to inflate the stock price for personal profit); *In re N. Telecom Sec. Litig.*, 116 F. Supp. 2d at 462 ("The absence of stock sales by insiders . . . is inconsistent with an intent to defraud shareholders."); *see also In re Iconix Brand Grp., Inc.*, No. 15-cv-4860, 2017 WL 4898228, at *16 (S.D.N.Y. Oct. 25, 2017) ("Courts have recognized that the inference of scienter is undermined by the fact that [other insiders] did not sell any stock during the alleged class period." (quotation marks omitted) (collecting cases)); *Rombach*, 355 F.3d at 177 (plaintiffs failed to plead scienter where they "d[id] not allege that defendants sold stock or profited in any way during the relevant period"); *San Leandro*, 75 F.3d at 814 (2d Cir. 1996) (lack of stock sales "undermines" any allegation of motive). This is fatal to Plaintiffs' claim of motive. *See Cortina v. Anavex Life Sciences Corp.*, 2016 WL 7480415, at *6 (S.D.N.Y. Dec. 29, 2016) (finding allegations of scienter insufficient where "Plaintiffs make no allegation that any Defendant sold shares during the Class Period"); *see also San Leandro*, 75 F.3d at 814 ("the fact that other defendants did not sell their shares during the relevant class period sufficiently undermines plaintiffs' claim regarding motive").

> **2.     The CCAC Fails To Plead Strong Circumstantial Evidence Of Conscious Misbehavior**

In addition to failing to adequately plead any motive to commit fraud, the Complaint similarly fails to provide the requisite strong circumstantial evidence necessary to support an inference of conscious misbehavior.  Under the "conscious misbehavior or recklessness" test, "recklessness is defined as at the least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *ECA & Local 134*, 553 F.3d at 199.  Negligence, even gross negligence, is not enough.  *See Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) ("the scienter requirement can be satisfied by pleading either 'conscious recklessness' – i.e., a state of mind 'approximating actual intent, and not merely a heightened form of negligence' – or 'actual intent'").  Where, as here, motive allegations are absent, "the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater."  *ECA & Local 134*, 553 F.3d 187, 198-99 (2d Cir. 2009).

The CCAC alleges six facts that it says constitute circumstantial evidence of fraud.  Each is addressed in turn.

> **a.     Huang's Position As An Officer And Director Of Bit Digital**

The CCAC alleges that "Because of [Huang's] position with the Company and access to material non-public information available to him but not to the public, Huang knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading."  (CCAC ¶¶ 20 & 129-30).

It is "well established" that accusations of this kind "founded on nothing more than a defendant's corporate position are entitled to *no weight*."  *Shemian*, 2013 U.S. Dist. LEXIS 49699 at *48 (emphasis added).  A plaintiff must allege "particularized facts suggesting that defendants

actually possessed information contradicting their public statements." *Cox v. Blackberry Ltd.*, 660 F. App.'x 23, 25 (2d Cir. 2016). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

The CCAC does not allege any particularized facts specifically identifying any reports or statements that contradict any of the statements contained in the 3Q20 Press Release.

### b.    Officer and Director Credentials

The CCAC alleges that Bit Digital "overstated the qualifications of its officers and directors and omitted to disclose material adverse information." (CCAC ¶¶ 131 & 113-120). More particularly, it alleges that: (a) In an unidentified October 2019 disclosure, Bit Digital represented that one of its officer and directors (Hu) received a law degree from Quingdao Qiushi College of the Arts and Sciences and that, according to the JCAP Report, Quingdao "does not offer studies in law" (CCAC at ¶¶ 114-15); (b) In an April 2020 announcement, the Company announced Yu's appointment as executive director and Chief Strategy Officer, without disclosing Yu's alleged relationship to XMAX Foundation and related fraud (CCAC ¶ 117); (c) in August 2020, the Company named Ichi Shih as a director without disclosing that, according to the JCAP Report, "Shih, who handled 'due diligence' for fraud promotor firm Brean Murray from 2007, was CFO of China Valves Technology during the period for which the SEC identified serious fraud at the company"; and that (d) in August 2020, the Company named Chaohi Deng as a director, representing that he had earned a degree in accounting, without disclosing that, according to the JCAP Report, the institution from which he graduated "is a high school level institution whose matriculating students are young teenagers."

17

None of these allegations are actionable, and at least certain of them omit critical context that renders them immaterial as a matter of law.[4]   As an initial matter, the allegations cited from the JCAP report suffer from the same issues of reliability set forth in Section I *supra*, and should not be credited for that reason.

Moreover, Plaintiffs identify no duty for the Company to have disclosed the facts they allege were omitted from the Company's disclosures.   Rather, they attempt to point to the Company's possible "overstating" of its officers' and directors' qualifications to stretch the purported omissions into actionable misleading statements.   But this is unavailing, as courts in this Circuit have concluded that statements concerning officers' credentials that allegedly omit other facts concerning those credentials are not actionable without a specific obligation to make such a disclosure.   *SEC v. Iannazzo*, 2006 U.S. Dist. LEXIS 117701, at *2.

