# EXHIBIT K



Home | Previous Page

U.S. Securities and Exchange Commission

# U.S. SECURITIES AND EXCHANGE COMMISSION

**Litigation Release No. 23266 / May 20, 2015**

*Securities and Exchange Commission v. China Valves Technology, Inc., et al.*, Civil Action No. 1:14-cv-01630 (U.S. District Court for the District of Columbia)

## SEC Obtains Final Judgments Against China Valves Technology, Inc. and Two Senior Officers in Fraud Case

The Securities and Exchange Commission ("Commission") announced today that on May 13, 2015, the Honorable Reggie B. Walton of the United States District Court for the District of Columbia entered final judgments by consent against defendants China Valves Technology, Inc. ("China Valves"), its Chairman and former CEO, Siping Fang ("Fang"), and its CFO, Renrui Tang ("Tang"). The final judgments: (i) permanently enjoin the defendants from future violations of the anti-fraud, reporting, recordkeeping, and internal controls provisions of the federal securities laws; (ii) order China Valves, Fang, and Tang to pay civil penalties of $575,000, $75,000, and $40,000, respectively; (iii) bar Fang from serving as an officer and director for five years; and (iv) bar Tang from serving as an officer and director for three years. The Commission today also issued an order pursuant to Rule 102(e)(3)(i) denying Tang the privilege of appearing or practicing as an accountant before the Commission with the right to apply for reinstatement after three years.

The case is the latest from the SEC's Cross-Border Working Group that focuses on companies with substantial foreign operations that are publicly traded in the U.S. China Valves was a China-based U.S. issuer formed through a reverse merger in 2007. On March 4, 2015, the Commission issued an order revoking the registration of China Valves securities pursuant to Section 12(j) of the Exchange Act.

The Commission's complaint, filed on September 29, 2014, alleged that China Valves, Fang, Tang, and Jianbao Wang ("Wang"), China Valves's former CEO, intentionally misled investors about the nature of China Valves's 2010 acquisition of Watts Valve Changsha Co., Ltd. ("Changsha Valve") in an effort to mask the subsidiary's prior investigation of violations of the Foreign Corrupt Practices Act ("FCPA") and China Valves's decision to pay sales commissions to employees that potentially violated the FCPA. The complaint further alleged that, in 2011, China Valves materially overstated income and understated liabilities incurred by a wholly-owned subsidiary, Shanghai Pudong Hanwei Valve Co., Ltd ("Hanwei Valve"), when it mischaracterized certain value added tax payments in an attempt to hide the purchase of a valve that it intended to reverse engineer.

The Commission's complaint alleged that China Valves, Fang, Wang, and Tang violated the antifraud provisions of the securities laws, Section 10(b) of the Exchange Act of 1934 (Exchange Act) and Rule 10b-5. The complaint further alleged that China Valves violated reporting, recordkeeping, and internal controls provisions of the federal securities laws, Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13. Finally, the complaint alleged that Fang, Wang, and Tang falsely certified that China Valves's filings contained no material

China Valves Technology, Inc., et al. (Release No. LR-23266, May 21, 2015)

misstatements in violation of Exchange Act Rule 13a-14, and aided and abetted China Valves's violations of the reporting and books and records provisions.

China Valves, Fang, and Tang settled the Commission's charges without admitting or denying the charges in the complaint. The litigation is continuing against Wang.

The SEC's continuing investigation has been conducted by Patrick Feeney, Sarah Nilson, Kelly Dragelin, and Janet Yang, and supervised by Melissa Hodgman. Alfred Day leads the litigation team.

See also:

[Litigation Release No. 23096](#)

[SEC Complaint](#)

[Order of Suspension of Trading; Exchange Act Release No. 73241](#)

Order Making Findings and Revoking Registration of Securities Pursuant to Section 12(j) of the Securities Exchange Act of 1934

Order Instituting Administrative Proceedings Pursuant to Rule 102e) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions as to Renrui Tang

*http://www.sec.gov/litigation/litreleases/2015/lr23266.htm*

---

Modified: 05/21/2015

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, 100 F. Street N.E., Washington DC 20549  <br><br>Plaintiff,  <br><br>v.  <br><br>CHINA VALVES TECHNOLOGY, INC., 21F Kineer Plaza, 226 Jinshui Road Zhengzhou, Henan Province, PRC 450008  <br><br>SIPING FANG, c/o 21F Kineer Plaza, 226 Jinshui Road Zhengzhou, Henan Province, PRC 450008  <br><br>JIANBAO WANG, and c/o 21F Kineer Plaza, 226 Jinshui Road Zhengzhou, Henan Province, PRC 450008  <br><br>RENRUI TANG, c/o 21F Kineer Plaza, 226 Jinshui Road Zhengzhou, Henan Province, PRC 450008  <br><br>Defendants. | 1:14-cv-01640 |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or "SEC"), alleges:

## SUMMARY

1.    This action arises from the fraudulent conduct of China Valves Technology, Inc. ("CVVT") and three of its senior officers:  Siping Fang ("Fang"), CVVT's founder, former Chief Executive Officer ("CEO"), and long-time Chairman of the Board; Jianbao Wang ("Wang"),

1

CVVT's former CEO and General Manager; and Renrui Tang ("Tang"), CVVT's current Chief

Financial Officer ("CFO") and long-time Financial Controller.

2.       Defendants misled investors about the true nature and price of CVVT's 2010

acquisition of Watts Valve Changsha Co., Ltd. ("Changsha Valve").  In addition, in 2011, CVVT

mischaracterized and materially overstated income and understated liabilities incurred by a

wholly-owned subsidiary, Shanghai Pudong Hanwei Valve Co., Ltd ("Hanwei Valve").  Hanwei

Valve purchased a valve with the plan to reverse engineer the product but, because of intellectual

property concerns, intentionally disguised the payments for the valve in its books and records as

Value Added Tax ("VAT") payments purportedly made to the local tax authorities.

3.       The Commission brings this action seeking permanent injunctive relief to prevent

future violations of the federal securities laws, civil penalties, officer and director bars, and any

other appropriate relief.

## JURISDICTION

4.       This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the

Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27

of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

5.       Venue is proper in this judicial district pursuant to Section 22(a) of the Securities

Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain

of the acts and omissions constituting violations alleged herein occurred in this judicial district.

6.       Defendants, directly and indirectly, made use of the mails and of the means and

instrumentalities of interstate commerce in connection with the acts, practices, and courses of

business described in this Complaint.

## DEFENDANTS

### CVVT

7.      CVVT is a Nevada corporation with operations solely in the People's Republic of China ("China").  CVVT became a U.S. issuer in December 2007 through a reverse merger with Intercontinental Resources, Inc., a Nevada shell corporation.

8.      CVVT's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78*l*(g)] and was listed on the Nasdaq Global Market (NASDAQ) under the symbol "CVVT."

