**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                               :
IN RE BIT DIGITAL, INC. SECURITIES             :
LITIGATION                                     :     Index No. 21-cv-00515 (ALC)
                                               :
Pertains to All Associated Actions             :
                                               :
                                               :
———————————————————————— :
                                               x

**REPLY MEMORANDUM OF LAW IN FURTHER**
<u>**SUPPORT OF BIT DIGITAL, INC'S MOTION TO DISMISS**</u>

KAGEN CASPERSEN & BOGART PLLC
Stuart Kagen
757 Third Avenue, 20th Floor
New York, New York 10017
Tel: (212) 880-2045
Fax: (646) 304-7879
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

   I.  PLAINTIFF'S OPPOSITION CONFIRMS THAT THEY HAVE
      FAILED TO ADEQUATELY PLEAD FALSE STATEMENTS ...................................... 1

   II. PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF
      HAS FAILED TO CONFIRM SCIENTER ....................................................... 7

CONCLUSION.................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Deluca v. GPB Auto. Portfolio, LP,*
   2020 U.S. Dist. LEXIS 234443 (S.D.N.Y. Dec. 13, 2020).......................................... 9

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.* ,
   553 F.3d 187 (2d Cir. 2009) ................................................................ 7-8, 8

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) .......................................................... 9

*King v. Whitmer*,
   2021 U.S. Dist. LEXIS 160532 (E.D. Mich. Aug. 25, 2021) ................................... 7

*Lewy v. Skypeople Fruit Juice, Inc.*,
   2012 U.S. Dist. LEXIS 128416 (S.D.N.Y. Sept. 7, 2012) ..................................... 2

*McIntire v. China Mediaexpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013) ...................................................... 2, 9

*Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020) .................................................. 1, 2, 5, 6

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................................. 2

*Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enf't Ret. Sys. v. IXIA* ,
   2015 U.S. Dist. LEXIS 52776 (C.D. Cal. Apr. 14, 2015) ................................. 8, 9

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   548 B.R. 13 (Bankr. S.D.N.Y. 2016) ......................................................... 5

*Reid v. City of N.Y.*,
   2021 U.S. Dist. LEXIS 148343 (S.D.N.Y. Aug. 6, 2021) ..................................... 5

*Rote v. Zel Custom Mfg., LLC,*
   383 F.Supp.3d 779 (S.D. Ohio 2019) ......................................................... 5

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) ....................................................... 10

*Stratte-Mcclure v. Stanley*,
   776 F.3d 94 (2d Cir. 2015) .................................................................. 7

*SUN, A Series of E Squared Inv. Fund, L.L.C. v. Sundial Growers, Inc.*,
   2021 U.S. Dist. LEXIS 189872 (S.D.N.Y. Sept. 30, 2021) ................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* ,
   551 U.S. 308 (2007) ................................................................................. 7

*Varghese v. China Shenghuo Pharm. Holdings*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) ..................................................... 10

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) ........................................................ 10

**Statutes and Rules**

15 U.S.C. § 78u-4 .................................................................................... 7

Fed. R. Civ. P. 11 .................................................................................... 6

<u>**PRELIMINARY STATEMENT**</u>

One short seller report from J Capital Research ("JCAP"), relying on anonymous sources on unspecified dates and places, is the basis of the present action.  Plaintiff's opposition brief (Opp. Br.) confirms this fact, relying on it at virtually every turn.  No case either party has cited to the Court has sustained such a threadbare set of allegations.  On the contrary, last year, Judge Engelmayer of this District rejected a case that – just like this one -- relied on a JCAP report which was itself based on anonymous sourcing.  *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020).  Particularly close scrutiny is warranted when such a report (written by a motivated short seller) is combined with the unreliability inherent in anonymous sourcing.  *Id*. at 801.  This Consolidated Class Action Complaint (CCAC) cannot survive such review.  As the Opposition makes plain, plaintiff here did not verify the JCAP report.  Plaintiff did not interview witnesses referred to there – or any witnesses.  Nor did plaintiff review any of the documents referred to therein (other than a review of certain of the Company's own filings).

