UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BIT DIGITAL, INC. SECURITIES LITIGATION<br><br>Pertains to All Associated Actions | Index No. 21-cv-00515 (ALC) |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BIT DIGITAL, INC'S MOTION TO DISMISS

<br><br>

KAGEN CASPERSEN & BOGART PLLC
Stuart Kagen
757 Third Avenue, 20th Floor
New York, New York 10017
Tel: (212) 880-2045
Fax: (646) 304-7879
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 1

   I.  PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD FALSE STATEMENTS .............................................................. 1

   II. PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF HAS FAILED TO PLEAD SCIENTER ..................................................................................................... 11

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                **Page(s)**

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ........................................................................................... 15

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430, 446-47 (S.D.N.Y. 2005) ........................................................... 14

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998) ........................................................................................ 15

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015) ............................................................................. 6

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ................................................................................. 11, 12

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) ........................................................................... 6

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................................... 3, 14

*In re Hebron Tech. Co.*,
   2021 U.S. Dist. LEXIS 181162 (S.D.N.Y. Sep. 22, 2021) ....................................... 4, 12

*King v. Whitmer*,
   2021 U.S. Dist. Lexis 160532 (E.D. Mich. Aug. 25, 2021) ........................................... 8

*Lewy v. SkyPeople Fruit Juice, Inc.*,
   2012 U.S. Dist. Lexis 128416 (S.D.N.Y. Sept. 10, 2012) .......................................... 2, 3

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   2014 U.S. Dist. Lexis 9689 (S.D.N.Y. Jan. 27, 2014) ................................................... 2

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y 2013) ...................................................................... 2, 13

*Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020) ................................................................. passim

*Novak v. Kasaks*,
   216 F.3d 300 (2000) ...................................................................................................... 2

*ODS Capital LLC v. JA Solar Holdings Co.*,
   2020 U.S. Dist. Lexis 223305 (S.D.N.Y. Nov. 30, 2020) (Carter, J.) ....................... 4, 8

*Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA*,
   2015 U.S. Dist. Lexis 52776 (C.D. Ca. Apr. 14, 2015) ......................................12-13, 13

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   548 B.R. 13 (Bankr. S.D.N.Y. 2016) .................................................................... 10, 11

*Reid v. City of New York*,
   2021 U.S. Dist. Lexis 148343 (S.D.N.Y. Aug. 62021) ............................................... 11

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................... 5, 7

*Rote v. Zel Custom Mfg., LLC*,
   383 F.Supp.3d 779, 785 (S.D. Ohio 2019) ................................................................ 10

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...................................................................... 15

*Stratte-McClure v.* Morgan *Stanley*,
   776 F.3d 94 (2d Cir. 2015) ....................................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 323-24 (2007) .................................................................................... 14

*SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers, Inc.*,
   2021 U.S. Dist. Lexis 189872 (S.D.N.Y. Sept. 30, 2021) ..................................... 13, 14

*Varghese v. China Senghou Pharm. Holdings*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) ...................................................................... 15

*Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) .......................................................................... 14

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ 7

**Other**

Fed. R. Civ. P. 11 ......................................................................................................... 7, 8
Fed. R. Civ. P. 9(b) ............................................................................................ 1, 6, 7, 11

## PRELIMINARY STATEMENT

One short-seller report from J Capital Research ("JCAP"), relying on information purportedly obtained from anonymous sources, on unspecified dates and from unspecified places, is the sole basis of the present action. Plaintiff's opposition brief (Opp. Br.) confirms this fact, relying on this short-seller report at virtually every turn.

No case either party has cited to the Court has sustained such a threadbare set of allegations. On the contrary, last year, Judge Engelmayer of this District rejected a case that—just like this one—relied on a JCAP report which was itself based on anonymous sourcing. *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020). Particularly close scrutiny is warranted when such a report (written by a motivated short seller) is combined with the unreliability inherent in anonymous sourcing. *Id*. at 801. This Consolidated Class Action Complaint (CCAC) cannot survive such review. As the Opposition makes plain, Plaintiff here did not verify the JCAP report. Plaintiff did not interview witnesses referred to there—or any witnesses. Nor did Plaintiff review any of the documents referred to therein (other than a review of certain of the Company's own filings). Thus, the CCAC fails to validly plead with the particularity required by Rule 9(b) and the PSLRA that Defendants made misstatements of material fact.

