phone: 617-398-5600 | email: jake@blockleviton.com

January 21, 2022

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *In re Bit Digital, Inc. Securities Litigation* (1:21-cv-00515-ALC)

Dear Judge Carter:

      We represent Lead Plaintiff Joseph Franklin Monkam Nitcheu ("Plaintiff") in this action. In accordance with Rule 2A of Your Honor's Individual Rules, we write to request a pre-motion conference with respect to Plaintiff's planned motion to strike certain exhibits and related argument in Defendants' reply in support of their motion to dismiss (ECF Nos. 50, 51).

      Relevant to the motion to strike, the Complaint (ECF No. 24) alleges that Defendants made false and misleading statements concerning its acquisition of XMAX in order to enter the bitcoin mining business. Specifically, the Complaint alleges that Defendants' December 21, 2020 press release stated that on April 8, 2020, the Company acquired XMAX Chain Limited ("XMAX") and that "After the acquisition, XMAX became a wholly owned subsidiary of the Company. XMAX is a Hong Kong company, engaged in bitcoin mining business[.]" The statements concerning XMAX were materially false and misleading as Bit Digital failed to disclose: (1) that Hong Yu, who the Company appointed as executive director and Chief Strategy Officer just two weeks after the acquisition, was an original investor in XMAX and continued to control the entity; (2) that Yu and XMAX were the subject of numerous fraud allegations; and (3) that Yu had stated that he discontinued XMAX's crypto currency's mining because the mining machines were confiscated and that a lawsuit was being filed as a result. ¶¶ 89-95, 128.[1]

      In their opening brief, Defendants devoted the entirety of their falsity argument to attacking Plaintiff's reliance on the JCAP Report, which Defendants argued relied entirely on anonymous sourcing. Def. Br. at 11-13. As Plaintiff pointed out in opposition, Defendants failed to address any of the allegations concerning XMAX – none of which relied on unnamed sources. Opp. at 16.

      In reply, however, Defendants introduced Exhibits A-D to the Kagen Declaration, which consist of screen shots and pages from websites relating to XMAX. Using these exhibits, they now argue – for the first time – that the XMAX Bit Digital acquired is unrelated to the XMAX discussed in the Complaint. Reply at 10-11. Because Defendants raised this issue on reply, they waived it

---

[1] References to ("¶\_") are to the Complaint.

**BLOCK & LEVITON LLP**

260 Franklin Street, Suite 1860 • Boston, Massachusetts 02110
P 617-398-5600 • F 617 507 6020

and "[it] need not be considered." *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 634 (S.D.N.Y. 2014); *see also Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999) (declining to consider argument raised for the first time on reply).

In any event, the exhibits should be stricken because they are not alleged in or integral to the Complaint and are not subject to judicial notice. A court may take judicial notice of a public record that is not attached to the complaint or incorporated in it by reference, if the facts in it are "not subject to reasonable dispute." Fed. R. Evid. 201. "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)). Here, Defendants offer no authentication for any of these exhibits, and failed to even request that this Court take judicial notice of the exhibits, instead arguing in footnotes that the Court should consider them. *See* Reply at 9 & n.6; 10 & n.8; 11 & n.9.

Defendants offer Exhibit A, which purports to be a screen shot from the Hong Kong Companies Registry website, to argue that "[w]hatever the entity is that JCAP investigated, it is not XMAX Chain Limited, which is registered in the Hong Kong government as a subsidiary of Bit Digital." Reply at 10. For the Court to take judicial notice of a document "no serious question as to [the document's] authenticity can exist[.]" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). That is far from the case here. One look at Exhibit A is all it takes to see that it is merely a screen shot of a search result that post-dates Bit Digital's acquisition of XMAX. Far from an official document, the screen shot does not purport to be of an official registration or article of incorporation. Nor does it list any officers, directors, or agents of any kind from any time. Indeed, the screen shot bears no indicia of an official document and is not even a document at all. This contrasts with *Rote v. Zel Custom Mfg., LLC*, 383 F. Supp. 3d 779 (S.D. Ohio 2019), cited by Defendants, when the court found that an "original Spanish foreign judgment appears on its face to be an official publication—it bears the judicial body's name, the case number and name, the date of decision, the city in which the tribunal convened and the names of the judicial officers." *Id*. at 785. Nor is this like the report published by the SEC Office of Investigation in *Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 27 (Bankr. S.D.N.Y. 2016). *See* Reply at 10 n.8. Exhibit B purports to be a printout of a search result (from the same Hong Kong website as Exhibit A) showing that there are nine entities with "XMAX" in the name. Defendants argue that this supports their argument that the Complaint's allegations are based on the wrong XMAX. Reply at 10. For the same reasons as Exhibit A, this document is also not subject to judicial notice.

