**KAGEN, CASPERSEN & BOGART PLLC**
ATTORNEYS ADMITTED IN NEW YORK, NEW JERSEY AND CALIFORNIA

757 THIRD AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10017
(212) 880-2045
(646) 304-7879 (FACSIMILE)

January 26, 2022

<u>By ECF Filing</u>
The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 13067
New York, New York 10007

  Re: <u>In re Bit Digital, Inc. Securities Litig.</u> (1:21-cv-00515-ALC)

Dear Judge Carter:

  I am counsel for Defendants in the above-reference action and write in response to Plaintiff's January 21, 2022, letter requesting a pre-motion conference.

  Plaintiff requests a conference to discuss an anticipated motion to strike five exhibits, and related arguments, submitted by Defendants in support of their motion to dismiss. Plaintiff articulates two bases for his anticipated motion. First, he contends that none of the five exhibits is of a kind that the Court may take judicial notice. Second, he contends that an argument in support of which certain of the exhibits are submitted was made for the first time on reply. As discussed below, neither argument is correct.

<u>Plaintiff's Anticipated Motion is Procedurally Improper</u>

  Preliminarily, Plaintiff's request should be denied because a motion to strike "is not the correct procedural vehicle" to object to the submission of documents in support of a motion to dismiss. *United States ex rel. Yu v. Grifols USA, LLC*, 2021 U.S. Dist. LEXIS 184520 at *2 (Sept. 26, 2021) (denying motion to strike exhibit submitted on motion to dismiss). "The question of whether to consider a document on a motion to dismiss is distinct from the question of whether it should be stricken entirely from the record; the Court can decline to consider a document when deciding a motion to dismiss, but that document may nonetheless remain a part of the record." *Id.* at *4.

  Plaintiff, like the unsuccessful movant in *Grifols*, "conflates the standard applicable on a motion to strike a document from the record in its entirety with the standard for whether the courts can consider documents extrinsic to a complaint in the context of a motion to dismiss." *Id.* at *3-4. Motions to strike are governed by Fed. R. Civ. P. 12(f), which permits courts to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." *Id.* (quoting Rule 12(f)). Because the text of the rule permits a court to strike materials from "a pleading" some courts "have declined to strike documents other than pleadings under the rule." *Id.* at *3 (collecting cases). And absent a showing that the document sought to be struck is "redundant, immaterial, impertinent, or scandalous" the motion must be denied. *Id.* at 3. Plaintiff does not attempt to show that any of the five documents that he seeks to strike are redundant, immaterial, impertinent, or scandalous. Accordingly, because the anticipated motion would be futile, no pre-motion conference is necessary.

1

Kagen, Caspersen & Bogart PLLC

## The Court May Take Judicial Notice Of The Exhibits

The exhibits that Plaintiff seeks to strike fall within two categories: (a) Exhibits A-D to the Declaration of Stuart Kagen, which were submitted in response to Plaintiff's contention that an entity acquired by Bit Digital, XMAX Chain Limited, is the same as one that the JCAP Report says was owned by Hong Yu and that is the subject of various derogatory media reports; and (b) a Host Services Agreement, which was submitted in response to Plaintiff's contention that the accusation made in the JCAP Report that Bit Digital does not have operations in China is corroborated by a "property and equipment" disclosure in Bit Digital's public filings.

Exhibits A and B to the Kagen Affirmation are screen shots from the Hong Kong Companies Registry, a governmental website. It is well-accepted in this District that a court may take judicial notice of such information. *RL 900 Park, LLC v. Ender*, 2021 U.S. Dist. LEXIS 35469 at *18 n.4 (S.D.N.Y. Feb. 25, 2021) ("The Court may take judicial notice of business entity searches like this one because they are public filings made with a governmental agency."; taking judicial notice of information contained on Florida Secretary of State, Division of Corporations website); *Gould v. Airway Office*, LLC, 2016 U.S. Dist. LEXIS 94229 at *11 n.6 (S.D.N.Y. July 19, 2016) (taking judicial notice of "corporate entity details" on Michigan Government, Department of Licensing and Regulatory Affairs website).

Exhibits C is a print out of information retrieved from a publicly available database called the "Singapore Business Directory." Courts in this district have taken judicial notice of information of this kind. See e.g. *Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 586 (E.D.N.Y. 1994) (taking judicial notice of information contained in Standard & Poor's Corporate Descriptions); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (taking judicial notice of Lexis database search).

Exhibit D is a "profile" for a digital token called "XMAX" found at the website "isthiscoinascam.com". It is well established that this court may "take judicial notice of information contained on websites where the authenticity of the site has not been questioned." *Cunningham v. Cornell Univ.*, 2017 U.S. Dist. LEXIS 162420 at *11 (S.D.N.Y. Sept. 29, 2017). That includes information contained in a blog hosted on the website, like that contained in Exhibit D. *Mirlis v. Greer*, 952 F.3d 51, 64 (2d Cir. 2019) (district court "was entitled to take judicial notice of . . . blog post, as are we.").

