UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Bit Digital, Inc. Securities Litigation*<br><br>This document relates to:<br><br>All Actions | Lead Case No. 1:21-cv-00515-ALC |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO STRIKE**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

    I.    The XMAX exhibits should be stricken ........................................................................ 3

    II.    The Form Hosting Services Contract should be stricken.............................................. 7

    III.    If the Court considers the Disputed Exhibits, the motion to dismiss must be converted to a motion for summary judgment and Lead Plaintiff afforded an opportunity for full discovery. ........................................................................................ 8

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**CASES**

*Glob. Network Comm's, Inc. v. City of New York*,
 458 F.3d 150 (2d Cir. 2006) ................................................................................................ 8

*Goel v. Bunge, Ltd.*,
 820 F.3d 554 (2d Cir. 2016) ................................................................................................ 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
 548 B.R. 13 (Bankr. S.D.N.Y. 2016) ................................................................................... 4

*In re OSG Sec. Litig.*,
 12 F. Supp. 3d 622 (S.D.N.Y. 2014) ................................................................................... 3

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
 146 F.3d 66 (2d Cir. 1998) .................................................................................................. 1

*Karol v. City of New York*,
 396 F. Supp. 3d 309 (S.D.NY. 2019) .................................................................................. 5

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ........................................................................................... 2, 6

*Mayo v. Fed. Gov't*,
 558 F. App'x 55 (2d Cir. 2014) ........................................................................................... 1

*Rote v. Zel Custom Mfg., LLC*,
 383 F. Supp. 3d 779 (S.D. Ohio 2019) ................................................................................ 4

*Roth v. Jennings*,
 489 F.3d 499 (2d Cir. 2007) ............................................................................................ 1, 4

*Thomas v. Roach*,
 165 F.3d 137 (2d Cir. 1999) ................................................................................................ 4

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
 286 F. Supp. 3d 634 (S.D.N.Y. 2017) ................................................................................. 8

**RULES**

Fed. R. Civ. P. 12(d) ............................................................................................................. 3, 8

Fed. R. Evid. 201 ...................................................................................................................... 1

**INTRODUCTION**

Defendants' reply brief in support of their motion to dismiss ("Reply") (ECF No. 50) is rife with extrinsic facts and evidence—all of which is improper and should be excluded. On a Rule 12(b)(6) motion to dismiss, a court must decide whether the allegations of a complaint, accepted as true, and with inferences drawn in plaintiff's favor, set forth a legally cognizable claim. *See Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). For this reason, "in considering a motion to dismiss," "court[s] normally may not look beyond the four corners of the complaint[.]" *Mayo v. Fed. Gov't*, 558 F. App'x 55, 56, (2d Cir. 2014). Only two narrow exceptions—incorporation by reference and judicial notice—permit a court to consider extraneous documents at this stage. *See Roth*, 489 F.3d at 509.

Where appropriate, a court may consider "documents attached to the complaint as exhibits or incorporated in it by reference," and any document "upon which [the complaint] solely relies on which is integral to the complaint." *Id*. at 503, 509 (citation omitted). Similarly, a court may take judicial notice of a public record that is not attached to the complaint or incorporated in it by reference, if the facts in it are "not subject to reasonable dispute." Fed. R. Evid. 201. "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)).

Trying to marshal their own set of facts inconsistent with the Complaint, Defendants have improperly submitted four exhibits and provided a link to another extraneous document in support of their Reply—all of which are inadmissible at this stage of the proceedings. These documents include a form Hosting Services Contract attached to Bit Digital's 2019 Form 10-K (link to document in Reply at 9 n.6), as well as screen shots and pages from websites relating to XMAX—

1

the entity Bit Digital acquired in order to enter the bitcoin mining business (Exs. A-D) ("Disputed Exhibits").[1]

Defendants are asking the Court to consider documents they believe support their position by creating their own alternative record. But none of the documents are integral to Lead Plaintiff's Complaint, and none are the proper subject of judicial notice. The Ninth Circuit recently cautioned against allowing defendants to do exactly this:

> [W]e note a concerning pattern in securities cases like this one: exploiting these procedures [judicial notice or incorporation by reference] to defeat what would otherwise constitute adequately stated claims at the pleading stage. . . . The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risk premature dismissals of plausible claims that may turn out to be valid after discovery.

