**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Bit Digital, Inc. Securities Litigation*<br><br>This document relates to:<br><br>All Actions | Lead Case No. 1:21-cv-00515-ALC |

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE**

# TABLE OF CONTENTS

I.   Defendants' Procedural Argument Fails...................................................................................... 1

II.  The Disputed Exhibits Are Not Subject to Judicial Notice and Are Offered for An Improper
     Purpose....................................................................................................................................... 2

   A.   The XMAX Exhibits Are Not Subject to Judicial Notice.................................................... 2

   B.   The XMAX Exhibits Are Offered for an Improper Purpose ............................................... 5

   C.   The Form Hosting Services Contract is Offered for an Improper Purpose ........................ 8

CONCLUSION.................................................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
458 F. Supp. 2d 160 (S.D.N.Y. 2006) ............................................................ 6

*Dweck L. Firm, L.L.P. v. Mann*,
340 F. Supp. 2d 353 (S.D.N.Y. 2004) ............................................................ 7

*Gould v. Airway Office, LLC*,
2016 WL 3948102 (S.D.N.Y. 2016) ............................................................ 3

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug 28, 2017) .................................................... 7

*In re Resideo Techs., Inc., Sec. Litig.*,
2021 WL 1195740 (D. Minn. Mar. 30, 2021) ........................................... 4, 8

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66 (2d Cir. 1998) ........................................................................ 2, 3

*Jiehua Huang v. AirMedia Group Inc.*,
No. 1:15-cv-04966-ALC (Carter, Jr., J.) (S.D.N.Y. May 13, 2016) ............. 1

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ............................................ 9

*Karol v. City of New York*,
396 F. Supp. 3d 309 (S.D.N.Y. 2019) ........................................................... 5

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018) ........................................................................ 8

*Mirlis v. Greer*,
952 F.3d 51 (2d Cir. 2019) ............................................................................ 5

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
2006 WL 3771013 (S.D.N.Y. Dec. 18, 2006) ............................................... 7

*RL 900 Park, LLC v. Ender*,
2021 WL 738705 (S.D.N.Y. Feb. 25, 2021) .................................................. 4

*Sharette v. Credit Suisse Int'l*,
127 F. Supp. 3d 60 (S.D.N.Y. 2015) ............................................................. 9

*Sterling v. Interlake Indus. Inc.*,
154 F.R.D. 579 (E.D.N.Y. 1999) .................................................................................................. 4

*Tomaszewski v. Trevena, Inc.*,
482 F. Supp. 3d 317 (E.D. Pa. 2020) ...................................................................................... 1, 9

*United States ex rel. Yu v. Grifols USA, LLC*,
2021 WL 4429375 (S.D.N.Y. Sept 26, 2021) ............................................................................. 2

*Urakchin v. Allianz Asset Mgmt. of Am., L.P.*,
2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ............................................................................... 7

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings*, *LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........................................................................................ 5

**RULES**

Fed. R. Evid. 201 ..................................................................................................................... 2

Lead Plaintiff submits this reply in further support of his Motion to Strike (ECF No. 58).

## I.        Defendants' Procedural Argument Fails

Contrary to Defendants' arguments, Plaintiff's Motion is not simply an "unauthorized sur-reply," nor does it "conflate[] the standard applicable to a motion to strike a document from the record in its entirety with the standard for whether the courts can consider documents extrinsic to a complaint in the context of a motion to dismiss." Opp.[1] at 1-2 (internal citation omitted).

Of course, if Defendants had filed a request for judicial notice for the Disputed Exhibits, as they had to do, Plaintiff would have been able to file an opposition to such request, obviating the need for this Motion. Similarly, Plaintiff could have opposed the Court's consideration of the Disputed Exhibits in his opposition to Defendants' motion to dismiss had Defendants included the Disputed Exhibits in their opening brief rather than introducing them for the first time on reply. Having sandbagged Plaintiff with the Disputed Exhibits only on reply, Defendants' attempt to cry foul rings hollow.