Nor are the allegations concerning the Company's omissions sufficiently tied to the affirmative disclosures concerning the officers' credentials to render such disclosures misleading. Indeed, in *Iannazzo*, this Court held that the defendant's statements concerning his college and law school credentials were not rendered misleading by the omission of the fact that he had been previously convicted of grand larceny.   *Id.*   Rejecting the SEC's argument that Iannazzo had a duty to disclose the prior conviction because he had made statements concerning his academic credentials, the Court held that "no reasonable investor could conclude that the annual report's limited description of Iannazzo's educational credentials meant that Iannazzo had no criminal

---

[4]     Shih was not charged or convicted of any wrongdoing by the SEC and her name does not even appear in the SEC's complaint against China Valves Technology.   (*See* Taylor Ex. K.) JCAP's off-handed reference to Brean Murray as a "fraud promotor" is meaningless.   Even if JCAP's disparagement of Shih was in any way reliable—and for the reasons set forth in Section I *supra*, they are not—Bit Digital would have had no obligation to disclose the same.   And even if it had such a duty, any failure of disclosure does not give rise to any inference of scienter.

history." *Id.*   Where, as here, "the relationship between the purportedly misleading statements and the alleged omission is too attenuated to create a false impression, dismissal of the proposed allegations is appropriate." *Iannazzo*, 2006 U.S. Dist. LEXIS 117701, at *2.  And since Plaintiffs identify no duty to disclose the allegedly omitted information, these claims must fail.

### c.      Auditor Resignations

The infirmity of Plaintiffs' allegations continues with respect to its attempt to transform the changing of auditors into actionable conduct.  Specifically, Plaintiffs allege that "Bit Digital had three independent registered accounting firms resign in just a fifteen-month period – the last two of which attributed their resignations to their inability to audit the Company's new bitcoin mining business."  (CCAC at ¶¶ 132 & 37, 54-55, 68-70).  But this is simply not actionable.

The resignation of an auditor does not raise a strong inference of scienter absent allegations of non-speculative facts linking the resignation to the alleged fraud.  *See Deluca*, 2020 U.S. Dist. LEXIS 234443 at *45 (merely alleging that a defendant's auditor resigned "does not suffice to support a strong inference of knowledge that the financial statements did not comply with standards."); *In re HEXO Corp. Secs. Litig.*, 2021 U.S. Dist. LEXIS 43851 at *58 (S.D.N.Y. March 8, 2021) (because "plaintiffs fail to plead facts non-speculatively linking the resignations of corporate personnel to the company's alleged fraud," their claim predicated on executive and auditor resignations cannot survive.").

Here, the CCAC does not plead any non-speculative facts linking the auditor resignations to the alleged fraud.  The first resignation, which occurred on September 23, 2019, predated the Company's announced entry into the bitcoin mining business, and is thus unrelated to the claims here.  (CCAC ¶¶ 37 & 52.)

The second resignation of Wei, Wei & Co. LLP ("WWC"), occurred on December 19, 2020. As explained by WWC in a January 9, 2020 Form 6-K, WWC was engaged to audit the Company's 2019 financial statements, that since its engagement Bit Digital had exited the peer-to-peer lending business and announced that it was entering into the bitcoin mining business, and that "after substantial deliberation, it was not familiar with bitcoin mining and resigned."

The third resignation of JLKZ CPA LLP ("JLKZ") occurred on December 16, 2020. JLKZ resigned because "due to the COVID-19 situation which severally affected the scheduling and resources, it was unable to continue to audit the operations of the bitcoin mining business." (CCAC ¶ 68 & Taylor Ex. I.) As of December 2020, travel in China was still severely restricted due to the pandemic. Many U.S companies experienced difficulties operating in China during periods of lock down. It is not surprising that JLKZ, a New York based firm, would not have time or resources to audit mining operations in China.

The plausible, non-culpable explanations by WWC and JLKZ for their reasons for resigning are at least as compelling as any inference that they resigned as a result of any fraud at Bit Digital.

### d.  Internal Controls

The CCAC alleges that, "prior to the issuance of the misleading statements alleged herein", Bit Digital failed to rectify material weaknesses in internal controls over financial reporting disclosed by the Company in its public filings as early as its 2018 20-F. (CCAC ¶ 133.)

The allegation that the Company failed to correct the internal controls before issuing the 3Q2020 Press Release is conclusory. As noted in the CCAC, the Company disclosed material weaknesses in its internal controls in 2018 Annual Report on Form 20-F, filed on April 30, 2019. (CCAC ¶ 32 & Taylor Ex. J.) There are no further allegations of fact to support the conclusory

claim that those weaknesses were not rectified before Bit Digital issued the 3Q2020 Press Release twenty months later, on December 21, 2020.