9.      On September 21, 2012, CVVT filed a Form 25 voluntarily withdrawing its securities from listing on and registration with NASDAQ.  Since that time, CVVT's stock has been quoted on OTC Link (formerly the Pink Sheets) under the symbol CVVT.

10.     CVVT's stock price has fallen from $13.60 in March 2010 to a price of $0.60 per share as of September 26, 2014.

11.     CVVT is registered with the Commission and subject to the periodic reporting requirements, internal controls, and books and records provisions pursuant to Section 13 of the Exchange Act [15 U.S.C. § 78m].  CVVT has failed to file periodic reports since the quarter ended March 31, 2012.

### Individual Defendants

12.     **Siping Fang**, age 61, is a Chinese national residing in China.  Fang founded CVVT and served as its CEO until October 2010.  Fang has served as the Chairman of CVVT's board since the company became a U.S. issuer.  Fang also held himself out and acted as President of CVVT from at least March 2009 to at least March 2011.

3

13.     **Jianbao Wang**, age 44, is a Chinese national residing in China.  Wang served as CVVT's CEO from October 2010 through February 2013 and its General Manager from July 2009 through October 2010.  Prior to CVVT's disclosing that Wang had been appointed CEO, Wang held himself out and acted as CVVT's CEO from at least December 2009.

14.     **Renrui Tang**, age 41, is a Chinese national residing in China.  Tang has served as CVVT's CFO since June 2013.  Tang served as CVVT's Financial Controller from December 2010 through June 2013; interim CFO between February 2009 and July 2009 and between May 2010 and December 2010; CFO from December 2007 through March 2009; and Director from December 2007 through November 2008.  Tang held himself out and acted as CFO and Treasurer of CVVT from at least August 2010 to at least November 2010.  Tang also held a variety of positions related to finance and accounting with CVVT's subsidiaries between 1994 and 2008.  CVVT claims in its filings that Tang is an "International Certified Public Accountant."

## OTHER RELEVANT ENTITIES

15.     **Able Delight Investment Limited** ("Able Delight") was a Hong Kong domiciled entity created by CVVT in November 2009.  CVVT and its officers created Able Delight, an entity without any operations or assets except those provided by CVVT, solely for the purpose of acting as a straw man to mask CVVT's purchase of Changsha Valve from Watts.  Fang and Wang were principals of and controlled Able Delight, and a relative of Fang, who was also the wife of a 34% shareholder of CVVT's, was appointed legal representative of Able Delight.  Given these relationships, CVVT and Able Delight were related parties under SK-404 [17 CFR § 229.404].

4

16.     **Watts Water Technologies, Inc.** ("Watts") is a Delaware corporation and U.S.

public issuer.  Changsha Valve became a wholly-owned Chinese subsidiary of Watts in 2006.  In

August 2009, Watts disclosed to the Commission and the Department of Justice that it had

discovered potential violations of the Foreign Corrupt Practices Act ("FCPA") at Changsha

Valve.  Watts sold Changsha Valve to CVVT in January 2010.  Subsequently, in October 2011,

Watts entered into a settled administrative proceeding with the Commission.  Based on an offer

of settlement from Watts, the Commission found violations of the books and records provisions

of the FCPA.

## FACTUAL ALLEGATIONS

**A.**     **Defendants Made Numerous Material Misrepresentations and Omissions in
        Connection With Its Acquisition of Changsha Valve**

17.     In January 2010, CVVT purchased Changsha Valve from Watts through Able

Delight, an entity created by CVVT solely for the purpose of serving as a straw man through

which CVVT could purchase Changsha Valve.  CVVT officers (Fang and Wang) acted as Able

Delight's principals and a relative of Fang, who was also the wife of a 34% CVVT shareholder,

was appointed as a titular legal representative of Able Delight.  The purchase price documented

in agreements between Watts and Able Delight was just over $8.4 million.

**1.     The FCPA Investigation at Changsha Valve**

18.     Watts sold Changsha Valve in the aftermath of an FCPA internal investigation

(the "FCPA Investigation").  Changsha Valve's sales force regularly made payments to

employees of state-owned entities to favor Changsha Valve's products.  These payments were

disguised as sales commissions paid to the members of the Changsha Valve sales force under an

internal, written sales policy that allowed the sales force to pay up to 3% of the total contract

amount to employees of state-owned entities.  Watts refused to pay outstanding commission

amounts that it determined were not FCPA-compliant and implemented internal controls designed to prevent the sales force from violating the FCPA going forward.  Shortly after reporting their internal investigation to the Commission and the Department of Justice and disclosing the investigation in its public filings with the Commission, Watts decided to sell Changsha Valve.

### 2.  Defendants Knew of the FCPA Investigation When it Acquired the Wholly-Owned Subsidiary

19.     CVVT purchased Changsha Valve with full knowledge of the subsidiary's FCPA Investigation.  CVVT knew about Changsha Valve's FCPA Investigation as early as August 2009, when Watts disclosed in its public filings with the Commission that it was conducting an investigation into whether employees at Changsha Valve violated the FCPA.

20.     Moreover, in connection with the sale of Changsha Valve, Watts provided the various bidders, including CVVT, access to a due diligence data room that contained information about its investigation regarding FCPA violations, including:  copies of Watts' public disclosures of FCPA violations at Changsha Valve; a spreadsheet that broke out the commissions that Watts found to be FCPA compliant and those it concluded were not ("FCPA Commission Spreadsheet"); and the cease-and-desist letter sent to the Changsha Valve sales force informing them that they were prohibited from making payments to state-owned entities.  Wang, who was the CVVT representative principally responsible for conducting the due diligence for Changsha Valve, visited Watts' due diligence room and reviewed these documents.

21.     Watts also provided information about the FCPA investigation directly to CVVT and discussed the issues with Wang.  For example, during the due diligence period, attorneys for Watts sent additional copies of the FCPA disclosure documents and the FCPA Commission Spreadsheet to CVVT's China-based counsel.  Additionally, Watts discussed the FCPA

Investigation of Changsha Valve with Wang during the due diligence before CVVT acquired

Changsha Valve. Moreover, prior to the closing of the transaction, Watts sent an email to Wang

that included an updated version of the FCPA Commission Spreadsheet.

### 3.   CVVT Acquired Changsha Valve Through Able Delight

22.     Despite the FCPA Investigation and Watts refusal to pay certain commissions

amounts that it determined were not FCPA-compliant, CVVT acquired Changsha Valve. Watts

and Able Delight executed an Equity Transfer Agreement ("Equity Agreement") memorializing

the terms of the acquisition and signed on behalf of Able Delight by Fang (who was CEO and

Chairman of CVVT at the time) and Wang (who was General Manager of CVVT at the time).