Plaintiff also failed to allege scienter.  Plaintiff alleges no pecuniary gain to any speaker or insider and thus cannot allege motive and opportunity to commit fraud.  Without that, one may only show scienter by alleging well-pleaded facts sufficient to show strong circumstantial evidence of conscious misbehavior or recklessness.  As shown below, Plaintiff fails in that task.

**I.    PLAINTIFF'S OPPOSITION CONFIRMS THAT THEY HAVE FAILED TO ADEQUATELY PLEAD FALSE STATEMENTS**

Bit Digital's opening brief (Mov. Br.) demonstrated that, for its central claims of supposed fraud, the CCAC relies exclusively on one short seller report by JCAP.  It also showed that JCAP disclaimed accuracy in its statements and also admitted its financial incentive to drive Bit Digital's stock price down.  Mov. Br. at 8-9.  Beyond this, the opening brief also made clear that the JCAP report *itself* based its claims on little other than anonymous, uncorroborated sourcing.  *Id*. at 11-12

(noting that the JCAP report is only an "anonymously sourced publication"). A plaintiff cannot avoid dismissal based on such threadbare allegations. *Miao*, 442 F. Supp.3d 774 at 797 (dismissing allegations based on JCAP report which relied on anonymous sourcing).

Plaintiff's Opposition concedes that its allegations about falsity in Bit Digital's statements derives solely from one JCAP report. Opp. Br. at 6-7 (citing JCAP as its exclusive source for "reveal[ing] the truth to the market]"). It also does not dispute that JCAP "stands to profit from decline" in Bit Digital's stock value. *Id.* at 11. Plaintiff contends that JCAP's interest in driving Bit Digital's stock down is irrelevant. *Id.* at 11-12. This is incorrect.

In evaluating whether a plaintiff's reliance on a short seller report suffices on a motion to dismiss, "[c]ourts have critically analyzed such attributions" because of their source. *Miao*, 442 F. Supp.3d 774 at 801. While it is true that this fact alone does not *per se* indicate such a source can never pass muster, "the case law reflects a particular need for close scrutiny where a short-seller report relied upon by a securities plaintiff *itself* relies on 'confidential' or anonymous sources, without corroboration. In that circumstance, the risk of motivated reporting by the author of the short-seller report is twinned with the reliability concerns presented by anonymous sourcing recognized in *Novak*." *Id.* (emphasis added; *citing Novak v. Kasaks*, 216 F.3d 300 (2000)).[1]

---

[1] Plaintiff's cited cases are in accord. *Longwei* found allegations sufficient when they were based on "interviews with local residents, photos of abandoned transportation links, a failed safety inspection at Taiyuan, surveillance by [the short-seller] at the end of 2012, and discrepancies in revenues reported to the SEC and SAIC [the Chinese equivalent to the SEC] for the same operations during part of the class period." *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 U.S. Dist. Lexis 9689, at *11 (S.D.N.Y. Jan. 27, 2014). No such corroboration is present here. In *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y 2013), short seller claims were corroborated by plaintiff's allegations of a letter from Deloitte, the defendant's auditor, to the defendant's board of directors and audit committee outlining "enormous signs of fraud." *Id.* at 117. These were then bolstered by the auditor's subsequent resignation, in which the auditor stated it could not rely on management's representations and that no "tangible progress" had been made on its warnings of fraud. *Id.* None of this is present here. Finally, in *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 U.S. Dist. Lexis 128416 (S.D.N.Y. Sept. 10, 2012) the short seller's statements were corroborated by filings before the SAIC and by affidavits filed by Chinese lawyers that the plaintiff had reviewed. *Id.* at *42. Most important, in *Lewy* plaintiff itself conducted its own research to corroborate the short seller report, which independent research "revealed further inconsistences" between defendants' SAIC and SEC filings, "including that SkyPeople China described revenue losses, that Qiyiwangguo's contribution to SPU's revenue was a fraction of

That is the case here.  The JCAP report on which Plaintiff relies bases its claims on little other than anonymous sourcing.  With regard to its claims about Bit Digital's lack of Chinese operations or registration, JCAP relies on anonymous supposed Chinese officials.[2]  The same is true about JCAP's claims that Bit Digital never purchased equipment in China.[3]  Plaintiff attempts to claim that this anonymous sourcing is corroborated by two items:  (1) a single picture from Bit Digital's website that showed only a small number of mining machines.  Opp. Br. at 16; and (2) Bit Digital's reported property, plant and equipment ("PP&E") in a press release announcing its third quarter 2020 financial results (the "Press Release").  Neither corroborates Plaintiff's second-hand anonymously sourced allegations.