Plaintiff also failed to allege scienter. Plaintiffs allege no pecuniary gain to any speaker or insider and thus cannot allege motive and opportunity to commit fraud. Without that, one may only show scienter by alleging well-pleaded facts sufficient to show strong circumstantial evidence of conscious misbehavior or recklessness. As shown below, Plaintiff fails in that task.

## ARGUMENT

I. **PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD FALSE STATEMENTS**

Bit Digital's opening brief (Mov. Br.) demonstrated that, for its central claims of supposed

fraud, the CCAC relies exclusively on one short-seller report by JCAP.  It also showed that JCAP disclaimed accuracy in its statements and also admitted its financial incentive to drive Bit Digital's stock price down.  Mov. Br. at 8-9.  Beyond this, the opening brief also made clear that the JCAP report *itself* based its claims on little other than anonymous, uncorroborated sourcing.  *Id*. at 11-12 (noting that the JCAP report is only an "anonymously sourced publication").  A plaintiff cannot avoid dismissal based on such threadbare allegations.  *Miao*, 442 F. Supp. 3d at 797 (dismissing allegations based on JCAP report which relied on anonymous sourcing).

Plaintiff's Opposition concedes that its allegations about falsity in Bit Digital's statements derives solely from one JCAP report.  Opp. Br. at 6-7 (citing JCAP as its exclusive source for "reveal[ing] the truth to the market]").   It also does not dispute that JCAP "stands to profit from decline" in Bit Digital's stock value.  *Id.* at 11.  Plaintiff contends that JCAP's interest in driving Bit Digital's stock down is irrelevant.  *Id*. at 11-12.  This is incorrect.

In evaluating whether a plaintiff's reliance on a short-seller report suffices on a motion to dismiss, "[c]ourts have critically analyzed such attributions" because of their source.  *Miao*, 442 F. Supp. 3d at 801.  While it is true that this fact alone does not *per se* indicate such a source can never pass muster, "the case law reflects a particular need for close scrutiny where a short-seller report relied upon by a securities plaintiff *itself* relies on 'confidential' or anonymous sources, without corroboration.  In that circumstance, the risk of motivated reporting by the author of the short-seller report is twinned with the reliability concerns presented by anonymous sourcing recognized in *Novak*."  *Id*. (emphasis added) (*citing Novak v. Kasaks*, 216 F.3d 300 (2000)).[1]

---

[1] Plaintiff's cited cases are in accord.  As *Miao* noted, the cases Plaintiff cites (Opp. Br. at 11-12) found allegations sufficient only because in those cases, unlike here (and unlike in *Miao*), "independent factual allegations corroborated the factual allegation in the complaint drawn from short-sellers' reports."  *Miao*, 442 F. Supp. 3d at 801 (distinguishing *Longwei*, *McIntire*, and *Lewy*).   And indeed, *Longwei* found allegations sufficient when they were based on "interviews with local residents, photos of abandoned transportation links, a failed safety inspection at Taiyuan, surveillance by [the short-seller] at the end of 2012, and discrepancies in revenues reported to the SEC and SAIC [the

2

That is the case here. The JCAP report, which is the source of Plaintiff's three claimed misstatements (CCAC ¶¶ 126-128), bases its claims on little other than anonymous sourcing. JCAP's claims about Bit Digital's lack of Chinese operations or registration (the basis of Plaintiff's first misstatement allegation, CCAC ¶ 126) rely on anonymous supposed Chinese officials.[2] The same is true about JCAP's claims that Bit Digital never purchased equipment in China (the basis of the second misstatement allegation, *id.* ¶ 127).[3] In neither case does the JCAP report provide *any* detail concerning the government officials' or employees' identity, position, or job responsibilities—much less detail sufficient to indicate the sources were in a position to actually know any of the facts underlying the statements attributed to them. Such allegations deserve no weight because they do not include "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Glaser*, 772 F. Supp. 2d at 590; Mov. Br. at 11-12. As this Court recently noted—even outside the context of a