Exhibits C and D purport to be "the results of a company name search for the name "XMAX Foundation PTE. LTD" run in the Singapore Business Directory" and "a copy of a 'profile' for a digital token called 'XMAX'" Kagen Decl. ¶¶ 5, 6. Defendants offer these documents to argue that "[b]ased on a Google search it appears that the entity that JCAP was investigating is a different company called 'XMAX Foundation PTD Ltd.'" Reply at 10-11. Defendants contend that "the Court can take judicial notice of the fact that the websites in these exhibits have published information about a different XMAX entity." Reply at 11 n.9. Defendants seek to offer these documents for the truth—"that the entity that JCAP was investigating is a different company." Even if the Court could take judicial notice of the existence of the web pages,

the Court "cannot take judicial notice of the truth of the facts" on the web pages. *See Karol v. City of New York*, 396 F. Supp. 3d 309, 318 (S.D.NY. 2019).

In any event, these documents fail to show that Hong Yu was not affiliated with XMAX. The Complaint alleges that in announcing Yu's appointment, the Company provided a bio which stated in part, "At 3 am February 11, 2018, Mr. Yu initiated '3AM' community which is very influential in the Chinese blockchain community." ¶ 56. In tying Yu to XMAX, the JCAP Report provides a link to an article discussing XMAX as a fraud. *See* Compl. Ex. A at 8 & n.7. The article, entitled "The top 5 'fraud coins' in the first half of the year, the lowest increase of 1400%," discusses XMAX and its crypto currency, XMX. The article describes Yu as XMX's founder— "XMX founder Yu Hong . . ."[2] Lest there be any doubt that the article is talking about the same Yu, it also discusses his founding of 3AM: "Time is pushed back to 3 am on February 11th, 2018. Yuhong, who was originally named in the currency circle, has created a "3 o'clock sleepless sleep with a group of friends . . . . Seeing the success of the operating model, Yuhong launched the XMX project . . ." The article further states "Yuhong wanted to lock the warehouse after pulling the XMX, and then used the money to sell the miner to do the mine business."

Similarly, the Complaint alleges that the JCAP report cited an article published in The Paper, which stated in part: "In May 2020, Yuhong announced that, due to the impact of the macro economy and the halving of Bitcoin production, all mining machines were suspended and the repurchase plan [of XMAX's crypto, XMX] was suspended. Yuhong revealed on Weibo on June 1 that the mining authority was suspended because the XMX machine at the Lanzhou mine was detained and a lawsuit was still being filed." *See* ¶ 94; Compl. Ex. A at 8 & n.10.

Thus, Defendants' attempt to disclaim any relationship between Bit Digital, Yu, and XMAX is unavailing. Defendants' introduction of Exhibits A through D is merely an improper effort to dispute the Complaint's factual allegations before the parties engage in discovery, which is exactly what the Ninth Circuit recently warned against in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). *See Id.* at 998 ("the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risk premature dismissals of plausible claims that may turn out to be valid after discovery."). The situation is even worse here, where the exhibits are offered to support arguments made for the first time on reply. Accordingly, the Court should disregard Exhibits A through D, and all references to and arguments based on them.

Defendants' reply also links to and discusses a blank form of a Host Services Contract. Reply at 9 & n.6. Defendants offer the blank contract to rebut the claim that the Complaint's allegations of falsity concerning Bit Digital's purported mining operations are supported by the fact that the Company lists all $18 million of its assets as "miners" with no further description or information "for leased assets, leasehold improvements, basic furniture or even everyday non-mining IT equipment." ¶ 102. The contract is not referenced in the Complaint and is an exhibit to the 2019 Annual Report, which pre-dates the Class Period and is itself hardly mentioned in the Complaint. Moreover, other than attaching it as an exhibit, the 2019 Annual Report makes no mention of the contract. Most importantly, the contract is a blank form that does not mention Bit Digital *even once*. Thus, even if the Court were to consider it, the contract (which is not even an actual, executed contract) does not support Defendants' attempted rebuttal of the Complaint's falsity allegations.

---

[2] As discussed in the Complaint, Hong Yu is sometimes called Yu Hong. *See* Compl. ¶ 89 & n.5.

To consider the documents for the truth of their contents would "permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding – one featuring a bespoke factual record, tailor made to suit the needs of defendants." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 646 n.4 (S.D.N.Y. 2017) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016)). For this reason, courts in this District have stricken exhibits that are extrinsic to a complaint and do not fall within any of the exceptions for consideration on a motion to dismiss. *See, e.g., City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) (granting motion to strike exhibits extrinsic to complaint).

For the reasons discussed above, Plaintiff respectfully requests: (i) a pre-motion conference on Plaintiff's motion to strike; or (ii) alternatively, permission to file Plaintiff's motion to strike, which Plaintiff is prepared to file at the Court's earliest convenience.

Respectfully submitted,

*/s/ Jacob A. Walker*

Jeffrey C. Block
Jacob A. Walker (*pro hac vice*)
Nathaniel Silver
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
jeff@blockleviton.com
jake@blockleviton.com
nate@blockleviton.com

*Lead Counsel for Lead Plaintiff and the Class*