The Host Services Agreement is an exhibit to an annual report filed by Bit Digital with the Securities and Exchange Commission. "Courts may take judicial notice of "the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Rubenstein v. Urban One, Inc.*, 2022 U.S. Dist. LEXIS 7298 at *6 (S.D.N.Y. Jan. 13, 2022).

"[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). As discussed below, each of Exhibits A-D are submitted solely for the fact that the document contains certain information, not for the truth of that information. The same is true of the Host Services Agreement, which was submitted in response Plaintiff's contention that the accusation made in the JCAP Report that Bit Digital did not in fact have operations in China, which was based on supposed interviews with anonymous governmental employees, was supposedly corroborated by

KAGEN, CASPERSEN & BOGART PLLC

an itemization of "property and equipment" in Bit Digital's public filings that listed only miners having a value of $18,906,938, without any disclosure of "leased assets, leasehold improvements, basic furniture, or even everyday non-mining IT equipment." The Host Services Agreement is submitted to show the fact that Bit Digital disclosed that, under the form of Host Services Agreement used by Bit Digital the host was to provide facilities, furnishings and IT equipment. Read in context, the Bit Digital's property and equipment disclosure does not corroborate the anonymously sourced claim that Bit Digital did not have operations in China.

Defendants Mistaken Identity Argument Was
Made in Response to Issues Raised in Plaintiff's Opposition Brief

Defendants opening brief argued (at pp. 11-13) that, for purposes of pleading a section 10(b) claim, allegations based on an anonymously sourced publication, such as a newspaper article, are credited only to the extent that the publication provides a basis for believing that the unidentified source is likely to have known the relevant facts. In response to that argument, Plaintiff argued in their opposition brief (at 16) that none of the allegations relating to the XMAX acquisition is based on JCAP's alleged interviews with anonymous sources but instead on JCAP's "review of public sources." In reply to that claim, Defendants pointed out that in fact neither the JCAP Report, nor the media sources to which it cites, identify any source for the assertion that the "XMAX" entity that is the subject of those media sources is the same "XMAX" entity that Bit Digital purchased: XMAX Chain Limited. Defendants submitted Exhibits A-D to demonstrate that the author of the JCAP Report, Anne Stevenson-Yang – who appears to be the source of that unattributed assertion – was not to have knowledge of that fact. Specifically:

- Exhibit A is submitted to show the fact that XMAX Chain Limited has been recorded in the Hong Kong Company Registry as a subsidiary of Bit Digital. Whereas Ms. Yang asserts in the JCAP Report that "The Hong Kong corporate documents for XMAX do not show ownership by BTBT.";
- Exhibit B is submitted to show the fact that nine companies other than XMAX Chain Limited are listed in the Hong Kong Company Registry as doing business under an "XMAX" name;
- Exhibit C is submitted to show the fact that a company called XMAX Foundation PTE Ltd. is listed as Singapore company in the Singapore Business Directory.
- Exhibit D is submitted to show the fact that in a blog post on the website "isthiscoinascam.com" XMAX Foundation PTE Ltd is referred as the issuer of an "XMX" token that is described as a "scam."

Together, Exhibits A-D show that Ms. Yang – the unidentified source of the assertion that the XMAX entity that is the subject of the derogatory media reports cited in the JCAP Report is XMAX Chain Limited (the entity acquired by Bit Digital) – was not likely to have known fact relevant to making that assertion. To wit, Ms. Yang's own statement that the corporate documents of the XMAX entity that she investigated did not show ownership by BTBT demonstrates that she was not investigating XMAX Chain Limited, which is listed as a subsidiary of BTBT on the Hong Kong Company Registry. Exhibits B-D show that there are many other entities that operate under the "XMAX" name, including XMAX Foundation PTE Ltd. which is said to have issued scam XMX tokens.

Because Exhibits A-D were submitted as support for an argument responsive to Plaintiff's memorandum law in opposition to the motion, they may properly be considered on

KAGEN, CASPERSEN & BOGART PLLC

reply. *Varga v. GE*, 2020 U.S. Dist. LEXIS 38142 at *7 (N.D.N.Y. March 5, 2020) ("because defendants' arguments are responsive to Varga's memorandum of law in opposition, defendants have not improperly asserted arguments for the first time in their reply."); *Lievre v. JRM Constr. Mgmt., LLC*, 2019 U.S. Dist. LEXIS 161449 at *15 n.7 (S.D.N.Y. Sept. 20, 2019) (considering affidavit submitted on reply in response to argument raised in opposition memorandum of law).

Respectfully submitted,

 *s/ Stuart Kagen*

Stuart Kagen

Cc (via ECF): All Counsel of Record