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

This is precisely what Defendants are trying to do here. Defendants offer no authentication for any of these exhibits, and failed to even request that this Court take judicial notice of the exhibits attached to their Reply, instead arguing in footnotes that the Court should consider them. *See* Reply at 9 & n.6; 10 & n.8; 11 & n.9. Even assuming the Disputed Exhibits were available for judicial review under either the incorporation by reference or judicial notice (they are not), Defendants are improperly asking the Court to consider the Disputed Exhibits for the truth of their contents, not simply the fact that they exist. Accordingly, the Disputed Exhibits, and all references to and assertions and arguments based on them, should be stricken.

---

[1] Exhibits A-D are attached to the Declaration of Stuart Kagen (ECF No. 51).

If the Court considers the extraneous materials offered by Defendants, Plaintiff requests that Defendants' motion to dismiss be converted to a motion for summary judgment and that the parties be provided with a reasonable opportunity to conduct discovery. *See* Fed. R. Civ. P. 12(d).

## ARGUMENT

**I.     The XMAX exhibits should be stricken**

Defendants impermissibly ask this Court to consider four documents concerning XMAX that are not well known within the territory and are reasonably subject to dispute. Not only do Defendants ask the Court to consider these documents, they also improperly ask the Court to accept as true the factual assertions contained. By relying on the XMAX documents to make fact-intensive arguments, Defendants have raised contested factual issues not appropriate for resolution on a motion to dismiss. As a result, the Court should strike the XMAX documents.

The Complaint alleges that Bit Digital's statements about the acquisition of XMAX were false because the Company failed to disclose: (1) that Hong Yu, whom the Company appointed as executive director and Chief Strategy Officer just two weeks after the acquisition, was an original investor in XMAX and continued to control the entity; (2) that Yu and XMAX were the subject of several fraud allegations, including seven lawsuits against Yu by disgruntled investors in China; and (3) that Yu had stated that he ended XMAX's cryptocurrency mining operations because the mining machines were confiscated and that a lawsuit was being filed as a result. Compl. ¶ 128.

Having failed to even address the XMAX allegations in their motion to dismiss, Defendants now seek to introduce the XMAX documents to create the factual argument that the XMAX that Bit Digital acquired has no relationship to the XMAX discussed in the Complaint.[2] *See* Reply at

---

[2] Defendants chose not to address the Complaint's XMAX allegations in their motion to dismiss. Because Defendants raised this issue for the first time on reply, they waived it and "[it] need not be considered." *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 634 (S.D.N.Y. 2014); *see also Thomas*

3

10-11. As discussed below, these documents cannot be judicially noticed, particularly for the purpose Defendants seek to offer them.

Defendants offer Exhibit A, which purports to be a screen shot from the Hong Kong Companies Registry website, to argue that "[w]hatever the entity is that JCAP investigated, it is not XMAX Chain Limited, which is registered in the Hong Kong government as a subsidiary of Bit Digital." Reply at 10. For the Court to take judicial notice of a document "no serious question as to [the document's] authenticity can exist[.]" *Roth*, 489 F.3d at 509. That is far from the case here. One look at Exhibit A is all it takes to see that it is merely a screen shot of a search result that post-dates Bit Digital's acquisition of XMAX. Far from an official document, the screen shot does not purport to be of an official registration or article of incorporation. Nor does it list any officers, directors, or agents of any kind from any time. Indeed, the screen shot bears no indicia of an official document and is not even a document at all. This contrasts with *Rote v. Zel Custom Mfg., LLC*, 383 F. Supp. 3d 779 (S.D. Ohio 2019), cited by Defendants, when the court found that an "original Spanish foreign judgment appears on its face to be an official publication—it bears the judicial body's name, the case number and name, the date of decision, the city in which the tribunal convened and the names of the judicial officers." *Id*. at 785. Nor is this like the report published by the SEC Office of Investigation in *Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 27 (Bankr. S.D.N.Y. 2016). *See* Reply at 10 n.8.