In any case, Courts routinely entertain motions to strike in the context of extrinsic documents offered in support of a motion to dismiss. *See e.g.*, *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 326-329 (E.D. Pa. 2020) (granting plaintiffs' motion to strike exhibits submitted by defendants in support of motion to dismiss and denying motion to dismiss where arguments improperly relied on the stricken documents); *Jiehua Huang v. AirMedia Group Inc.,* No. 1:15-cv-04966-ALC (Carter, Jr., J.) (S.D.N.Y. May 13, 2016) (ECF No. 55 – Order granting plaintiffs' request for leave to move to strike exhibit and oppose defendants' request for judicial notice for exhibit submitted with defendants' motion to dismiss). What is more, Defendants rely on *United*

---

[1] References to "Opp." are to Defendants' Memorandum of Law in Opposition to Motion to Strike. ECF No. 59.

*States ex rel. Yu v. Grifols USA, LLC*, 2021 WL 4429375 (S.D.N.Y. Sept 26, 2021), Opp. at 1-2, but omit that after denying the motion to strike, the court in *Grifols* stated that it would still "consider the arguments presented in [plaintiff's] Motion to Strike in the correct procedural context—namely, to evaluate whether the Court should consider Exhibit A in deciding Defendant's Motion to Dismiss." *Grifols*, 2021 WL 4429375, at *2. Accordingly, the Court should reject Defendants' procedural argument.

## II.    The Disputed Exhibits Are Not Subject to Judicial Notice and Are Offered for An Improper Purpose

As explained in Plaintiff's opening Motion, the Disputed Exhibits are not subject to judicial review under judicial notice and not for the purpose for which Defendants are offering them. Defendants' arguments to the contrary are unavailing.

### A.    The XMAX Exhibits Are Not Subject to Judicial Notice

A court may take judicial notice of a public record that is not attached to the complaint or incorporated in it by reference, if the facts in it are "not subject to reasonable dispute." Fed. R. Evid. 201. "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)).

Exhibits A and B are screen shots from a Hong Kong website that purport to show that XMAX Chain Limited is a registered subsidiary of Bit Digital and that there are nine other companies doing business under an "XMAX" name listed in the Hong Kong registry. *See* Reply at 10.[2] These screen shots are not "generally known within the territorial jurisdiction" of the Court.

---

[2] References to "Reply" are to Defendants' reply brief in support of their motion to dismiss. ECF No. 50.

Thus, to be judicially noticed, the screen shots must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hilfiger*, 146 F.3d at 70. Defendants ignore the reasons Plaintiff set forth as to why Exhibits A and B are not the sort of documents whose accuracy cannot be reasonably questioned and instead baldly assert that "[i]t is well-accepted in this District that a court may take judicial notice of a business entity search, like those displayed in Exhibits A and B. Opp. at 3.

The cases relied on by Defendants are readily distinguished from the screen shots Defendants seek to offer here. In *Gould v. Airway Office, LLC*, 2016 WL 3948102 (S.D.N.Y. 2016), the court was addressing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the *Rooker-Feldman* doctrine, which precludes federal courts from exercising jurisdiction over a collateral attack on a state-court judgment. *Id*. at *1. There, the court had to determine whether there was "sufficient privity" between plaintiff (an individual) – and the named defendant (an entity) in a prior state court action. *Id*. at *4. In finding that privity existed, the court took judicial notice of certain details on the Michigan Government, Department of Licensing and Regulatory Affairs website. *Id*. at *4 & n.6. The public records identified the plaintiff-individual as the registered agent and president of the state court defendant-entity. *Id*. at *4. Along with the fact that the matters judicially noticed in *Gould* came from a well-recognized, domestic government website, the details about the registered agent and president of the entity are exactly the type of details that Plaintiff pointed out were missing from Defendant's Hong Kong screen shot. *See* Motion at 4 ("Far from an official document, the screen shot does not purport to be of an official registration or article of incorporation. Nor does it list any officers, directors, or agents of any kind from any time.").