Moreover, even where a company discloses material weaknesses in internal controls that are contemporaneous with allegedly fraudulent statements, court have found that such weaknesses are not evidence of scienter.  *See Lefkowitz v. Synacor, Inc.*, No. 18 CIV. 2979 (LGS), 2019 WL 4053956, at *10 (S.D.N.Y. Aug. 28, 2019) ("The allegations that Defendants were aware that the Company was understaffed and lacked personnel in internal controls does not raise an actionable inference that Defendants knew that the SOX certifications were false; an equally plausible inference is that Defendants believed that any deficiencies were not so acute as to rise to the level of an internal control weakness."); *In re Magnum Hunter Res. Corp. Secs. Litig.*, 26 F. Supp. 3d 278, 298–99 (S.D.N.Y. 2014) (no scienter after "defendants disclosed . . .  that the company had material accounting weaknesses in the core internal control areas of staffing and financial reporting").

### e.    Fraud of Former Executives

The CCAC alleges that an inference of scienter is supported by the fact that "the Company and its former executives engaged in fraudulent schemes involving P2P lending immediately before the transition to bitcoin mining" because, as disclosed by Bit Digital in a Form 6-K, two of its former officers who were criminally charged, Liu and Zeng, continued to have a substantial influence on the Company's business.  (CCAC ¶ 134.)

As acknowledged in the CCAC, Liu and Erxin were both removed as officers of the Company.  (CCAC at ¶ 134.)  But, as disclosed by the Company, they both continued to hold significant equity stakes in the Company.  (Taylor Ex. F at 85.)  There is no allegation of fact suggesting that either Liu or Zeng had any role in preparing the 3Q2020 Press Release or have any

involvement in the Company operations or financial reporting.  Indeed, Plaintiffs' reliance on those removals strongly suggest, under prevailing federal law, the *absence* of scienter, since "[p]rior, extensive public disclosures weigh against an inference of scienter."  *In re GLG Life Tech Corp. Sec. Litig.*, No. 11 Civ. 9150 (KBF), 2014 WL 464762, at \*6 (S.D.N.Y. Feb. 3, 2014).

### f.      Resignation or removal of officers/directors

The CCAC alleges that an inference of scienter is supported by the timing of removal or resignation of officers and directors following publication of the JCAP Report.   (CCAC at ¶¶ 135-138.)  But timing alone is insufficient.  Courts have "consistently held that an officer's resignation, without more is insufficient to support a strong inference of scienter."  *Gillis*, 197 F. Supp. at 605; *see also Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. Aug. 31 2018) (Carter Jr., J.) (noting that "there are any number of reasons that an executive might resign, most of which are not related to fraud") (citation omitted).  "[R]esignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter."  *Glasser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011).  "Such can be the case when independent facts indicate that the resignation was somehow tied to the fraud alleged, that the resignation somehow alerted defendants to the fraud, or that defendants' scienter was otherwise evident." *Id.*; *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d at 366 (resignations insufficient to raise inference of scienter "without factual allegations linking the resignations to the alleged fraud").

Absent any alleged facts linking the resignations to the supposed fraud, it is "more likely that [the resigning Defendants] were terminated and resigned as a result of company mismanagement, not securities fraud.'" *In re Iconix Brand Grp., Inc.*, 2017 U.S. Dist. LEXIS 177986, at \*19 (quoting *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn.

2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009)).   But "[w]ithout additional factual allegations linking [his] resignation . . . to the alleged fraud, the Court finds these allegations insufficient to raise a strong inference of scienter." *PXRE*, 600 F. Supp. 2d at 545 (collecting cases holding the same); *accord, e.g., In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 446-447 (S.D.N.Y. 2005) ("Plaintiffs, however, have alleged no facts linking the resignation of [two individual defendants] to the accounting improprieties at BISYS.  In reality, there are any number of reasons that an executive might resign, most of which are not related to fraud."); *Wyche v. Advanced Drainage Sys.*, 2017 U.S. Dist. LEXIS 34656 at * 51 (S.D.N.Y. March 10, 2017).

Thus, lacking additional factual allegations that link the timing of the resignations to the alleged fraud, Plaintiffs' claims regarding the resignations of the officers and director must fail. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d at 366.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the CCAC in its entirety with prejudice and without leave to amend.

By: /s/ *Stuart Kagen*

Stuart Kagen
Joel M. Taylor
Christopher B. Greene
KAGEN, CASPERSEN & BOGART PLLC
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 880-2045
skagen@kcbfirm.com
jtaylor@kcbfirm.com
cgreene@kcbfirm.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on November 19, 2021, I electronically filed the foregoing document with the clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record.

<u>s/ <em>Christopher Greene</em></u>
Christopher Greene