23.     CVVT funded the purchase of Changsha Valve. Just prior to the execution of the

Equity Agreement, CVVT agreed to "loan" Able Delight $6.12 million to purchase Changsha

Valve. $6.07 million of this amount was paid to Watts for Changsha Valve, and $50,000 was

paid to Fang's relative for acting as Able Delight's legal representative. The purchase price

listed in the Equity Agreement was $6.07 million to be paid in three installments. A separate

Closing Agreement, signed by Wang on January 10, 2010, provided that, in addition to the $6.07

million cash consideration paid to Watts, CVVT would pay $1.17 million each to two Chinese

subsidiaries of Watts to settle previous debt between the subsidiaries and Changsha Valve. Thus,

the agreements between Watts and Able Delight required CVVT to pay a total of $8.4 million to

purchase the equity interest of Changsha Valve.

24.     However, in February and March 2010, CVVT paid an additional $6.59 million

toward certain recorded and unrecorded liabilities of Changsha Valve, including payment of $2.2

million outstanding sales commissions to the Changsha Valve's sales force – the very same

commissions Watts had declined to pay because of suspected FCPA violations. CVVT's

payment of these additional amounts was not required under the agreements memorializing the

transaction and was not contemplated by the parties as part of the acquisition.  In fact, the

commission amounts paid by CVVT were not reflected in Changsha Valve's books and records.

### 4.   CVVT Filed a False and Misleading Form 8-K Announcing Its Acquisition

25.     On February 8, 2010, CVVT filed and Fang signed a Form 8-K that included an

already-issued press release falsely announcing that CVVT had purchased solely the assets of

Able Delight (Changsha) Valve Co., Ltd (previously defined herein as "Changsha Valve") from

Able Delight "for a cash price of approximately $15 million."  As the Equity and Closing

Agreements with Watts make clear, CVVT actually purchased 100% of the equity interest in

Changsha Valve for a price of $8.4 million, over $6.5 million less than claimed.  The Form 8-K

also failed to inform investors that CVVT independently used the balance of the purported $15

million purchase price to pay an additional $6.59 million in recorded and unrecorded liabilities

of Changsha Valve and acquisition related expenses.

26.     In addition, the Form 8-K omitted any mention of the FCPA investigation of

Changsha Valve, or that the payment of unrecorded liabilities included payment of $2.2 million

in sales commissions that were not recorded on Changsha Valve's books and that Watts had

determined were not FCPA-compliant.  Indeed, in an attempt to hide the FCPA Investigation at

Changsha Valve, the 8-K made no mention of Watts, the true seller, and instead falsely depicted

Able Delight, a straw man through which CVVT purchased Changsha Valve from Watts, as the

seller.  Further, CVVT and Fang falsely described Able Delight as "a leading producer of

butterfly valves, check valves and ball valves for hydropower plants, thermal power plants,

nuclear power plants and water and sewage treatment applications."  CVVT and Fang reinforced

the mischaracterization of Able Delight as an operating company in the press release filed with

the Form 8-K, which quoted Fang as falsely stating that: "Able Delight's established customer

relationships with water treatment facilities and thermal power plants in Hunan province and

high-quality manufacturing practices make it a powerful addition to our existing operations.

Able Delight's product portfolio consists mainly of high-end valves, and it is the only

manufacturer in China with capacity to produce large butterfly valves." The Form 8-K also

attached a purported Asset Purchase Agreement signed by Fang between Able Delight and

CVVT, when in fact the acquisition was an equity purchase between Watts and CVVT through

Able Delight as a straw man.

### 5.    **CVVT Filed False and Misleading Forms 10-Q in 2010**

27.    In its subsequent Forms 10-Q for the quarters ended March 31, 2010, June 30,

2010, and September 30, 2010 ("2010 Forms 10-Q"), CVVT and certain of its officers and

directors falsely represented the transaction as "the acquisition of 100% of the assets of Able

Delight (Changsha) Valve Co. Ltd for a total cash consideration of $15.0 million." Further, the

Forms 10-Q incorrectly disclosed the fair value of the net assets acquired and assumed through

the equity purchase transaction. Specifically, the Forms 10-Q disclosed $4,944,755 in inventory,

$10,113,703 in building and equipment, and liabilities as zero.

28.    The 2010 Forms 10-Q also misrepresented and failed to disclose material facts

about the transaction, including the true purchase price for Changsha Valve; the form of the

acquisition; that Watts was the seller; the FCPA Investigation at Changsha Valve; the additional

payments made around the time of the acquisition, including the $2.2 million in unrecorded sales

commissions that Watts had determined were not FCPA-compliant; and the role of related

parties in the acquisition.

### 6. CVVT and Wang Admitted Making Some Material Misstatements and Omissions to an Analyst

29.     In response to an email from an analyst, CVVT and Wang provided additional information about the transaction that established that some of the disclosures about the Changsha Valve acquisition in CVVT's Form 8-K and Forms 10-Q were false and misleading. The analyst sent an email to Wang in October seeking answers to a series of questions about the Changsha Valve transaction, including whether Changsha Valve was previously a subsidiary of Watts and, if so, why CVVT failed to disclose the FCPA investigation.  On October 7, 2010, Wang sent an email response to the analyst (the "Wang Email") admitting for the first time that Watts was the seller of Changsha Valve; that CVVT made the acquisition through—rather than from—Able Delight; and that CVVT paid Watts approximately $8.4 million for Changsha Valve and that the balance of the purported purchase price was used to pay off existing liabilities, including what Wang characterized as "suspended commissions."  Although the Wang Email was the most forthcoming statement by CVVT about the transaction at that time, it was not public and still contained false and misleading statements, including that:  (i) CVVT was allegedly unaware of the Watts' FCPA investigation of Changsha Valve, and (ii) Watts required CVVT to create Able Delight.

30.     The Wang Email also marked the first time that CVVT's independent board members and auditors learned pertinent material details of the Changsha Valve acquisition, illustrating the extent to which CVVT and its officers went to conceal the true nature of the transaction.  According to an independent member of CVVT's board, he and other independent directors learned from the Wang Email that CVVT purchased Changsha Valve from Watts, that Able Delight was not a third party seller, that the purchase was an equity purchase and not an asset purchase, and that $6.59 million of the $15 million "purchase price" was actually paid to

10

multiple parties for various purposes.  Indeed, Fang omitted these details when he described the transaction to the Board for its approval, instead falsely representing that the transaction was consistent with the terms of the false Form 8-K described in paragraph 25 and 26 above.

31.     Prior to the Wang Email, CVVT management had also misrepresented the transaction to its auditors, describing it as an asset purchase from a third party, Able Delight, for $15 million.  During the first quarter review, CVVT's auditor raised questions about the loan that CVVT made to Able Delight for the purchase of Changsha Valve.  Tang responded that Able Delight was an active bidder for Changsha Valve and that CVVT decided to negotiate with Able Delight to purchase Changsha Valve in the event Able Delight won the auction.  As the agreements with Watts make clear, CVVT's description of its purchase from Able Delight was false.  Moreover, CVVT and Tang also failed to disclose to its auditors that Able Delight was a related party.