With respect to the photograph, Plaintiff alleges nothing anywhere to indicate that Bit Digital ever claimed that this sole photo constituted *all* of their bit mining machines – and there is neither allegation nor reason on which to base such an inference.  Likewise, there is nothing in the JCAP Report from which one could reasonably infer that the photograph depicts all of the miners owned by Bit Digital.  It in no way corroborates the second-hand anonymous allegation that Bit Digital did not in fact own the miners reported in its financial statements.

With respect to Bit Digital's PP&E reported in the Press Release, Plaintiff notes that Bit Digital provides no information "for leased assets, leasehold improvements, basic furniture or even everyday non-mining IT equipment" and that it only reports 18,906,938 miners.  See CCAC ¶¶ 102-03.  From this, Plaintiff asks the court to infer that Bit Digital had no facilities in China.

that stated in the SPU rebuttal press release, and that SPU owns 20% less of Qiyiwangguo than reported in the 2009 SEC filings."  *Id*. at *39-40.  Here, of course, plaintiff alleged no such independent investigation at all.

[2]    *See* CCAC Ex. 1 at 5 (quoting unnamed alleged "officials" of Zhundong, Xilinhot and Wuhai).  *See also* Opp. Br. at 6 (noting this reliance).

[3]    *See* CCAC Ex. 1 at 8 (quoting unnamed supposed employees of MicroBIT and Bitmain).  *See also* Opp. Br. at 7 (noting this reliance).

That is unreasonable.  As previously disclosed by the Company in its 2019 Annual Report, the Company's physical operations were performed by third party hosts, who provided hosting space, professional facility management, and device maintenance services.  A form of the Hosting Services Contract was disclosed as Exhibit 4.28 to the 2019 Annual Report.  The 3Q 2020 press release does not report "basic furniture" and "everyday non-mining IT equipment" because items of that kind are provided by the third-party hosts.  The host facilities and hosting agreements do not constitute reportable property, plant or equipment.

Neither the photograph nor the Bit Digital's reported PP&E corroborate Plaintiff's alternative allegation that Bit Digital was not registered to do business in China.  That allegation is based entirely on second-hand anonymous sourcing – supposed conversations between JCAP and unidentified governmental officials in China as to whom no facts are alleged that would enable the court to evaluate the reliability of their statements.

With regard to JCAP's claims about Bit Digital's need to register in China and its claim that its operations would otherwise be illegal in China and its machines "subject to confiscation," JCAP cites *nothing whatsoever*.[4]  The CCAC is similarly bereft of any factual allegation supporting the contention that, absent some unidentified manner of registration, that any Bit Digital property would be confiscated.  Plaintiff's Opposition cites nothing further to support it, though they claim in a vague manner the JCAP Report's author's expertise supports it, as well as the Company's SEC filings (referred to without specificity).  Opp. Br. at 14.  However, the JCAP Report author neither claims nor identifies any expertise in registration requirements for bit mining companies in China, and Plaintiff identifies none.

---

[4]     CCAC Ex. 1 at 3.

Plaintiff asserts that, even if their other claims are based on uncorroborated second-hand anonymous sourcing, that is not true of their allegations of material omission relating to Bit Digital's acquisition of XMAX Chain Limited.  In a way, this is accurate, because these allegations actually have no sourcing at all – none, not even secondhand anonymous sourcing – for JCAP's assertion that the "XMAX" entity that is the subject of criticism is the same entity that Bit Digital acquired.  To the contrary, according to JCap and Plaintiff's own allegations, the "malicious" "fraud coin" issuing "XMAX" entity that JCap investigated is not even recorded as being related to Bit Digital's subsidiary XMAX China Limited in its Hong Kong corporate documents. Whatever the entity is that JCap investigated, it is not XMAX Chain Limited, which is registered in the Hong Kong government as a subsidiary of Bit Digital.  See Kagen Decl. Ex. A[5]  There are nine other companies doing business under an "XMAX" name listed in the Hong Kong registry alone.  Id. Ex. B.  Based on a Google search it appears that the entity that JCap was investigating is a different company called XMAX Foundation PTD Ltd.  See Id. Ex. C.[6]