---

Chinese equivalent to the SEC] for the same operations during part of the class period." *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 U.S. Dist. Lexis 9689, at *11 (S.D.N.Y. Jan. 27, 2014). No such corroboration is present here. In *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y 2013), short seller claims were corroborated by plaintiff's allegations of a letter from Deloitte, the defendant's auditor, to the defendant's board of directors and audit committee outlining "enormous signs of fraud." *Id*. at 117. These were then bolstered by the auditor's subsequent resignation, in which the auditor stated it could not rely on management's representations and that no "tangible progress" had been made on its warnings of fraud. *Id*. None of this is present here. Finally, in *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 U.S. Dist. Lexis 128416 (S.D.N.Y. Sept. 10, 2012) the short seller's statements were corroborated by filings before the SAIC and by affidavits filed by Chinese lawyers that the plaintiff had reviewed. *Id*. at *42. Most important, in *Lewy* plaintiff itself conducted its own research to corroborate the short-seller report, which independent research "revealed further inconsistences" between defendants' SAIC and SEC filings, "including that SkyPeople China described revenue losses, that Qiyiwangguo's contribution to SPU's revenue was a fraction of that stated in the SPU rebuttal press release, and that SPU owns 20% less of Qiyiwangguo than reported in the 2009 SEC filings." *Id*. at *39-40. Here, of course, Plaintiff alleged no such independent investigation at all.

[2] *See* CCAC Ex. 1 at 5 (quoting unnamed alleged "officials" of Zhundong, Xilinhot, and Wuhai, without providing any detail concerning the government officials' identity, position, job responsibilities, basis of information, or expertise). *See also* Opp. Br. at 6 (noting this reliance), 15 n.6 (admitting Plaintiff relied "on J Capital's interviews with unnamed sources").

[3] *See* CCAC Ex. 1 at 8 (quoting unnamed supposed employees of MicroBIT and Bitmain, without any detail concerning the employees' identity, position, job responsibilities, basis of information, or expertise). *See also* Opp. Br. at 7 (noting this reliance).

short-seller report, which requires "particular need for close scrutiny" because of "the risk of motivated reporting by the author of the short-seller report" (*Miao*, 442 F. Supp. 3d at 801)—"[c]ourts have generally been hostile to non-particular allegations from CWs [confidential witnesses]," and will credit statements from uncorroborated confidential witnesses only "when those sources' positions and/or job responsibilities are described sufficiently to indicate a high likelihood that they actually knew facts underlying their allegations." *ODS Capital LLC v. JA Solar Holdings Co.*, 2020 U.S. Dist. Lexis 223305, at *26-27 (S.D.N.Y. Nov. 30, 2020) (Carter, J.) (citations and internal quotation marks omitted) (dismissing securities fraud complaint based on confidential witnesses who "fail[ed] to put forth particularized allegations to satisfy the PSLRA"); *see also In re Hebron Tech. Co.*, 2021 U.S. Dist. LEXIS 181162, at *47-49 (S.D.N.Y. Sep. 22, 2021) ("courts have been loath[], under *Novak*, to sustain as sufficiently particular securities fraud complaints based on uncorroborated statements by CWs…where CWs are 'insufficiently described,' or if their descriptions do not demonstrate that they were in a position to know the facts that are attributed to them"; dismissing complaint where complaint did "not plead facts indicating that either [CW] was in a position to know the important facts attributed to them" because the "threadbare descriptions of titles and functions do not indicate access to knowledge on the issues … as to which, according to the SAC, they have opined").

      Because of these defects, the JCAP report collapses under "close scrutiny."  For all the Court can determine based on what JCAP provides, the unnamed government "officials" whose uncorroborated statements it provides could be whichever receptionist answered JCAP's phone call.  That is hardly sufficient to establish that those "officials" would be in a position to say whether there were any bitcoin mining operations in their cities, or to enable Plaintiff to plead the first misstatement with sufficient particularity.