Exhibit B purports to be a printout of a search result (from the same Hong Kong website as Exhibit A) showing that there are nine entities with "XMAX" in the name. Defendants argue

---

*v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (declining to consider argument raised for the first time on reply).

4

that this supports their argument that the Complaint's allegations are based on the wrong XMAX. Reply at 10. For the same reasons as Exhibit A, this document is also not subject to judicial notice.

Finally, Exhibits C and D are "the results of a company name search for the name "XMAX Foundation PTE. LTD" run in the Singapore Business Directory" and "a copy of a 'profile' for a digital token called 'XMAX'" Kagen Decl. ¶¶ 5, 6. Defendants offer these documents to argue that "[b]ased on a Google search it appears that the entity that JCAP was investigating is a different company called 'XMAX Foundation PTD Ltd.'" Reply at 10-11. Defendants contend that "the Court can take judicial notice of the fact that the websites in these exhibits have published information about a different XMAX entity." Reply at 11 n.9. Defendants seek to offer these documents for the truth—"that the entity that JCAP was investigating is a different company." Even if the Court could take judicial notice of the existence of the web pages, the Court "cannot take judicial notice of the truth of the facts" on the web pages. *See Karol v. City of New York*, 396 F. Supp. 3d 309, 318 (S.D.NY. 2019).

In any event, these documents fail to show that Hong Yu was not affiliated with XMAX. The Complaint alleges that in announcing Yu's appointment, the Company provided a bio which stated in part, "At 3 am February 11, 2018, Mr. Yu initiated '3AM' community which is very influential in the Chinese blockchain community." Compl. ¶ 56. In tying Yu to XMAX, the JCAP Report provides a link to an article discussing XMAX as a fraud. *See* Compl. Ex. A at 8 & n.7. The article, entitled "The top 5 'fraud coins' in the first half of the year, the lowest increase of 1400%," discusses XMAX and its crypto currency, XMX.[3] The article describes Yu as XMX's

---

[3] Also available at: https://blocking.net/10950/the-top-5-fraud-coins-in-the-first-half-of-the-year-the-lowest-increase-of-1400/.

founder—"XMX founder Yu Hong . . ."[4] Lest there be any doubt that the article is talking about the same Yu, it also discusses his founding of 3AM: "Time is pushed back to 3 am on February 11th, 2018. Yuhong, who was originally named in the currency circle, has created a "3 o'clock sleepless sleep with a group of friends . . . . Seeing the success of the operating model, Yuhong launched the XMX project . . ." The article further states "Yuhong wanted to lock the warehouse after pulling the XMX, and then used the money to sell the miner to do the mine business."

Similarly, the Complaint alleges that the JCAP report cited an article published in The Paper, which stated in part: "In May 2020, Yuhong announced that, due to the impact of the macro economy and the halving of Bitcoin production, all mining machines were suspended and the repurchase plan [of XMAX's crypto, XMX] was suspended. Yuhong revealed on Weibo on June 1 that the mining authority was suspended because the XMX machine at the Lanzhou mine was detained and a lawsuit was still being filed." *See* Compl. ¶ 94; Compl. Ex. A at 8 & n.10.[5]

Thus, Defendants' attempt to disclaim any relationship between Bit Digital, Yu, and XMAX is unavailing. Defendants' introduction of Exhibits A through D is merely an improper effort to dispute the Complaint's factual allegations before the parties engage in discovery, which is exactly what the Ninth Circuit warned about in *Khoja*. *See Khoja*, 899 F.3d at 998 ("the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risk premature dismissals of plausible claims that may turn out to be valid after discovery."). Defendants' conduct is even worse here, where the arguments were made for the first time on reply. Accordingly, the Court should disregard Exhibits A through D, and all references to and arguments based on them.