In *RL 900 Park, LLC v. Ender*, 2021 WL 738705 (S.D.N.Y. Feb. 25, 2021), the court was presented with cross-motions for summary judgment and needed to determine whether the plaintiff had established that the court had diversity jurisdiction. *Id*. at *6. There, the plaintiff was made up of 17 individuals and corporate entities, all purportedly citizens of Florida. *Id*. As for one of the entities, the plaintiff did not identify its citizenship nor that of the entity's shareholder. *Id*. The court confirmed that the entity was a Florida LLC by searching the Florida Secretary of State, Division of Corporations website, but still found that plaintiff failed to meet its burden to establish subject matter jurisdiction by failing to provide the citizenship of the entity's shareholder. *Id*. at *6 & n.4. *RL 900 Park* thus does not apply as it does not deal with a 12(b)(6) motion to dismiss, and taking judicial notice of information from a Secretary of State website deviates from the questionable, far from official screen shots from a foreign website that Defendants offer here. *See In re Resideo Techs., Inc.*, *Sec. Litig.*, 2021 WL 1195740, at *3 (D. Minn. Mar. 30, 2021) ("On a motion to dismiss, it is improper for a court to take judicial notice of disputed facts, as a 'high degree of indisputability is the essential prerequisite' for taking judicial notice under Rule 201.") (internal citations omitted).

In short, domestic secretary of state websites are the types of sources whose accuracy cannot be reasonably questioned and thus appropriate for judicial notice. The same cannot be said for the screen shots offered here.

Defendants contend that the Court may take judicial notice of Exhibit C, a printout from a publicly available database called the "Singapore Business Directory." Opp. at 3. The authority Defendants rely on is not on point here. In *Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579 (E.D.N.Y. 1999), the court took judicial notice of information in Standard & Poor's Corporate Descriptions. *Id*. at 586. Similarly, the court took judicial notice of a Lexis database search in *Wells*

*Fargo Bank, N.A. v. Wrights Mill Holdings*, *LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015). Standard & Poor's and Lexis are well-established sources whose authenticity cannot be reasonably questioned. The same cannot be said of https://recordowl.com – the source Defendants obtained Exhibit C from. *See* Opp. at 3.

Finally, Defendants claim that the "profile" for a digital token called "XMAX" found on the website "isthiscoinascam.com" is subject to judicial notice as information contained on a website where the authenticity has not been questioned. Opp. at 4. In *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2019), cited by Defendants, the court took judicial notice of an individual's blog posts in considering his motivations in seeking to publicly post video deposition testimony in which the witness "describes being a minor victim of a sex crime perpetrated by a trusted adult[.]" *Id*. at 56. The blog posts at issue were "dedicated to, and demonstrate[d] considerable personal hostility toward" the witness whose video deposition the individual sought to make publicly available. *Id*. at 63 & n.11. Taking judicial notice of an individual's own statements to determine motivation in a case in which the individual is requesting public access of a highly sensitive video deposition provides no support for the notion that this Court should take judicial notice of the "profile" for a digital token on "isthiscoinascam.com" on a Rule 12(b)(6) motion. Even if the Court could take judicial notice of the existence of the web pages in Exhibits C and D, the Court "cannot take judicial notice of the truth of the facts" on the web pages, which is precisely what Defendants are seeking here. *See Karol v. City of New York,* 396 F. Supp. 3d 309, 318 (S.D.N.Y. 2019).

**B.     The XMAX Exhibits Are Offered for an Improper Purpose**

Even if the XMAX Exhibits were subject to judicial notice (and they are not), they were presented for the first time on reply and are offered for the improper purpose of inviting the Court to adopt their inferences—not allowed on a Motion to Dismiss.

Nowhere in Defendants' opening brief do they argue that the XMAX discussed in the Complaint and JCAP Report is a different entity than the XMAX that Bit Digital acquired. Indeed, Defendants do not address the Complaint's XMAX allegations in their opening brief. Defendants' assertions to the contrary are simply false. *See* Opp. at 7.