32.     Once CVVT's independent board members learned of the actual details of the acquisition, they insisted that CVVT management issue the amended Form 8-K ("Form 8-K/A") on November 18, 2010, correcting the company's prior disclosures.  Even after drafts of that Form 8-K/A were circulating, however, CVVT, Wang, and Tang filed the third quarter Form 10-Q on November 15, 2010, that still contained false and misleading information about the Changsha Valve acquisition.  Prior to the filing of the third quarter Form 10-Q, Wang had admitted in the Wang Email that the information was false.  Tang also received a copy of the Wang Email, which confirmed that the information included in the Form 10-Q that Tang signed and certified was false.  As CFO and Treasurer of CVVT at the time, Tang knew or was reckless in not knowing, the true nature of the transaction and related payments.  Moreover, CVVT's auditors recommended that CVVT make revisions to its third quarter Form 10-Q to correct its

11

disclosure of the acquisition in response to information they had learned through the Wang

Email, but CVVT failed to make the recommended changes.

      7.    **CVVT Filed a Form 8-K/A Partially Correcting Some Misstatements and Omissions**

    33.    The November 18, 2010 Form 8-K/A, filed by CVVT and Wang nine months

after the initial Form 8-K, disclosed a materially different transaction than the one disclosed in

the initial Form 8-K and subsequent Forms 10-Q.  The Form 8-K/A for the first time disclosed

that the transaction was an equity purchase rather than an asset purchase; that CVVT purchased

100% of the equity of Changsha Valve; that Watts was the seller; that CVVT arranged for the

formation of Able Delight by a third party; that the consideration paid to Watts was $8.4 million;

and that the balance of the purported purchase price—$6.59 million—was used to pay off

Changsha Valve's liabilities as follows:

|  | (amount in millions*) |
| --- | --- |
| Payment of accounts payable to third parties | $2.27 (approx) |
| Payment to Changsha Valve's sales personnel for<br>   unpaid sales commission | $2.20 (approx) |
| Payment to employees of Changsha Valve for unpaid<br>   salaries and year-end bonuses | $0.66 (approx) |
| Payment to employees of Changsha Valve for<br>   severance payments | $0.88 (approx) |
| Payment of legal fees for due diligence and<br>   documentation | $0.53 (approx) |
| Payment of compensation to Able Delight | $0.05 |
| TOTAL | $6.59 million |

    34.    While the Form 8-K/A more accurately described the transaction, it continued to

omit material information and contained new material misrepresentations.  Among other things,

it falsely asserted that Watts "required, as a condition of the sale of Changsha Valve, that the

purchasing party be a company whose registered owner was not [CVVT] or any of its affiliates."

Further, it failed to disclose that Able Delight was a related party, and falsely asserted that the

legal representative of Able Delight—the wife of a CVVT majority shareholder—was a "third

party." CVVT and Wang also failed to inform investors in the Form 8-K/A about the FCPA

Investigation at Changsha Valve and that Watts had determined that the $2.2 million in sales

commissions that CVVT paid were not FCPA-compliant.

35.     Contrary to CVVT's claim, Watts did not require Changsha Valve's purchaser to

be a company who was not CVVT or an affiliate. Rather, CVVT acquired Changsha Valve

though Able Delight, and initially omitted any reference to Watts as the seller, to avoid

disclosing the FCPA Investigation at Changsha Valve. In addition, CVVT's creation of Able

Delight and mischaracterization of the transaction allowed CVVT to mask the commission

payments that could expose CVVT to potential FCPA liability, and to hide those payments in the

purported purchase price for Changsha Valve.

### 8.   CVVT's 2010 Form 10-K Provided Yet Another Inaccurate and Incomplete Explanation of the Acquisition

36.     Yet another description of the acquisition that differed from its prior Forms 10-Q

and Forms 8-K was provided in the Form 10-K for the fiscal-year ended December 31, 2010

("2010 Form 10-K") that CVVT filed on March 16, 2011 and which was signed by Wang and

Fang. According to the filing, CVVT admitted that it acquired the equity interests in Changsha

Valve from Watts, but now stated that the purchase price was "$12.12 million plus certain

assumed obligations and acquisition expenses for which the company paid off $2.81 million or

an aggregate expenditure of approximately $15 million at the time of acquisition." The 2010

Form 10-K also contained an entirely new footnote disclosure of the acquisition that contradicted

CVVT's prior 2010 Forms 10-Q. As discussed above, CVVT's 2010 Forms 10-Q stated that

liabilities acquired were zero and accounted for assets acquired as $4,944,755 inventory and

$10,112,703 buildings and equipment. The 2010 Form 10-K provided an entirely different

disclosure, listing liabilities of $3,703,845; inventory of $4,954,596; building and equipment of $4,595,254; and now including amounts for cash, receivables, and intangibles. The inconsistent manner in which the company disclosed the transaction in its Forms 10-Q and 10-K is illustrated below:

|  | Per 10-Q | Per 10-K |
|---|---|---|
| Cash | $ - | $ 8,740 |
| Receivables | - | 3,454,156 |
| Inventory | 4,944,755 | 4,954,596 |
| Buildings and equipment | 10,113,703 | 4,595,254 |
| Intangible Assets | | 5,490,873 |
| Total assets | 15,058,458 | 18,503,619 |
| Payables | - | 3,703,845 |
| Total liabilities | - | 3,703,845 |
| Net assets | $ 15,058,458 | $ 14,799,774 |

37.     In addition, CVVT disclosed for the first time in its 2010 10-K that the individual who purportedly formed Able Delight and was represented in the 8-K/A as a "third party"—was the wife of a 34% stockholder in the company. While the 2010 Form 10-K corrected some inaccurate information about the acquisition, it failed to disclose the FCPA Investigation at Changsha Valve or that the commission payments potentially violated the FCPA. These material facts remain undisclosed by CVVT to date.

9.     **CVVT and Wang Made False Statements About the Changsha Valve Acquisition in its Responses to Corporation Finance Comment Letters**

38.     CVVT, through Wang, also made a series of evolving false statements in its responses to comment letters issued by the SEC's Division of Corporation Finance concerning the company's 2010 Form 10-K. In a June 10, 2011 comment letter response, Wang falsely stated that "the formation of [Able Delight] was required by [Watts]. [Watts] required, as a condition of the sale of Changsha Valve, that the purchasing party be a company whose

14

registered owner was not the Company, a direct competitor of [Watts]." In a subsequent statement in the June 10 letter, Wang reiterated that it was Watts' desire not to sell to a direct competitor that necessitated the formation of Able Delight. In a follow up comment letter response dated August 4, 2011, Wang changed the purported reason for creating Able Delight to Watts not wanting to sell Changsha Valve to a public company. As discussed above, Watts did not request or require that CVVT form Able Delight or that the purchasing party be a company other than CVVT.