Where, as here, the plaintiff's allegations "do no more than recapitulate the JCap Report's characterization of purported interviews with anonymous sources," dismissal should result.  *Miao*, 442 F. Supp. 3d 774, at 802 (dismissing claim also based on JCap Report with anonymous sourcing).  In *Miao*, just as here, the plaintiff did allege no independent corroborating facts, no independent investigation by counsel, and no contact by plaintiff's counsel with any supposed

---

[5]     The official Hong Kong company registry can be accessed at https://www.icris.cr.gov.hk/csci/.  "Official publications available electronically from a government website should be accepted by the court as self-authenticating."  *Rote v. Zel Custom Mfg., LLC*, 383 F.Supp.3d 779, 785 (S.D. Ohio 2019) (collecting cases).  "[O]n a motion to dismiss for failure to state a claim, a court may take judicial notice of documents . . . that are available on a government website."  *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 27 (Bankr. S.D.N.Y. 2016) (collecting cases; considering report published by SEC Office of Investigations).

[6]     "At the motion to dismiss stage, the Court can take judicial notice that a newspaper article was published, but cannot take judicial notice of the truth of the facts in the article."  *Reid v. City of New York*, 2021 U.S. Dist. LEXIS 148343 at *34 & n. 11 (S.D.N.Y. Aug. 6, 2021).

interviewee.  *Id.*  Instead, plaintiff simply parroted to the Court what unnamed "employees" and "interviewees" had supposedly told JCap.  The Court dismissed these claims in their entirety, holding that "[t]hese allegations bear none of the indicia of reliability that have led courts applying *Novak* to sustain allegations as sufficient particular."  *Id*. at 803.  Just as in *Miao*, the JCAP anonymous statements (1) lack any independent well-pled factual allegations corroborating these sources' statements; (2) lack any statement about the positions of the anonymous sources to show that they knew facts underlying their allegations; (3) are "entirely unmoored in time" and lack allegations about when these sources supposedly said what is claimed; (4) are insufficient particularly; and, most troublingly, (5) "plaintiff's counsel in this case appear to have done nothing whatsoever to confirm the identities or statements of the confidential sources cited in the JCap Report."  *Id.* at 804.

Indeed, as Judge Engelmayer stated in *Miao*, "Allowing counsel to rely on confidential witness statements recounted in a separate document whose authors had significant motive and opportunity to misuse or mischaracterize confidential witness statements would provide the Court little assurance that the factual contentions have evidentiary support."  *Id*. (internal quotations omitted).  "Such allegations – where neither investigated nor corroborated – sit, at best, uneasily with the requirements of Rule 11."  *Id*.

In opposition, Plaintiff claims that its heavy - and blind - reliance on the JCAP Report is permissible because the report's author supposedly knows China "intimately" and has "expertise and credibility" in Chinese matters.  Opp. Br. at 13.  Otherwise, Plaintiff notes that she "stands behind her work by including her name" and contact information in the report.  *Id*.  This sort of reliance is perverse.  Ms. Stevenson-Yang is not responsible for the CCAC; plaintiff and their counsel are.  Ms. Stevenson-Yang is not subject to the strictures of Rule 11 and is not before this

Court; plaintiff and their counsel are.   Attorneys should not off-load their responsibilities to perform a reasonable investigation to verify that the facts they allege are correct onto a third party document that they did not independently review.   *King v. Whitmer*, 2021 U.S. Dist. LEXIS 160532, *77-78 (E.D. Mich. Aug. 25, 2021).

## II.   PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF HAS FAILED TO CONFIRM SCIENTER

Bit Digital's opening brief demonstrated that plaintiff could only demonstrate scienter here by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte-McClure v. Morgan Stanley,* 776 F.3d 94, 106 (2d Cir. 2015).[7]   As Bit Digital showed, plaintiff failed to allege either.

**No motive or opportunity pleaded**.   Bit Digital showed that plaintiff failed to allege concrete benefits flowing to any alleged speaker.   Mov. Br. at 15.   No speaker allegedly sold stock to profit from any supposed misstatement.   No other pecuniary gain is otherwise alleged.