Moreover, even on its face, the JCAP report does not enable Plaintiff's cut-and-paste CCAC to meet the fundamental requirement to "demonstrate with specificity why and how" the challenged statement regarding the registration of operations in China was "false and misleading," *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004), which would require Plaintiff to plead with particularity facts that contradict that statement. *See* Mov. Br. at 10 (citing cases). The only statement about Bit Digital's Chinese operations *within the class period* (December 21, 2020 to January 11, 2021, CCAC ¶ 1) is the December 21, 2020 3Q20 Press Release[4] statement that "Our mining operations are distributed in Xinjiang, Inner Mongolia and Sichuan Provinces PRC …." CCAC ¶ 74; *see also id.* ¶¶ 73; 123-126. The JCAP report *itself admits* that it does not contain facts enabling Plaintiff to contradict this statement about operations in these three large regions of China ("Xinjiang, Inner Mongolia and Sichuan Provinces"). JCAP quotes purported "officials" of Xilinhot and Wuhai (two cities in the Inner Mongolia region of China) and Zhundong (a city in the Xinjiang region) (CCAC Ex. 1 at 5; CCAC ¶ 101). But those three specific cities were mentioned in *earlier* disclosures outside of the class period, not in the challenged class period December 21, 2020 3Q20 Press Release. *See* CCAC ¶¶ 61 & 63 (citing these earlier disclosures but not in the CCAC's "DEFENDANTS' CLASS PERIOD STATEMENTS" or "DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS" sections). With respect to the three larger regions mentioned in the challenged class period statement, JCAP admits that it did not, because it could not, determine that there were no miners elsewhere in the Xinjiang, Inner Mongolia, or Sichuan Provinces, aside from the three specific cities in those regions JCAP claims to have contacted. CCAC Ex. 1 at 5-6. (Even if credited, the statements by the three unnamed "local government officials" addressed only their

---

[4] Exhibit G to the Declaration of Joel M. Taylor, Esq. ("Taylor Decl."), ECF 42-7.

cities, not their entire regions.) Thus, the JCAP report does not enable Plaintiff to meet its burden to "allege adequately that the statement is untrue," *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 67 (S.D.N.Y. 2015), because it does not provide a basis to plead facts that "contradict [defendant's] statements." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 597 (S.D.N.Y. 2016) (no actionable misstatement where alleged fact "does not contradict [defendant's] statements.").

Likewise, regarding the second alleged misstatement, JCAP claims to have spoken to "all the major manufacturers in China of bitcoin mining equipment," but names only two. CCAC Ex. 1 at 7. One manufacturer's unnamed "employee" (who, as far as the Court can tell from the report, could have been the first person to answer the phone) had not heard of Bit Digital—but (again, as far as the Court can tell) the three other employees JCAP spoke to might well have sold Bit Digital mining equipment, because, JCAP says, they "said they were not permitted to discuss customers." *Id.* On the scant basis of these uncorroborated JCAP phone calls with anonymous people, Plaintiff claims "Defendants' statements about Bit Digital's bitcoin mining operations … were false and misleading." CCAC ¶ 127. That is not enough to satisfy the particularity requirement of Rule 9(b) or the PSLRA.

Rather, where, as here, the plaintiff's allegations "do no more than recapitulate the JCap Report's characterization of purported interviews with anonymous sources," dismissal should result. *Miao*, 442 F. Supp. 3d at 802 (dismissing claim also based on JCAP Report with anonymous sourcing). In *Miao*, just as here, the plaintiff alleged no independent corroborating facts, no independent investigation by counsel, and no contact by plaintiff's counsel with any supposed interviewee. *Id.* Instead, plaintiff simply parroted to the Court what unnamed "employees" and "interviewees" had supposedly told JCAP. The Court dismissed these claims in

6

their entirety, holding that "[t]hese allegations bear none of the indicia of reliability that have led courts applying *Novak* to sustain allegations as sufficiently particular" to satisfy Rule 9(b) and the PSLRA. *Id*. at 803.[5]

Just as in *Miao*, here the JCAP anonymous statements (1) lack any independent well-pled factual allegations corroborating these sources' statements; (2) lack any statement about the positions of the anonymous sources to show that they knew facts underlying their allegations; (3) are "entirely unmoored in time" and lack allegations about when these sources supposedly said what is claimed; (4) are insufficiently particular; and, most troublingly, (5) "plaintiff's counsel in this case appear to have done nothing whatsoever to confirm the identities or statements of the confidential sources cited in the JCap Report." *Miao,* at 803-04.

Indeed, as Judge Engelmayer stated in *Miao*, "Allowing counsel to rely on confidential witness statements recounted in a separate document whose authors had significant motive and opportunity to misuse or mischaracterize confidential witness statements would provide the Court little assurance that the factual contentions have evidentiary support." *Id*. (internal quotations omitted). "Such allegations—where neither investigated nor corroborated—sit, as best, uneasily with the requirements of Rule 11." *Id*.