---

[4] As discussed in the Complaint, Hong Yu is sometimes called Yu Hong. *See* Compl. ¶ 89 & n.5.

[5] Also available at: https://www.thepaper.cn/newsDetail_forward_10101207.

**II.     The Form Hosting Services Contract should be stricken**

Defendants' Reply contains a link to a blank form of a Host Services Contract ("Form Contract"). Reply at 9 & n.6. Defendants offer the Form Contract to rebut the claim that the Complaint's allegations of falsity concerning Bit Digital's purported mining operations are supported by the fact that the Company lists all $18 million of its assets as "miners" with no further description or information "for leased assets, leasehold improvements, basic furniture or even everyday non-mining IT equipment." Compl. ¶ 102. Defendants assert:

> As the Company previously disclosed in its 2019 Annual Report, the Company's physical operations were performed by third-party hosts, who provided hosting space, professional facility management, and device maintenance services; a form of the Hosting Services Contract was disclosed as Exhibit 4.28 to the 2019 Annual Report. The Q320 press release does not report "basic furniture" and "everyday non-mining IT equipment" because items of that kind are provided by the third-party hosts. The host facilities and hosting agreements do not constitute reportable property or equipment.

Reply at 9.

The Form Contract is not referenced in the Complaint and is an exhibit to the 2019 Annual Report, which pre-dates the Class Period and is itself hardly mentioned in the Complaint. Moreover, other than attaching it as an exhibit, the 2019 Annual Report makes no mention of the Form Contract. Most importantly, the Form Contract is a blank form that does not mention Bit Digital *even once*. The Complaint alleges that the 2019 Annual Report stated that Bit Digital "operates a recently updated bitcoin facility for the sole purpose of mining bitcoin[,]" as well as a reference to electrical power supplied "to our leased facilities." Compl. ¶ 97. If anything, the blank Form Contract contradicts the statement that Bit Digital "operates a recently updated bitcoin facility," and does not show that Bit Digital leased any facilities through third parties. Thus, even if the Court were to consider it, the Form Contract (which is not even an actual, executed contract) does not support Defendants' attempted rebuttal of the Complaint's falsity allegations.

**III.     If the Court considers the Disputed Exhibits, the motion to dismiss must be converted to a motion for summary judgment and Lead Plaintiff afforded an opportunity for full discovery.**

If the Court is to consider the Disputed Exhibits for the truth of the matters asserted, this Court should treat the motion to dismiss as a motion for summary judgment under Rule 56 and give "all parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). To consider the documents for the truth of their contents would "'permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding – one featuring a bespoke factual record, tailor made to suit the needs of defendants." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 646 n.4 (S.D.N.Y. 2017) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016)). Indeed, a court may not allow a defendant to offer extraneous documents to rebut a complaint's factual allegations without converting the motion to dismiss to one for summary judgment. *See Glob. Network Comm's, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (holding trial court erred in not converting motion to summary judgment where, "not only did the district court consider external material in its ruling, it relied on those materials to make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint.") (emphasis in original).

## CONCLUSION

Lead Plaintiff asks the Court to strike the Disputed Exhibits and references and arguments based on them or, in the alternative, convert Defendants' motion to a motion for summary judgment and allow Lead Plaintiff to conduct all reasonable and necessary discovery relating to XMAX and Defendants' purported bitcoin mining operations.

March 4, 2022                                                         Respectfully submitted,

/s/ Jacob A. Walker
Jacob A. Walker, *pro hac vice*

8

Jeffrey C. Block, *pro hac vice*
Nathaniel Silver
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com
nate@blockleviton.com

*Counsel to Lead Plaintiff and
Lead Counsel for the Class*

9

## CERTIFICATE OF SERVICE

  I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Court's Electronic Mail Notice List.

/s/ Jacob A. Walker
Jacob A. Walker