Furthermore, "the purpose of a Rule 12(b)(6) motion is to test the legal feasibility of the complaint, not the weight of the evidence that might be offered to support it." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 164 (S.D.N.Y. 2006) (internal quotations omitted). So "[w]hen the parties ask the Court to weigh evidence outside of the pleadings and thereby test the merits of the evidence, not the complaint, such action is more appropriately reserved for the summary judgment procedure[.]" *Id*. at 164-65 (internal quotations and citations omitted). Defendants' assertions that the XMAX Exhibits are offered not for the truth but to "show the fact" of "the contents of those documents" are betrayed by their own arguments. *See* Opp. at 4-5 ("Exhibit A was submitted to show the fact that . . ." "Exhibit B was submitted to show the fact that . . ." "Exhibit C was submitted to show the fact that . . ." "Exhibit D was submitted to show the fact that . . ."). Creative word play aside, Defendants are improperly asking the Court to make factual inferences based on the content of the XMAX Exhibits.

 The notion that XMAX Exhibits are being offered "to show the fact" rather than the truth defies logic where Defendants simultaneously ask the Court to draw inferences in their favor based on the "facts" purportedly contained in the XMAX Exhibits. In arguing that the XMAX argument was not made for the first time on reply, Defendants show that the XMAX Exhibits are offered for the improper purpose of creating an alternative record and asking the Court to draw inferences based on those documents in their favor:

> ***Exhibits A-D were submitted to show that***, based on the JCap Report itself, it is evident that JCap likely was not [in a position to know whether the "XMAX"-

named entity was the XMAX acquired by Bit Digital]. The JCap Report represented that "The Hong Kong corporate documents for XMAX do not show ownership by BTBT." ***But Exhibit A shows that*** XMAX Chain Limited is listed as a subsidiary of BTBT on the Hong Kong Company Registry. ***One may infer therefrom*** that the XMAX entity that JCAP investigated is not XMAX Chain Limited. ***To further support that inference, Defendants submitted Exhibits B-D***, which together show that there are many entities that register under the name "XMAX", including XMAX Foundation PTE Ltd., an entity listed in the Singapore Business Directory which is said to have issued a "scam" token called "XMX."

Opp. at 8 (emphasis added). Based on these extrinsic documents, Defendants ask the Court to infer that the XMAX discussed in the Complaint bears no relation to the XMAX that Bit Digital acquired. This is improper on a motion to dismiss. *See O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 2006 WL 3771013, at *1-2 (S.D.N.Y. Dec. 18, 2006) ("The Court can, as defendants note, take judicial notice of the fact that these advertisements were published in certain publications and on certain dates, but it cannot make factual inferences based on the content of those advertisements"); *Dweck L. Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 359 n.5 (S.D.N.Y. 2004) ("[defendant] is asking the Court to do much more than merely take judicial notice of her litigation with First Union; she is asking the Court to make inferences and draw conclusions regarding that lawsuit, and use those conclusions to reject the allegations contained in [plaintiff's] complaint. The Court cannot do this on a motion to dismiss.").[3]

In asking the Court to draw inferences in their favor based on the XMAX Exhibits, Defendants are trying to create their own alternative record to support dismissal. This is improper

---

[3] *See also In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug 28, 2017) ("the inferences defendants wish to draw from these documents go beyond the mere existence of statements within them . . . . Such contentions cannot properly be weighed on a motion to dismiss."); *Urakchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016) ("As to these documents, the Court takes judicial notice solely of the existence of these matters of public record, and it does not take judicial notice of one party's opinion of how a matter of public record should be interpreted[.]") (internal quotations omitted).