39.     CVVT also made false statements in its responses to SEC comment letters concerning the breakdown of payments made in connection with the acquisition, including the $2.2 million in sales commissions that Watts had determined were not FCPA-compliant. In its July 12, 2011 comment letter response, Wang asserts that these amounts were paid "on behalf of Watts." In the company's August 3, 2011 comment letter response, Wang claimed that the payments, including the commissions that Watts found were not FCPA-compliant, were required by Watts as a "post-closing condition" to the agreement between Watts and Able Delight. CVVT attempted to assert that such "post-closing condition" was entered into pursuant to email communications, but Watts denies that claim and no emails to that effect have been located. When CVVT's auditors requested such emails, CVVT produced an email that only discussed the possible payment of commissions to one employee, and in no way constituted an agreement or request to pay $2.2 million in outstanding commissions, among other amounts.

**B.    CVVT Underreported Liabilities and Overstated Income by $1.9 million as a Result of Falsely Recording VAT Payments for Hanwei Valve**

40.     CVVT underreported liabilities and overstated income by $1.9 million in its Form 10-K filing for the fiscal year ended September 30, 2011 ("2011 Form 10-K") as a result of misconduct by Hanwei Valve, another CVVT subsidiary. This occurred when Hanwei Valve

purchased a valve for $1.9 million with the intent to reverse engineer it and improve Hanwei Valves's products. However, because of intellectual property concerns, Hanwei Valve attempted to mask the purchase by disguising $1.7 million in payments for the valve in its books and records as VAT payments against the existing VAT payables, and failing to record an additional $200,000 in accrued liabilities that were due and owing for the valve at the year end. These amounts should have been recorded as operating expenses and payables.

41.     The misstatements in Hanwei Valve's books and records were incorporated into CVVT's financials and caused CVVT to materially underreport liabilities and overstate income by $1.9 million in its 2011 Form 10-K.

42.     Hanwei Valve intentionally mis-recorded the purchase of the valve as payments against its VAT payable to conceal its purchase and avoid intellectual property concerns, and took steps to prevent investors and other outside parties from discovering its conduct, including providing its then-auditors with false VAT tax returns. The false VAT tax returns, which were purportedly filed with the local tax authorities, falsely represented that Hanwei Valve had made RMB 11,059,190.94 (approximately $1,727,500 USD) in payments against Hanwei Valve's VAT payable during the 2011 fiscal year.

43.     During the 2012 first quarter review, new auditors engaged by CVVT discovered that Hanwei Valve's VAT returns did not reconcile with the company's 2011 10-K, which included the false VAT entries. At the insistence of CVVT's auditor and independent board members, CVVT filed an 8-K on February 14, 2012 disclosing that the VAT tax amounts did not reconcile and stating that the company's first and second quarter Forms 10-Q and 10-K for 2011 should no longer be relied upon. However, CVVT failed to disclose the details and the true nature of the fraud at that time.

44.     In or about February 2012, CVVT sent its former auditors a worksheet admitting that it had only paid RMB 282,270 (approximately $44,000 USD) to the local tax authorities against the VAT payable for the fiscal year 2011, and not the $1.7 million outstanding and previously represented as paid during the audit.

45.     On August 12, 2013, over a year and a half after discovering the VAT misstatement and filing the initial 8-K, CVVT filed an amended Form 8-K for the first time disclosing the details of the underlying fraud.  The Form 8-K/A admitted that Hanwei Valve management purposefully mis-recorded the payments for the equipment as payments against the VAT payable:

> Management found that Hanwei purchased certain equipment from a third party to perform reverse engineering and improve its products.  Since the third party did not provide Hanwei with an invoice or any other written record of the sale and, because Hanwei was concerned that its purchase of the equipment might cause it to become the subject of a challenge with respect to intellectual property rights associated with the equipment, Hanwei's management made the determination to account for this purchase transaction as VAT and supplementary tax payments against the VAT payable and paid the third party as such . . . for the period between January and September 2011, Hanwei underpaid approximately RMB 11.0 million (approximately $1.7 million) for VAT and supplementary tax.

46.     The $1.7 million claimed to have been paid against the VAT payable was actually paid to the daughter of a third-party who purportedly sold the valve to Hanwei Valve.  Instead of properly booking the payments for the valve as operating expenses, Hanwei Valve intentionally recorded the payments as VAT and supplementary tax payments to conceal the purchase of the equipment in an attempt to avoid intellectual property concerns.  The remaining $200,000 for the valve was due and outstanding as of the end of fiscal year 2011, but was not properly recorded in Hanwei Valve's books and records as payables.

47.     As a result of Hanwei Valve's intentionally mis-recording the purchase of the valve in Hanwei Valve's books and records, CVVT materially underreported liabilities and

17

overstated income by $1.9 million in its 2011 Form 10-K. CVVT thus materially misstated its net income by approximately 6.4% and its pre-tax income by approximately 4.7% in its 2011 Form 10-K. These misstatements and omissions were material because a reasonable shareholder would have considered it important in making an investment decision to know that: (i) CVVT had overstated its income and understated its liabilities by $1.9 million; (ii) CVVT's subsidiary had acquired equipment for the purpose of reverse engineering it, which management believed could violate the seller's intellectual property rights; and (iii) Hanwei Valve intentionally mis-recorded payments for the equipment as payments against the VAT payable to conceal the purchase of the equipment.

## C.   CVVT is Delinquent in Filing its Required Periodic Reports

48.     CVVT has not filed periodic reports with the Commission since the quarter ended March 31, 2012 to the present. As a result, CVVT has been in violation of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder for over two years for its non-reporting.

49.     CVVT has acknowledged that its failure to properly record Hanwei Valve's VAT payments necessitates restatement of the company's quarterly and annual financial statements for 2011. Thus, investors have been deprived of accurate, reliable information for over three years.

50.     It is likely that CVVT will continue to remain delinquent in filing periodic reports with the Commission. Two audit firms engaged by CVVT since 2012 resigned due to disputes with the company over payment of fees and failure to obtain information needed to complete the audits. CVVT recently disclosed in an 8-K filed on September 2, 2014, that it has again engaged new auditors. Given the company's history and failure to file required reports for over two years, however, it is unlikely that the engagement will lead to CVVT coming current on its filing obligations in the near future and filing periodic reports on a timely basis in the future.