In opposition, plaintiff does not dispute that they allege no such pecuniary gain to any insider.   They merely claim motive is shown because the executives "continued to control the company."   *Id*. at 24.   Plaintiff cites no authority to bolster that as sufficient.   That is incorrect. Mov. Br. at 16-17.   *See also ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("In order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiff must allege that JPMC or its officers benefitted in some concrete and personal way from the purported fraud.   Motives that are common

---

[7]       Plaintiff claims that scienter may effectively be shown by alleging misleading statements.   Opp. Br. at 18. That is incorrect and would effectively read the statutory requirement to allege scienter out of the Reform Act.   *See* 15 U.S.C. § 78u-4(b)(2)(A).   As support, plaintiff cites one district court case (Opp. Br. at 18) that predates both the Supreme Court's decision on scienter in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) that requires more, as well as the Second Circuit's decision in *Stratte-McClure*.

to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute motive for purposes of this inquiry.") (internal quotations and citations omitted).

In opposition, plaintiff claims motive is shown by allegations that directors were underqualified; that auditing was insufficient; and that the company had material weaknesses in internal controls. Opp. Br. at 24. That too is in error. These allegations have *nothing to do with* any pecuniary gain, which is what plaintiff must allege to show motive and opportunity.

**No strong circumstantial evidence of conscious misbehavior or recklessness pleaded**. Bit Digital's opening brief showed that alleging a speaker was an officer and director does not show such conscious misbehavior. Mov. Br. at 16-17. Plaintiff disagrees and claims it is evidence of scienter Opp. Br. at 19. Plaintiff is in error, as shown above. *See ECA,* 553 F.3d at 198.

Bit Digital further showed that alleged errors in descriptions of the Company's officers and directors also fail to show evidence of conscious misbehavior. Plaintiff failed to expend any effort to verify that the supposed educational overstatements were inaccurate. Plaintiff never contacted these schools, verified their programs or otherwise did anything to confirm the credentials were inflated. Beyond this, plaintiff never linked any alleged overstatement to any alleged misconduct. That too is insufficient. Mov. Br. at 18-19. In opposition, Plaintiff states that inflating academic credentials is evidence of scienter. Opp. Br. at 21. Standing on its own, it is not. *Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA*, 2015 U.S. Dist. LEXIS 52776 (C.D. Ca. Apr. 14, 2015). In *IXIA*, plaintiff asserts the fact that a CEO, who Alston lied about his education and employment history, "shows that he was willing to take unscrupulous measures to further his goals, including portraying Ixia as a growth company." *Id.* at *34. The court dismissed

8

the securities claim.  It did so because plaintiff offered no particularized allegation tying such overstatements to any of the challenged actionable misstatements or misconduct.  *Id*. at *135.

Plaintiff otherwise makes much of serial auditor resignations.  Opp. Br. at 20.  But it cites no law that such resignations suffice to show scienter.  Nor does it have any response to the law Bit Digital earlier cited demonstrating that auditor resignations do not show scienter absent factual allegations linking the resignations to alleged fraud.  Mov. Br. at 19; *Deluca,* 2020 U.S. Distr. Lexis 234443, at *45 (S.D.N.Y. Dec. 13, 2020) (so holding).  Plaintiff should know this; a case plaintiff cites, *McIntire*, discusses what is needed to show strong circumstantial evidence: an auditor resignation that raised numerous red flags and also said it could not trust management's representations.  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 117 (S.D.N.Y 2013).  None of that is alleged here.

Bit Digital showed that its disclosure of material weaknesses in certain internal controls as of December 31, 2018 is not linked to any challenged statement.  Mov. Br. at 20.  That is because the challenged misstatements alleged occurred twenty months later, on December 31, 2020.  *Id.* at 19-20.  In opposition, plaintiff contends they do allege that the controls were still not effective as of April 2019, the time a Form 20-F was filed.  Opp. Br. at 22.  But that claim is wholly conclusory and should not be credited.  *SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers, Inc.*, 2021 U.S. Dist. Lexis 189872,  at *19 (S.D.N.Y. Sept. 30, 2021).