In opposition, Plaintiff claims that its heavy—and blind—reliance on the JCAP Report is permissible because the report's author supposedly knows China "intimately" and has "expertise and credibility" in Chinese matters. Opp. Br. at 13. Otherwise, Plaintiff notes that she "stands

---

[5] Thus, Plaintiff's fraud claim fails because the CCAC's allegations fail to meet the particularity requirements of Rule 9(b) and the PSLRA—not, as Plaintiff incorrectly claims, because Plaintiff fails to "plead evidence" or fails to meet some "burden" Defendants "seek…to improperly impose" beyond that imposed by Rule 9(b) and the PSLRA (Opp. Br. at 10-11). *See Miao*, 442 F. Supp. 3d at 789-90 (Rule 9(b) requires a fraud plaintiff to "state *with particularity* the circumstances constituting fraud or mistake," and under the PSLRA (15 U.S.C. § 78u-4(b)(1)), "to plead a claim of securities fraud, plaintiffs 'must do more than say that the statements . . . were false and misleading; they must demonstrate *with specificity* why and how that is so.'") (emphasis added) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)); *id.* at 797 (finding allegations based on short-seller report "cannot sustain a § 10(b) claim" because they were "insufficiently particular to satisfy Rule 9(b) and the PSLRA"); Mov. Br. at 9-10.

7

behind her work by including her name" and contact information in the report. *Id*. None of that changes the fact that the author states facts based on anonymous sources whose "positions and/or job responsibilities" she does not describe "sufficiently to indicate a high likelihood that they actually knew facts underlying their allegations." *ODS Capital*, 2020 U.S. Dist. Lexis 223305, at *26-27. Furthermore, this sort of reliance is perverse. Ms. Stevenson-Yang is not responsible for the CCAC; Plaintiff and their counsel are. Ms. Stevenson-Yang is not subject to the strictures of Rule 11 and is not before this Court; Plaintiff and their counsel are. Attorneys should not off-load their responsibilities to perform a reasonable investigation to verify that the facts they allege are correct onto a third-party document that they did not independently review. *King v. Whitmer*, 2021 U.S. Dist. Lexis 160532, at *77-78 (E.D. Mich. Aug. 25, 2021).

Beyond that, Plaintiff attempts to claim that the CCAC's anonymous sourcing is corroborated by two items in the JCAP report: (1) a single picture from Bit Digital's website that showed only a small number of mining machines (Opp. Br. at 16) and (2) Bit Digital's reported "Property and Equipment, Net," in the Q320 Press Release announcing its third quarter 2020 financial results) (*id.*). Neither corroborates Plaintiff's second-hand anonymously sourced allegations.

With respect to the photograph, Plaintiff alleges nothing anywhere to indicate that Bit Digital ever claimed that this sole photo constituted *all* of their bitcoin mining machines—and there is neither allegation nor reason on which to base such an inference. Likewise, there is nothing in the JCAP Report from which one could reasonably infer that the photograph depicts all of the miners owned by Bit Digital. It in no way corroborates the second-hand anonymous allegation that Bit Digital did not in fact own the miners reported in its financial statements.

With respect to Bit Digital's "Property and Equipment, Net" reported in the Press Release,

Plaintiff parrots JCAP's "observ[ation]" that the Press Release "simply lists all $18 million of its property assets as 'Miners' with no further description" (Opp. Br. at 16 citing CCAC ¶ 103) and that Bit Digital provided no information "for leased assets, leasehold improvements, basic furniture or even everyday non-mining IT equipment" (CCAC ¶ 102). From this, Plaintiff asks the court to infer that Bit Digital had no facilities in China. That is unreasonable. As the Company previously disclosed in its 2019 Annual Report, the Company's physical operations were performed by third-party hosts, who provided hosting space, professional facility management, and device maintenance services; a form of the Hosting Services Contract was disclosed as Exhibit 4.28 to the 2019 Annual Report.[6] The Q320 press release does not report "basic furniture" and "everyday non-mining IT equipment" because items of that kind are provided by the third-party hosts. The host facilities and hosting agreements do not constitute reportable property or equipment.