at the motion to dismiss stage and exactly what the Ninth Circuit warned about in *Khoja v. Orexigen Therapeutics, Inc.* 899 F.3d 988, 998 (9th Cir. 2018) ("the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risk premature dismissals of plausible claims that may turn out to be valid after discovery."). At any rate, the XMAX Exhibits simply raise a disputed question of fact – which the Court cannot resolve in Defendants' favor at the motion to dismiss stage. *See e.g.*, *Khoja*, 899 F.3d at 1014 (explaining that even when a court considers extrinsic documents on a motion to dismiss, it "does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage."). As discussed in Plaintiff's opening brief, the XMAX Exhibits fail to show that Hong Yu was not affiliated with XMAX. *See* Motion at 5-6 (discussing articles cited in JCAP Report which show that Hong Yu was affiliated with XMAX).[4] Defendants simply ignore these facts from the allegations and sources that are part of the Complaint and instead ask the Court to draw inferences from extrinsic documents in their favor, rather than in Plaintiff's, as the Court must do. For these reasons, the Court should disregard Exhibits A through D, and all references to and arguments based on them.[5]

### C.  The Form Hosting Services Contract is Offered for an Improper Purpose

Defendants request judicial notice of a blank form of a Host Services Contract ("Form Contract"). While it is true that courts often take judicial notice of documents filed with the SEC

---

[4] The Complaint alleges that Hong Yu, who Bit Digital hired as Chief Strategy Officer just two weeks after acquiring XMAX, was an original investor in XMAX. Compl. ¶ 128. The screen shot Defendants seek to offer in Exhibit A post-dates Bit Digital's acquisition of XMAX and provides no information that would allow the Court to conclude that Hong Yu was not affiliated with XMAX.

[5] *See, e.g.*, *Resideo*, 2021 WL 1195740, at *3 (declining to take judicial notice of extrinsic exhibits attached to defendants' motion to dismiss "because the parties dispute the relevance and accuracy of these exhibits, and these exhibits are not needed to address Defendants' motion to dismiss.").

in deciding a motion to dismiss under Rule 12(b)(6), courts may take judicial notice "only to determine what the documents stated," and "not to prove the truth of their contents." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 74-75 (S.D.N.Y. 2015). But Defendants here offer the Form Contract to ask the Court to adopt an inference they believe supports their position. *See* Opp. at 6 ("the fact of the disclosure itself is sufficient to establish that, when read in context, Bit Digital's 'Property and Equipment' disclosure does not corroborate the second-hand, anonymously-sourced claim that Bit Digital did not have operations in China."). This is improper, particularly where the Form Contract is blank, is not mentioned anywhere in the SEC filing to which it is attached, and offers no information about any agreements Bit Digital did or did not have with any third parties. *See Karg v. Transamerica Corp.*, 2019 WL 3938471, at *6 (N.D. Iowa Aug. 20, 2019) ("even if the Court takes judicial notice of defendants' SEC filings . . . it may not rely on defendants' opinions about what proper inferences should be drawn from them."). Furthermore, the exception that courts may consider extrinsic documents integral to or relied on in the complaint, is inapplicable here. The integral documents exception "seeks to prevent [] the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Trevena*, 482 F. Supp. 3d at 327 (internal quotations omitted). While the blank Form Contract provides no actual information, Plaintiff did not seek to create a distorted record by excluding the Form Contract from the Complaint. The Court should therefore decline to consider the Form Contract in deciding Defendants' Motion to Dismiss.

## CONCLUSION

Lead Plaintiff asks the Court to strike the Disputed Exhibits and references and arguments based on them or, in the alternative, convert Defendants' motion to a motion for summary

judgment and allow Lead Plaintiff to conduct all reasonable and necessary discovery relating to XMAX and Defendants' purported bitcoin mining operations.

April 1, 2022

Respectfully submitted,

/s/ Jacob A. Walker
Jacob A. Walker, *pro hac vice*
Jeffrey C. Block
Nathaniel Silver
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com
nate@blockleviton.com

*Counsel to Lead Plaintiff and*
*Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Court's Electronic Mail Notice List.

/s/ Jacob A. Walker
Jacob A. Walker