**D.      Defendants' Misstatements**

51.      **Form 8-K dated February 8, 2010.**  As set forth above, CVVT's Form 8-K,

signed by Fang on February 8, 2010, falsely stated that CVVT had purchased the assets of Able

Delight for $15 million, and failed to disclose that the purchase was actually an equity purchase,

the role of related parties in the acquisition, that the true seller was Watts, that Watts had

conducted an internal investigation into potential violations of the FCPA at Changsha Valve, and

that $6.59 million of the purported purchase price was used to pay recorded and unrecorded

liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially

violated the FCPA.  Taken together, these false statements and omissions were material because

a reasonable shareholder would want to know the true nature of the acquisition, the role of

related parties, about the FCPA Investigation at Changsha Valve, and that CVVT paid amounts

that potentially violated the FCPA.  As issuer of the Form 8-K, CVVT exercised actual control

over the content of these false statements and omissions and knew, or was reckless in not

knowing, that the statements in the Form 8-K were false.

52.      As CEO and signer of the Form, Fang made and otherwise exercised actual

control over the content of these false statements and omissions.  Fang knew, or was reckless in

not knowing, that the Form 8-K contained misstatements and omissions concerning the nature of

the transaction and the role of related parties in the acquisition, among other reasons, because he

was a principal of Able Delight and had executed the Equity Agreement with Watts on behalf of

Able Delight.

53.      **Form 10-Q dated May 13, 2010.**  As set forth above, CVVT's first quarter Form

10-Q, signed and certified by Fang on May 13, 2010, falsely stated that CVVT had purchased the

assets of Able Delight for $15 million, incorrectly disclosed the fair value of net assets acquired

and assumed in connection with the acquisition, and failed to disclose that the purchase was actually an equity purchase, the role of related parties in the acquisition, that the true seller was Watts, that Watts had conducted an internal investigation into potential violations of the FCPA at Changsha Valve, and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially violated the FCPA.  Taken together, these false statements and omissions were material because a reasonable shareholder would want to know the true nature of the acquisition, the role of related parties, about the FCPA Investigation at Changsha Valve, and that CVVT paid amounts that potentially violated the FCPA.  As issuer of the Form 10-Q, CVVT exercised actual control over the content of these false statements and omissions and knew, or was reckless in not knowing, that the statements in the Form 10-Q were false.

54.     As CEO, signer, and certifier of the Form, Fang made and otherwise exercised actual control over the content of these false statements and omissions.  Fang knew, or was reckless in not knowing, that the Form 10-Q contained misstatements and omissions concerning the nature of the transaction and the role of related parties, among other reasons, because he was a principal of Able Delight and had executed the Equity Agreement with Watts on behalf of Able Delight

55.     **Form 10-Q dated August 11, 2010.**  As set forth above, CVVT's second quarter Form 10-Q, signed and certified by Fang and Tang on August 11, 2010, falsely stated that CVVT had purchased the assets of Able Delight for $15 million, incorrectly disclosed the fair value of net assets acquired and assumed in connection with the acquisition, and failed to disclose that the purchase was actually an equity purchase, the role of related parties, that the true seller was Watts, that Watts had conducted an internal investigation into potential violations of the FCPA at

20

Changsha Valve, and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially violated the FCPA.  Taken together, these false statements and omissions were material because a reasonable shareholder would want to know the true nature of the acquisition, the role of related parties, about the FCPA Investigation at Changsha Valve, and that CVVT paid amounts that potentially violated the FCPA.  As issuer of the Form 10-Q, CVVT exercised actual control over the content of these false statements and omissions and knew, or was reckless in not knowing, that the statements in the Form 10-Q were false.

56.     As CEO, signer, and certifier of the Form 10-Q, Fang made and otherwise exercised actual control over the content of these false statements and omissions.  Fang knew, or was reckless in not knowing, that the Form 10-Q contained misstatements and omissions concerning the nature of the transaction and the role of related parties because he was a principal of Able Delight and had executed the Equity Agreement with Watts on behalf of Able Delight.  As CFO, Treasurer, signer, and certifier of the Form 10-Q, Tang made and otherwise exercised actual control over the content of these false statements and omissions.

57.     As CFO and Treasurer of CVVT, Tang had access to all material information about CVVT's finances and was responsible for the accuracy of CVVT's books and records.  He therefore knew, or was reckless in not knowing, that statements in the Form 10-Q were false, including the nature of the transaction and related payments.

58.     **Form 10-Q dated November 15, 2010.**  As set forth above, CVVT's third quarter Form 10-Q, signed and certified by Wang and Tang on November 15, 2010, falsely stated that CVVT had purchased the assets of Able Delight for $15 million, incorrectly disclosed the fair value of net assets acquired and assumed in connection with the acquisition, and failed to

disclose the role of related parties in the acquisition, that the purchase was actually an equity

purchase, that the true seller was Watts, that Watts had conducted an internal investigation into

potential violations of the FCPA at Changsha Valve, and that $6.59 million of the purported

purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including

$2.2 million in sales commissions that potentially violated the FCPA.  Taken together, these

false statements and omissions were material because a reasonable shareholder would want to

know the role of relates parties, the true nature of the acquisition, about the FCPA Investigation

at Changsha Valve, and that CVVT paid amounts that potentially violated the FCPA.  As issuer

of the Form 10-Q, CVVT exercised actual control over the content of these false statements and

omissions and knew, or was reckless in not knowing, that the statements in the Form 10-Q were

false.

59.     As CEO, signer, and certifier of the Form 10-Q, Wang made and otherwise

exercised actual control over the content of these false statements and omissions.  Wang knew,

or was reckless in not knowing, that the Form 10-Q contained misstatements and omissions

concerning the nature of the transaction, the role of related parties in the acquisition, that Watts

had conducted an internal investigation into potential violations of the FCPA at Changsha Valve,

and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded

liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially

violated the FCPA because he conducted the due diligence on Changsha Valve, received

information related to the FCPA issues at Changsha Valve, and was a principal of Able Delight

and had executed the Equity and Closing Agreements with Watts on behalf of Able Delight.

60.     As CFO, Treasurer, signer, and certifier of the Form 10-Q, Tang made and

otherwise exercised actual control over the content of these false statements and omissions.

Tang knew, or was reckless in not knowing, that the Form 10-Q contained misstatements and omissions concerning the nature of the transaction and related payments, the role of related parties, and the FCPA Investigation because he had received the Wang Email informing him of this information and because of his role as CFO and Treasurer of CVVT.

61.     **Form 8-K/A dated November 18 2010.**  As set forth above, CVVT's Form 8-K/A, signed by Wang on November 18, 2010, falsely stated that Able Delight was formed by a third-party and that Watts required that the purchaser of Changsha Valve not be CVVT or an affiliate, and failed to disclose that Watts had conducted an internal investigation into potential violations of the FCPA at Changsha Valve and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially violated the FCPA.  Taken together, these false statements and omissions were material because a reasonable shareholder would want to know the role of related parties, the reasons for creating Able Delight, about the FCPA Investigation at Changsha Valve, and that CVVT paid amounts that potentially violated the FCPA.  As issuer of the Form 8-K/A, CVVT exercised actual control over the content of these false statements and omissions and knew, or was reckless in not knowing, that the statements in the Form 8-K/A were false.