Finally, Bit Digital showed the officer resignations failed to show a strong inference of scienter.  Mov. Br. at 22-23.  That is because plaintiff needed to have alleged facts showing that the resignation was "somehow tied to the fraud alleged, that the resignation alerted defendants to the fraud, or that defendants' scienter was otherwise evident."  *Id*. (*quoting Glasser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011).  Plaintiff offers no such allegations.  In opposition,

plaintiff states that it was reasonable to infer that a February 3, 2021 CEO removal was due the CEO "abandon[ing] his duties" and that "he did not verify the Company's statements" in a press release made in December 2020.   Plaintiff alleged no facts to support these leaps—just the assertions of counsel.  Opp. Br. at 23.  This hardly amounts to a cogent and compelling inference.

Similarly, plaintiff points to two resignations of two directors and claim that these resignations "support a strong inference of scienter" given that a negative short seller report (the JCAP Report) came out around that time.  Opp. Br. at 23.  Plaintiff alleges no facts to show that these individuals departed due to any fraud.  They do not allege how these resignations alerted anyone to any fraud, nor how these resignations were tied to any fraudulent conduct, other than to say that a short seller article came out around the same time.  That is not enough.  As *Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 112-113 (D. Mass. 2014) held:

> The Plaintiffs rely solely on the timing of the resignations - close to the Company's disclosure of the misstatements.  This is not enough to build up the scienter inference.  *See In re BISYS*, 397 F. Supp. 2d at 446-47 ("Plaintiffs claim that the resignations of [the executives] 'shortly before and/or coterminous with [the company's] disclosures of financial shortfalls, financial charges, improper accounting and financial restatements' support an inference of scienter. Plaintiffs, however, have alleged no facts linking the resignation of [the executives] to the accounting improprieties at [the company]. In reality, there are any number of reasons that an executive might resign, most of which are not related to fraud. . . . Accordingly, absent any alleged facts linking the two resignations and the alleged fraud, the resignations of [the executives] do not support an inference of conscious misbehavior or recklessness.").

*Id*. at 112-13.[8]

---

[8]      Plaintiff's cases are not to the contrary.  In *Varghese v. China Senghou Pharm. Holdings*, 672 F. Supp. 2d 596 (S.D.N.Y. 2009) a director resigned.  In his resignation, the director stated that he "was resigning from the Company because of 'poor corporate governance'.  *Id*. at 603.  He then went on at length to indicate that he was prevented from seeing financials for the company, and was blocked from speaking with auditors, among other things.  *Id*.  None of that is the case here and nothing links the alleged resignations to any alleged fraud.

*In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) states specifically that resignations are their own cause, as plaintiffs concede.  *See id*. at 394 n. 176.  There, "plaintiffs' allegations, taken as true, adequately plead that the Scottish Re Defendants' conduct, *i.e.,* not taking an earlier valuation allowance, was 'highly unreasonable' and 'an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'  The Scottish Re Defendants knew that SFAS 109 governed the application of deferred tax assets and valuation allowances. Indeed, they applied

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that CCAC be dismissed in its

entirety with prejudice.

Dated:  New York, New York
        December 17, 2021


                                KAGEN CASPERSEN & BOGART PLLC


                                _s/ Stuart Kagen_____
                                Stuart Kagen, Esq.
                                757 Third Avenue, 20th Floor
                                New York, New York 10017
                                Tel: (212) 880-2045
                                Fax: (646) 304-7879
                                _Attorneys for Defendants_

---

and quoted the standard in the Company's financial statements both before and throughout the Class Period. Moreover, they knew that the Company was planning to enter into a large transaction to securitize the ING Acquisition assets. They also knew that such a securitization, once complete, would preclude the Company from using any income generated by the securitized assets in the future. Thus, they knew that a large block of future income would no longer be available to offset the Company's deferred tax assets.  In short, all of the reasons supporting an inference that the financial statements were false, as discussed above, were known to the Scottish Re Defendants *at the time they made the statement." Id*. at 393-94. (emphasis in original).  No facts such as these are present in this action.

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on December 17, 2021, I electronically filed the foregoing document with the clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record.


<u>s/ *Stuart Kagen*</u>
Stuart Kagen, Esq.

12