Neither the photograph nor the Bit Digital's reported "Property and Equipment, Net" corroborate Plaintiff's alternative allegation that Bit Digital was not registered to do business in China. As shown above, that allegation is based entirely on second-hand anonymous sourcing—supposed conversations between JCAP and unidentified governmental officials in China as to whom no facts are alleged that would enable the Court to evaluate the reliability of their statements.

With regard to JCAP's claims about Bit Digital's need to register in China and its claim that its operations would otherwise be illegal in China and its machines "subject to confiscation," JCAP cites *nothing whatsoever*.[7] The CCAC is similarly bereft of any factual allegation

---

[6] See ECF 42-6 (Taylor Decl. Ex. F) at PDF page 113 (linking to Hosting Services Contract at https://www.sec.gov/Archives/edgar/data/1710350/000121390020018934/f20f2019ex4-28_goldenbull.htm).

[7] CCAC Ex. 1 at 3.

9

supporting the contention that, absent some unidentified manner of registration, any Bit Digital property would be confiscated. Plaintiff's Opposition cites nothing further to support it, though it claims in a vague manner the JCAP Report's author's expertise supports the contention, as well as the Company's SEC filings (referred to without specificity). Opp. Br. at 14. However, the JCAP Report author neither claims nor identifies any expertise in registration requirements for bitcoin mining companies in China, and Plaintiff identifies none.

Plaintiff asserts that, even if Plaintiff's other claims are based on uncorroborated second-hand anonymous sourcing, that is not true of the allegations of material omission relating to Bit Digital's acquisition of XMAX Chain Limited. Opp. Br. at 16-17. In a way, this is accurate, because these allegations actually have no sourcing at all—none, not even secondhand anonymous sourcing—for JCAP's assertion that the "XMAX" entity that is the subject of criticism is the same entity that Bit Digital acquired. To the contrary, according to JCAP and Plaintiff's own allegations, the "malicious" "fraud coin" issuing "XMAX" entity that JCAP investigated is not even recorded as being related to Bit Digital's subsidiary XMAX China Limited in its Hong Kong corporate documents. Whatever the entity is that JCAP investigated, it is not XMAX Chain Limited, which is registered in the Hong Kong government as a subsidiary of Bit Digital. *See* Declaration of Stuart Kagen, Esq. ("Kagen Decl.") Ex. A.[8] There are nine other companies doing business under an "XMAX" name listed in the Hong Kong registry alone. *Id.* Ex. B. Based on a Google search it appears that the entity that JCAP was investigating is a different company called "XMAX

---

[8] The official Hong Kong company registry can be accessed at https://www.icris.cr.gov.hk/csci/. "Official publications available electronically from a government website should be accepted by the court as self-authenticating." *Rote v. Zel Custom Mfg., LLC*, 383 F.Supp.3d 779, 785 (S.D. Ohio 2019) (collecting cases). "[O]n a motion to dismiss for failure to state a claim, a court may take judicial notice of documents . . . that are available on a government website." *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 27 (Bankr. S.D.N.Y. 2016) (collecting cases; considering report published by SEC Office of Investigations).

Foundation PTD Ltd." *See id*. Ex. C &D.[9]

For all of these reasons, Plaintiff's 10(b) claim should be dismissed because the CCAC fails to plead misstatements with the particularity required by Rule 9(b) and the PSLRA.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THAT PLAINTIFF HAS FAILED TO PLEAD SCIENTER

Bit Digital's opening brief demonstrated that Plaintiff could only demonstrate scienter here by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte-McClure v. Morgan Stanley,* 776 F.3d 94, 106 (2d Cir. 2015).[10] As Bit Digital showed, Plaintiff failed to allege either.

**No motive or opportunity pleaded**. Bit Digital showed that Plaintiff failed to allege concrete benefits flowing to any alleged speaker. Mov. Br. at 15. No speaker allegedly sold stock to profit from any supposed misstatement. No other pecuniary gain is otherwise alleged.

In opposition, Plaintiff does not dispute that it alleges no such pecuniary gain to any insider. Plaintiff merely claims motive is shown because the executives "continued to control the company." *Id*. at 24. Plaintiff cites no authority establishing that is sufficient, and it is not. Mov. Br. at 16-17. *See also ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("In order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiff must allege that JPMC or its officers benefitted in some concrete and personal way from the purported fraud. Motives that are common to most

---

[9] At the motion to dismiss stage, the Court can take judicial notice of the fact that the websites in these exhibits have published information about a different XMAX entity. *See Reid v. City of New York*, 2021 U.S. Dist. Lexis 148343, at *34 & n. 11 (S.D.N.Y. Aug. 6, 2021).