62.     As CEO and signer of the Form, Wang made and otherwise exercised actual control over the content of these false statements and omissions.  Wang knew, or was reckless in not knowing, that the Form 8-K/A contained misstatements and omissions concerning the role of related parties, the reasons for creating Able Delight, that Watts had conducted an internal investigation into potential violations of the FCPA at Changsha Valve, and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially violated the FCPA, because

he conducted the due diligence on Changsha Valve, received information related to the FCPA issues at Changsha Valve, and was a principal of Able Delight and had executed the Equity and Closing Agreements with Watts on behalf of Able Delight.

63.     **Form 10-K dated March 16, 2011.**  As set forth above, CVVT's 2010 Form 10-K, signed by Fang and signed and certified by Wang on March 16, 2011, falsely stated that the purchase price of Changsha Valve was $12.12 million, and failed to disclose that Watts had conducted an internal investigation into potential violations of the FCPA at Changsha Valve and that $6.59 million of the purported purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including $2.2 million in sales commissions that potentially violated the FCPA.  Taken together, these false statements and omissions were material because a reasonable shareholder would want to know the true price of the acquisition, about the FCPA Investigation at Changsha Valve, and that CVVT paid amounts that potentially violated the FCPA.  As issuer of the Form 10-K, CVVT exercised actual control over the content of these false statements and omissions and knew, or was reckless in not knowing, that the statements in the Form 10-K were false.

64.     As President, Director, and signer of the Form 10-K, Fang made and otherwise exercised actual control over the content of these false statements and omissions.  Fang knew, or was reckless in not knowing, that the Form 10-K contained misstatements and omissions concerning the nature of the acquisition because he had executed the Equity Agreement with Watts on behalf of Able Delight.

65.     As CEO, signer, and certifier of the Form 10-K, Wang made and otherwise exercised actual control over the content of these false statements and omissions.  Wang knew, or was reckless in not knowing, that the Form 10-K contained misstatements and omissions

concerning the price of the acquisition, that Watts had conducted an internal investigation into
potential violations of the FCPA at Changsha Valve, and that $6.59 million of the purported
purchase price was used to pay recorded and unrecorded liabilities of Changsha Valve, including
$2.2 million in sales commissions that potentially violated the FCPA were false because he
conducted the due diligence on Changsha Valve, received information related to the FCPA issues
at Changsha Valve, and was a principal of Able Delight and had executed the Equity and Closing
Agreements with Watts on behalf of Able Delight.

66.     **Responses to SEC Comment Letters.**  As set forth above, CVVT's responses to
Corporation Finance comment letters, signed by Wang on June 10, 2011, July 12, 2011, and
August 4, 2011, which were publicly available on the SEC's EDGAR system, falsely stated that
Watts required the formation of Changsha Valve and that the payment of the recorded and
unrecorded liabilities of Changsha Valve, including the sales commissions that Watts had
determined were not FCPA-compliant, were required as part of the transaction.  Taken together,
these false statements and omissions were material because a reasonable shareholder would want
to know the true reason for creating Able Delight and the true details of the acquisition.  As CEO
and signer of the comment letters, Wang made and otherwise exercised actual control over the
content of these false statements and omissions.  Wang knew, or was reckless in not knowing,
that the comment letters contained misstatements and omissions concerning the reason for
creating Able Delight and the details of the payments made in connection with the acquisition
because he was a principal of Able Delight and had executed the Equity and Closing Agreements
with Watts on behalf of Able Delight.

67.     **Form 10-K dated November 18, 2011.**  As set forth above, CVVT's 2011 Form
10-K, issued on November 18, 2011, falsely stated CVVT's liabilities and income, and failed to

disclose that Hanwei Valve had purposefully mis-recorded the purchase of a valve as payments against Hanwei Valve's VAT payable to conceal the purchase of the valve because of intellectual property concerns. Taken together, these false statements and omissions were material because a reasonable shareholder would want to know that CVVT had overstated its income and understated its liabilities, that CVVT's subsidiary had acquired equipment for the purpose of reverse engineering it, which Hanwei Valve believed could potentially give rise to intellectual property concerns, and that Hanwei Valve intentionally mis-recorded payments for the equipment as payments against the VAT payable to conceal the purchase of the equipment. As issuer of the Form 10-K, CVVT exercised actual control over the content of these false statements and omissions and knew, or was reckless in not knowing, that the statements in the Form 10-K were false.

## FIRST CLAIM FOR RELIEF

### CVVT, Fang, Wang, and Tang Violated
### Exchange Act Section 10(b) and Rule 10b-5

68.     Paragraphs 1 through 67 are realleged and incorporated by reference.

69.     By reason of the conduct described above, Defendants CVVT, Fang, Wang, and Tang, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     With respect to the misrepresentations set forth above, CVVT and Fang knew, or were reckless in not knowing, that they were making false and misleading statements in CVVT's February 8, 2010 Form 8-K, first and second quarter Forms 10-Q, and 2010 Form 10-K in light

of the conduct described in detail above. CVVT and Fang likewise knew, or were reckless in not knowing, that the related omissions rendered the filings and other public statements misleading in light of the circumstances under which they were made. Fang signed the February 8, 2010 Form 8-K, first and second quarter Forms 10-Q, and 2010 Form 10-K as an officer of CVVT, which issued and filed the documents with the Commission. As such, CVVT and Fang exercised ultimate authority over the statements therein, and controlled not only the content of the communications, but also whether and how to communicate them.

71.     With respect to the misrepresentations set forth above, CVVT and Wang knew, or were reckless in not knowing, that they were making false and misleading statements in CVVT's third quarter Form 10-Q, November 18, 2010 Form 8-K/A, Form 2010 10-K, and June, July, and August responses to SEC comment letters in light of the conduct described in detail above. CVVT and Wang likewise knew, or were reckless in not knowing, that the related omissions rendered the filings and other public statements misleading in light of the circumstances under which they were made. Wang signed the third quarter Form 10-Q, November 18, 2010 Form 8-K/A, Form 2010 10-K, and June, July, and August responses to SEC comment letters as an officer of CVVT, which issued and filed the documents with the Commission. As such, CVVT and Wang exercised ultimate authority over the statements therein, and controlled not only the content of the communications, but also whether and how to communicate them.