[10] Because Plaintiff has failed to adequately plead with particularity misstatements or omissions of material fact, it cannot, as it tries to do (Opp. Br. at 18), bootstrap a showing of scienter from those insufficiently-pleaded claims.

corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute motive for purposes of this inquiry.") (internal quotations and citations omitted).

In opposition, Plaintiff claims motive is shown by allegations that directors were underqualified; that auditing was insufficient; and that the company had material weaknesses in internal controls. Opp. Br. at 24. That too is in error. These allegations have *nothing to do with* any pecuniary gain, which is what Plaintiff must allege to show motive and opportunity.

**No strong circumstantial evidence of conscious misbehavior or recklessness pleaded**. Bit Digital's opening brief showed that alleging a speaker was an officer and director does not show conscious misbehavior. Mov. Br. at 3; 16-17. Plaintiff disagrees and claims it is evidence of scienter (Opp. Br. at 19). Plaintiff is in error, as shown above. *See ECA,* 553 F.3d at 198; *Hebron,* 2021 U.S. Dist. Lexis 181162, at *63 & n.27 ("it is well established that [scienter] allegations founded on nothing more than a defendant's corporate position are entitled to no weight.") (citations and internal quotation marks omitted).

Bit Digital further showed that alleged errors in descriptions of the Company's officers and directors also fail to show evidence of conscious misbehavior. Plaintiff failed to expend any effort to verify that the supposed educational overstatements were inaccurate. Plaintiff never contacted these schools, verified their programs, or otherwise did anything to confirm the credentials were inflated. Beyond this, Plaintiff never linked any alleged overstatement to any alleged misconduct. That too is insufficient. Mov. Br. at 18-19. In opposition, Plaintiff states that inflating academic credentials is evidence of scienter. Opp. Br. at 21. Standing on its own, it is not. *Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA*, 2015 U.S. Dist. Lexis 52776 (C.D. Ca. Apr. 14, 2015). In *IXIA*, plaintiff asserted the fact that a CEO lied about his education and

employment history "shows that he was willing to take unscrupulous measures to further his goals, including portraying Ixia as a growth company." *Id.* at *34. The court dismissed the securities claim. It did so because plaintiff offered no particularized allegation tying such overstatements to any of the challenged actionable misstatements or misconduct. *Id*. at *135.

Plaintiff otherwise makes much of serial auditor resignations. Opp. Br. at 20. But it cites no law that such resignations suffice to show scienter. Nor does it have any response to the law Bit Digital earlier cited demonstrating that auditor resignations do not show scienter absent factual allegations linking the resignations to alleged fraud. Mov. Br. at 19; *Deluca,* 2020 U.S. Distr. Lexis 234443, at *45 (S.D.N.Y. Dec. 13, 2020) (so holding). Plaintiff should know this; a case Plaintiff cites, *McIntire*, discusses what is needed to show strong circumstantial evidence: an auditor resignation that raised numerous red flags where the auditor also said it could not trust management's representations. *McIntire*, 927 F. Supp. 2d at 117. None of that is alleged here.

Bit Digital showed that its disclosure of material weaknesses in certain internal controls as of December 31, 2018 is not linked to any challenged statement. Mov. Br. at 20. That is because the challenged misstatements alleged occurred twenty months later, on December 31, 2020. *Id.* at 19-20. In opposition, Plaintiff contends it does allege that the controls were still not effective as of April 2019, the time a Form 20-F was filed. Opp. Br. at 22. But that claim is wholly conclusory and should not be credited. *SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers, Inc.*, 2021 U.S. Dist. Lexis 189872, at *19 (S.D.N.Y. Sept. 30, 2021).

Finally, Bit Digital showed the officer resignations failed to show a strong inference of scienter. Mov. Br. at 22-23. That is because Plaintiff needed to have alleged facts showing that the resignation was "somehow tied to the fraud alleged, that the resignation alerted defendants to the fraud, or that defendants' scienter was otherwise evident." *Id*. (*quoting Glaser,* 772 F. Supp.