72.     With respect to the misrepresentations set forth above, CVVT and Tang knew, or were reckless in not knowing, that they were making false and misleading statements in CVVT's second and third quarter Forms 10-Q in light of the conduct described in detail above. CVVT and Tang likewise knew, or were reckless in not knowing, that the related omissions rendered the filings and other public statements misleading in light of the circumstances under which they

were made.  Tang signed the second and third quarter Forms 10-Q as an officer of CVVT, which issued and filed the documents with the Commission.  As such, CVVT and Tang exercised ultimate authority over the statements therein, and controlled not only the content of the communications, but also whether and how to communicate them.

73.     With respect to the misrepresentations set forth above, CVVT knew, or was reckless in not knowing, that it was making false and misleading statements in its 2011 Form 10-K in light of the conduct described in detail above, including the amount of liabilities, income, and VAT paid by Hanwei Valve.  CVVT likewise knew, or was reckless in not knowing, that the related omissions rendered the filing and other public statements misleading in light of the circumstances under which they were made.  CVVT issued and filed the 2011 Form 10-K with the Commission.  As such, CVVT exercised ultimate authority over the statements therein, and controlled not only the content of the communications, but also whether and how to communicate them.

74.     By reason of the conduct described above, Defendants CVVT, Fang, Wang, and Tang violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### SECOND CLAIM FOR RELIEF

#### CVVT Violated Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) and Rules 12b-20, 13a-1, 13a-11 and 13a-13

75.     Paragraphs 1 through 74 are realleged and incorporated herein by reference.

76.     CVVT, whose securities were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], as detailed above, failed to file annual, current, and quarterly reports (on Forms 10-K, 8-K, and 10-Q) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the

required statements, in the light of the circumstances under which they were made, not misleading.

77.     As detailed above, CVVT failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected (i) the cost and nature of the Changsha Valve acquisition, including the payment of recorded and unrecorded liabilities of the company; and (ii) the purchase of a valve and purported VAT payments to the local tax authorities.

78.     As further detailed above, CVVT failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded and financial statements were prepared in accordance with GAAP.  CVVT's internal controls were deficient, as Fang, Wang, Tang, and management at Hanwei Valve mis-recorded payments made in connection with the transactions in CVVT's books and records and misrepresented the nature of the transactions at issue in CVVT's public filings.

79.     Based on the foregoing, CVVT violated Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. 78m(a) and 78m(b)(2)(A) & (B)] and Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

## THIRD CLAIM FOR RELIEF

### Fang, Wang, and Tang Violated Exchange Act Rule 13a-14

80.     Paragraphs 1 through 79 are realleged and incorporated herein by reference.

81.     By engaging in the conduct described above, Fang, as CVVT's CEO, falsely certified that CVVT's Forms 10-Q for the first and second quarters of 2010 contained no material misstatements or omissions.

82. By engaging in the conduct described above, Wang, as CVVT's CEO, falsely certified that CVVT's Form 10-Q for the third quarter of 2010 and Form 10-K for the fiscal year 2010 contained no material misstatements or omissions.

83. By engaging in the conduct described above, Tang, as CVVT's CEO and Treasurer, falsely certified that CVVT's Forms 10-Q for the second and third quarters of 2010 contained no material misstatements or omissions.

84. Based on the foregoing, Fang, Wang, and Tang violated Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

**FOURTH CLAIM FOR RELIEF**

**Fang, Wang, and Tang Aided and Abetted CVVT's**
**Reporting, Recordkeeping and Internal Controls Violations**

85. Paragraphs 1 through 84 are realleged and incorporated herein by reference.

86. As detailed above, CVVT, whose securities were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], failed to file annual, current, and quarterly reports (on Forms 10-K, 8-K, and 10-Q) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the required statements, in the light of the circumstances under which they were made, not misleading. CVVT thus violated Section 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

87. By reason of the conduct described above, Defendant Fang knowingly provided substantial assistance to and thereby aided and abetted CVVT in its violations of Exchange Act Sections 13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A) and Exchange Act Rules 12b-20, 13a-11 and 13a-13 [17 CFR §§ 240.12b-20, 240.13a-11 and 240.13a-13].

88.     By reason of the conduct described above, Defendant Wang knowingly provided substantial assistance to and thereby aided and abetted CVVT in its violations of Exchange Act Sections13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A) and Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240. 12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

89.     By reason of the conduct described above, Defendant Tang knowingly provided substantial assistance to and thereby aided and abetted CVVT in its violations of Exchange Act Sections13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A) and Exchange Act Rules 12b-20 and 13a-13 [17 CFR §§ 240.12b-20 and 240.13a-13].

## FIFTH CLAIM FOR RELIEF

### Fang, Wang, and Tang Aided and Abetted CVVT's
### Exchange Act Section 10(b) and Rule 10b-5 Violations

90.     Paragraphs 1 through 89 are realleged and incorporated herein by reference.

91.     As set forth above, CVVT violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

92.     By reason of the conduct described above, Defendants Fang, Wang, and Tang knowingly provided substantial assistance to and thereby aided and abetted CVVT in its violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

(a)     Permanently enjoining Defendants CVVT, Fang, Wang, and Tang from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. §§ 78j(b)] and Exchange Act Rule

10b-5 [17 C.F.R. § 240.10b-5];

(b)      Permanently enjoining Defendant CVVT from violating, directly or indirectly, Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1. 240.13a-11 and 240.13a-13];

(c)      Permanently enjoining Defendant Fang from aiding and abetting violations of Exchange Act Sections 10(b), 13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(2)(A)] and Exchange Act Rules 10b-5, 12b-20, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-11 and 240.13a-13];

(d)      Permanently enjoining Defendant Wang from aiding and abetting violations of Exchange Act Sections 10(b), 13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(2)(A)] and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1. 240.13a-11 and 240.13a-13];

(e)      Permanently enjoining Defendant Tang from aiding and abetting violations of Exchange Act Sections 10(b), 13(a) and 13(b)(2)(A) [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(2)(A)] and Exchange Act Rules 10b-5, 12b-20 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20 and 240.13a-13];

(f)      Permanently enjoining Defendants Fang, Wang, and Tang from violating, directly or indirectly, Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14];

(g)      Imposing civil monetary penalties against Defendants CVVT, Fang, Wang, and Tang pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; Pursuant to Securities Act 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

32

(h)     Prohibiting Defendants Fang, Wang, and Tang from acting as an officer or

director of any issuer that has a class of securities registered pursuant to Exchange Act Section

12 [15 U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act Section 15(d)

[15 U.S.C. § 78o(d)]; and

(i)     Granting such other and further relief as the Court deems just and appropriate.

Dated: September 29, 2014                     Respectfully submitted,


                                              _____
                                              Alfred A. Day
                                              Sarah S. Nilson (D.C. Bar #980130)
                                              Attorneys for Plaintiff
                                              United States Securities and Exchange Commission
                                              100 F Street, N.E.
                                              Washington, DC  20549-4030
                                              Tel:  (202) 551-4702

Of counsel:

Antonia Chion (D.C. Bar #358014)
Melissa R. Hodgman
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-4030