13

2d at 598). Plaintiff offers no such allegations. In opposition, Plaintiff states that it was reasonable to infer that a February 3, 2021 CEO removal was due to the CEO "abandon[ing] his duties" and that "he did not verify the Company's statements" in a press release made in December 2020. Plaintiff alleged no facts to support these leaps—just the assertions of counsel. Opp. Br. at 23. This hardly amounts to a cogent and compelling inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

Similarly, Plaintiff points to the resignations of two directors and claims that these resignations "support a strong inference of scienter" given that a negative short-seller report (the JCAP Report) came out around that time. Opp. Br. at 23. Plaintiff alleges no facts to show that these individuals departed due to any fraud, nor how these resignations alerted anyone to any fraud, or were tied to any fraudulent conduct, other than to say that a short-seller report came out around the same time. That is not enough. *See Washtenaw County Emples. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 112-13 (D. Mass. 2014) ("Plaintiffs rely solely on the timing of the resignations—close to the Company's disclosure of the misstatements. This is not enough to build up the scienter inference.") (quoting *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 446-47 (S.D.N.Y. 2005) ("absent any alleged facts linking the two resignations and the alleged fraud, the resignations of [the executives] do not support an inference of conscious misbehavior or recklessness," where plaintiffs claimed scienter based on executives' resignations "shortly before and/or coterminous with [the company's] disclosures of financial shortfalls, financial charges, improper accounting and financial restatements"; "[i]n reality, there are any number of reasons that an executive might resign, most of which are not related to fraud")).[11] Plaintiff's 10(b) claim should be dismissed

---

[11] Plaintiff's cases are not to the contrary. In *Varghese v. China Senghou Pharm. Holdings*, 672 F. Supp. 2d 596 (S.D.N.Y. 2009) a director resigned. In his resignation, the director stated that he "was resigning from the Company because of "poor corporate governance." *Id.* at 603. He then went on at length to indicate that he was prevented from

14

because the CCAC fails to plead scienter with particularity.[12]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that CCAC be dismissed in its entirety with prejudice.[13]

Dated: New York, New York
January 7, 2022

                                                                  KAGEN CASPERSEN & BOGART PLLC

                                                                   s/ *Stuart Kagen*
                                                                   Stuart Kagen, Esq.
                                                                   757 Third Avenue, 20th Floor
                                                                   New York, New York 10017
                                                                   Tel: (212) 880-2045
                                                                   Fax: (646) 304-7879
                                                                   *Attorneys for Defendants*

---

seeing financials for the company, and was blocked from speaking with auditors, among other things. *Id*. None of that is the case here and nothing links the alleged resignations to any alleged fraud. *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) (S.D.N.Y. 2007) states specifically that resignations are their own are insufficient, as Plaintiff concedes. *See id*. at 394 n.176. There,

> plaintiffs' allegations, taken as true, adequately plead that the Scottish Re Defendants' conduct, *i.e.,* not taking an earlier valuation allowance, was 'highly unreasonable' and 'an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' The Scottish Re Defendants knew that SFAS 109 governed the application of deferred tax assets and valuation allowances. Indeed, they applied and quoted the standard in the Company's financial statements both before and throughout the Class Period. Moreover, they knew that the Company was planning to enter into a large transaction to securitize the ING Acquisition assets. They also knew that such a securitization, once complete, would preclude the Company from using any income generated by the securitized assets in the future. Thus, they knew that a large block of future income would no longer be available to offset the Company's deferred tax assets. In short, all of the reasons supporting an inference that the financial statements were false, as discussed above, were known to the Scottish Re Defendants *at the time they made the statements.*

*Id*. at 393-94. (emphasis in original). No facts such as these are present in this action.

[12] Plaintiff's Section 20(a) claim also fails, and should be dismissed, because Plaintiff fails to state a claim for a primary violation of Section 10(b). *See ATSI Commc'ns Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 108 (2d Cir. 2007); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[13] Since the Plaintiff elected not to amend the complaint after the pre-motion conference, dismissal should be without leave to amend. *See* Hon. Andrew L. Carter, *Individual Rules of Practice*, 2.D. ("If the non-moving party elects not to amend its complaint and the motion to dismiss is granted, **it is unlikely that the Court will grant the non-moving party leave to amend.**") (emphasis original).

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022, I electronically filed the foregoing document with the clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record.

s/ *Stuart Kagen*
Stuart Kagen, Esq.
