**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: BIT DIGITAL, INC. SECURITIES LITIGATION<br><br>This document relates to:<br><br>All Actions | Lead Case No. 1:21-cv-00515-ALC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jacob A. Walker, *pro hac vice*
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600
jeff@blockleviton.com
jake@blockleviton.com

*Attorneys for Lead Plaintiff and the Proposed Class*

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     PROCEDURAL HISTORY AND CLAIMS ...........................................................2

III.    ARGUMENT ...........................................................................................................4

    A.  Applicable Law Favors and Encourages Settlements .............................................4

    B.  The Court Should Preliminarily Approved the Proposed Settlement .....................4

        1.  The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations........................................................................................................6

        2.  The Proposed Settlement Has No Obvious Deficiencies and is Well Within the Range of Reasonableness ...................................................................................7

        3.  The Proposed Settlement Does Not Unjustly Favor Any Class Member ...........9

    C.  The Proposed Settlement Class Satisfies Rule 23 ...................................................9

        1.  The Settlement Class Satisfies Numerosity......................................................10

        2.  The Settlement Class Satisfies Commonality....................................................10

        3.  The Class Representative and Settlement Class Satisfy Typicality .................11

        4.  The Class Representative Satisfies Adequacy...................................................12

        5.  Common Questions of Law and Fact Predominate ...........................................13

        6.  A Class Action is Superior to Other Methods of Adjudication........................14

    D.  The Proposed Form and Manner of Notice to the Class is Appropriate ..............14

    E.  Proposed Schedule................................................................................................16

IV.    CONCLUSION ......................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
512 U.S. 591 (1997) ...................................................................................10, 13, 14

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d. Cir. 2015) ................................................................................6

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1972) ................................................................................6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ...................................................................................11

*Chatelain v. Prudential-Bache Securities, Inc.*,
805 F.Supp. 209 (S.D.N.Y. 1992) ............................................................................6

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1975) .....................................................................................5

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................6, 15

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .....................................................................................10

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ...................................................................................10

*Dietrich v. Bauer*,
192 F.R.D. 119 (S.D.N.Y. 2000)..............................................................................10

*Goldman Sachs Group Inc. v. Arkansas Teacher Ret. Sys.*,
141 S.Ct. 1951 (2021) ...............................................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F.Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ...................8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014)..............................................................................10

*In re Citigroup Inc. Sec. Litig.*,
965 F.Supp.2d 369 (S.D.N.Y. 2013) .........................................................................4

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ...............................................................................12

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ......................................................................4, 10

*In re Marsh & McLennan Companies Inc., Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................11

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
319 F.R.D. 230 (S.D.N.Y. 2015) .......................................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) .......................................................................11

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .........................................................................11

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .........................................................................13

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...................................................15

*Pa. Ave. Funds v. Inyx Inc.*,
2011 WL 2732544 (S.D.N.Y. July 5, 2011) ......................................................10

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ..............................................................................13

*Shapiro v. JPMorgan Chase& Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ....................................................................4, 6, 8, 15

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ................................................................................10

**Statutes**

15 U.S.C. § 78u-4(a)...........................................................................................15

**Other Authorities**

Jason Hsu, Judgment Unenforceability in China,
19 Fordham J. Corp. & Fin. L. 201 (2013)..................................................................8

**Rules**

Fed. R. Civ. P. 23(c) ...............................................................................................14

Fed. R. Civ. P. 23(a) ......................................................................................10, 11, 12

Fed. R. Civ. P. 23(b) ............................................................................................13, 14

Fed. R. Civ. P. 23(e) ..............................................................................................4, 5, 9

## I.       PRELIMINARY STATEMENT

Lead Plaintiff Joseph Franklin Monkam Nitcheu ("Lead Plaintiff") on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of his Motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Class Action Settlement dated October 12, 2022 ("Stipulation")[1]; (ii) provisional certification of the Class to carry out the Settlement; (iii) approval of the proposed Notice to the Class; (iv) authorization to retain Kroll Settlement Administration as the Claims Administrator; and (v) scheduling a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

This is an Action alleging violations of federal securities laws over a short, 14-trading-day class period. Amended Complaint at ¶ 1. The Action alleges that Bit Digital misled investors as to its bitcoin mining operations, including the circumstances under which it entered the bitcoin mining industry, the legality of its operations in China, and the extent of its operations. Amended Complaint at ¶¶ 121 – 138. J Capital Research issued a report on January 11, 2021 describing an in-depth investigation into Bit Digital's bitcoin mining operations in China. The J Capital Report alleged Bit Digital was a fraud and Bit Digital stock price fell 25 percent in response. Amended Complaint at ¶¶ 8 – 9.

The Settlement, as set forth in the Stipulation, provides for the payment of $2,100,000 in cash for the benefit of the Class. Lead Plaintiff submits that the Settlement represents an excellent result for the Class and ultimately should be approved by the Court, especially when viewed in the

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached to the Declaration of Jacob A. Walker, dated October 18, 2022 as Exhibit 1.

light of the substantial challenges facing the Class: the Court would have to deny Defendants' pending motion to dismiss; Defendants would assert price impact arguments in an attempt to deny class certification; and they would seek summary judgment claiming the class could not establish loss causation. Finally, Bit Digital has no applicable directors and officers liability insurance making the collectability of any potential judgment, should the class prevail in this action, highly risky.

## II.      PROCEDURAL HISTORY AND CLAIMS

This case, pending before the Honorable Andrew L. Carter in the United States District Court for the Southern District of New York, was filed on behalf of a class of all investors who purchased or otherwise acquired Bit Digital common stock between December 21, 2020, and January 11, 2021, inclusive ("Class Period").

The initial complaint was filed on January 20, 2021, alleging violations of § 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated under it.  ECF No. 1.  It was filed on behalf of a class of all investors who purchased or otherwise acquired Bit Digital common stock during the Class Period.  *Id.*

On April 29, 2021, the Court appointed Lead Plaintiff and the firm Block & Leviton LLP as Lead Counsel. ECF No. 21.

On July 6, 2021, Lead Plaintiff filed the Consolidated Class Action Complaint For Violations of the Federal Securities Laws ("Amended Complaint"), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder. ECF No.24.

On October 29, 2021, Lead Plaintiff, Defendants, and the Court held a pre-motion conference to discuss Defendants' then pending Motion to Dismiss and the possibility of pre-

Motion to Dismiss settlement discussions. ECF. No. 37.

On December 10, 2021, Defendants moved to dismiss the Amended Complaint. ECF No. 40. Lead Plaintiff filed his opposition on December 10, 2021. ECF No. 43. Defendants filed their reply on December 17, 2021. ECF No. 46.

On August 12, 2022, the Settling Parties filed a joint Letter advising the Court that the Settling Parties had reached an agreement in principle to settle all claims in the Action. ECF No. 61. On August 16, 2022, the Court issued an Order denying the Motion to Dismiss without prejudice in light of the Settlement.

Lead Plaintiff believes that the claims asserted in the Action have merit. That said, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial. Lead Plaintiff and Lead Counsel have also considered the uncertain outcome and risks in connection with Defendants' Motion to Dismiss (including whether the J Capital report can be considered a corrective disclosure and the extent to which Plaintiff can rely on the report), Defendants' anticipated opposition to a motion for class certification (where Defendants were likely to challenge the price impact of the J Capital report—the only corrective disclosure alleged in the complaint), Defendants' anticipated motion for summary judgment (where Defendants would have likely challenged loss causation), and persuading a jury at trial, especially in complex matters such as this Action, as well as the risks posed by post-trial motions, and anticipated appeals from the determination of those motions, or a jury verdict. Lead Plaintiff and Lead Counsel are also aware of the risks presented by the defenses of the securities law violations asserted in the Action.

Finally, Lead Plaintiff and Lead Counsel have been advised that Defendants carry no directors and officers liability insurance for the claims asserted under the Amended Complaint,

further complicating the potential of recovery for the Class. Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Class given the circumstances presented here. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of the Class, and is fair, reasonable, and adequate.

## III.   ARGUMENT

### A.   Applicable Law Favors and Encourages Settlements

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). The settlement of class action litigation is "encouraged by the courts and favored by public policy." *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 – 117 (2d Cir. 2005); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009) ("a court should be mindful of the strong judicial policy in favor of settlements, especially in the class action context") (internal quotations omitted). Courts also consider the likely future course of litigation and "the more complex, expensive, and time-consuming future litigation, the more beneficial settlement becomes." *In re Citigroup Inc. Sec. Litig.*, 965 F.Supp.2d 369, 381 – 382 (S.D.N.Y. 2013).

### B.   The Court Should Preliminarily Approve the Proposed Settlement

Judicial approval of a class action settlement is a two-step process. First, the court conducts a preliminary review of the terms of the proposed settlement, and the proposed notice of approval to be given to the class. Fed. R. Civ. P. 23(e)(1). Second, once notice has been given to the class, the court conducts a hearing into whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e) a court should grant preliminary approval where it finds it will "likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). Courts should preliminarily approve settlement in those cases where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted)

On final approval, Rule 23(e)(2) provides that the court consider whether:

> The class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account; (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)[2]. The proposed Settlement qualifies under these standards and should be preliminarily approved.

---

[2] Courts in the Second Circuit also consider the *Grinnell* Factors on final approval. These overlap in large part with those factors found in Rule 23(e): "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a great judgment; (8) the range of reasonableness of the settlement fund in the light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1975); *see* Fed. R. Civ. P. 23(e)(2) Advisory Committee Note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by a Court of Appeals).

1.      **The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations**

As described above, the Settlement was only reached after more than one and a half years of litigation including several months of negotiation by counsel. The fact the settlement was reached through arm's-length negotiation between experienced, informed counsel strongly supports the conclusion the settlement is fair. *See Wal-Mart*, 396 F.3d at 116.

The Parties and their counsel have engaged in vigorous litigation since the Action was first filed on January 20, 2021. Lead Counsel thoroughly investigated the underlying facts of the case and drafted and filed an extensive Amended Complaint. Thereafter, Defendants filed a Motion to Dismiss that was pending at the time this case was resolved. The Settlement was only reached after a detailed process of analyzing the claims and the many challenges associated with litigating those claims to trial.

Lead Counsel, which has extensive experience prosecuting securities class actions around the country and within this District, strongly believe this Settlement is in the best interests of the Class. Courts give great weight to the recommendations of counsel, as they are the ones most closely acquainted with the facts of the litigation. *Chatelain v. Prudential-Bache Securities, Inc.*, 805 F.Supp. 209, 212 (S.D.N.Y. 1992) (citing *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972). Defendants have been vigorously represented by Kagan, Caspersen & Bogart PLLC throughout the litigation. Because the Settlement comes from serious, informed, and non-collusive negotiations among experienced counsel, it is well suited for preliminary approval. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d. Cir. 2015) (finding an "initial presumption of fairness and adequacy applies" where Settlement was a result of arm's length negotiations "by experienced, fully-informed counsel").

**2.     The Proposed Settlement Has No Obvious Deficiencies and is Well Within the Range of Reasonableness**

The proposed Settlement creates a cash Settlement Fund of $2.1 million. This represents a certain, direct benefit to Class Members, and Lead Counsel believes this provides an excellent outcome given the significant challenges faced in the Action.

While Lead Plaintiff and Lead Counsel believe that the claims asserted here are meritorious, they recognize the Action presented substantial risks. *First*, the Amended Complaint had yet to survive a motion to dismiss, and Defendants raised arguments about whether the J Capital report can serve as a corrective disclosure, as well as to what extent Lead Plaintiff could rely on it in making his own allegations that Defendants engaged in securities fraud. *Next*, even if successful, Lead Plaintiff would have been required to overcome arguments at class certification about the price impact of the J Capital report—the only corrective disclosure alleged in the case. *See Goldman Sachs Group Inc. v. Arkansas Teacher Ret. Sys.*, 141 S.Ct. 1951, 1963 (2021). We understand Defendants intended to argue that the timing of the issuance of the report and other simultaneous market factors at the time of the drop in the price of Bit Digital common stock would have negated any price impact from the publication report. *Third*, similar challenges to Lead Plaintiff's ability to prove loss causation would have to be overcome at summary judgment. *Finally,* even were Lead Plaintiff successful in all these potential challenges, Defendants' lack of a directors and officers insurance policy covering the Class Period created the very real chance of recovering nothing for Class Members at all, even after successfully litigating the case through trial.

Although Lead Plaintiff's damages expert has calculated maximum potential damages at roughly $123 million, there was a real risk the Class could recover nothing at all if Defendants' arguments were successful.

Plus, even if Lead Plaintiff succeeded in proving every element of the Action and winning a judgment in his favor at trial, Defendants have advised Lead Plaintiff that they do not have an officers and directors insurance policy for events during the Class Period. Bit Digital is a Cayman Island's holding company. The Individual Defendant is a Chinese national with no known U.S. assets. Even with a judgment in Lead Plaintiff's favor, recovery for the Class would be challenging given the well-known issues with enforcing U.S. monetary judgments within the People's Republic of China against Chinese nationals.[3]

While Lead Plaintiff believes in the merits of the Action, he recognizes that success was far from guaranteed and would come only after protracted and costly litigation. Even if successful, concrete recovery for the class would be another challenge that has the potential to functionally nullify any success in litigation. In light of the risks of continued litigation and challenges in recovery after litigation, the $2.1 million Settlement represents an excellent result that provides immediate, certain benefit to Class Members and is free of obvious deficiencies. *See Wal-Mart*, 396 F.3d at 119 ("There is a range of reasonableness with respect to a settlement . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion"); *See also In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)

-------

[3] China and the U.S. have not ratified a treaty to create reciprocity in the enforcement of judgments. To enforce a judgment against a Chinese national, a party must retain a Chinese attorney, translate all relevant filings into Chinese, and file the case in an intermediate court in the proper geographic district of China. They must do this without the benefit of Chinese authorities aiding in locating the defendants in order to effectuate service of process, or identify the appropriate court to file a case in. Even when this process is completed in accordance with Chinese procedures, enforcement of U.S. monetary judgments is exceedingly rare. *See* Jason Hsu, Judgment Unenforceability in China, 19 Fordham J. Corp. & Fin. L. 201 (2013)

(adequacy of a settlement is judged "not in comparison with recovery in best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiff's case")

### 3. The Proposed Settlement Does Not Unjustly Favor Any Class Member

The proposed Settlement does not grant preferential treatment to any member of the Class. The $2,100,000 recovery constitutes a significant and certain benefit to class members. The Plan of Allocation provides for the distribution of the Net Settlement Fund to Authorized Claimants who submit a timely and valid claim form showing a loss on their transactions in Bit Digital securities in the Class Period. Lead Plaintiff's damages expert was consulted in creating a formula for apportionment of the Net Settlement Fund on a *pro rata* basis. Because all Class Members are treated the same and provided a simple *pro-rata* distribution from the Net Settlement fund, the Allocation Plan is a fair and reasonable method of allocating the Net Settlement Fund to Authorized Claimants.

### C. The Proposed Settlement Class Satisfies Rule 23

When determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed settlement class for purposes of Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Class is defined in the Stipulation as:

> [A]ll Persons who purchased Bit Digital common stock between December 21, 2020 and January 11, 2021, inclusive.[4]

---

[4] Excluded from the Class are Defendants and their families, the officers, directors, and affiliates, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.  The foregoing exclusion shall not cover Investment Vehicles.

The Second Circuit has repeatedly held that certifying a class for a class action settlement is appropriate. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).

Like any certified class, a settlement class must satisfy all requirements of Rules 23(a) but only one of the three requirements of Rule 23(b). *See Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006); *see also Amchem Prods., Inc. v. Windsor*, 512 U.S. 591, 593 (1997) (holding that trial manageability problems are not a consideration when settlement only class certification is requested).

All applicable requirements of Rules 23(a) and (b) are met here.

### 1.    The Settlement Class Satisfies Numerosity

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when a class consists of at least 40 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Plaintiffs need not create a "precise calculation" of the total number of class members, and are allowed to rely on "reasonable inferences drawn from the available facts" when estimating the size of the class. *Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000). Courts in this district have certified plaintiff classes based on the volume of outstanding shares if it indicates more than 40 people had transacted shares during the Class Period. *See Pa. Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011).

Here, Bit Digital common stock was traded on the NASDAQ exchange during the Class Period, and the Company had approximately 48 million shares of common stock outstanding. Numerosity is therefore satisfied.

### 2.    The Settlement Class Satisfies Commonality

Commonality under Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have held securities fraud cases easily satisfy commonality, as such cases allege "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000)(commonality satisfied "where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class.")

Lead Plaintiff has alleged common questions of law and fact which include whether Defendants violated federal securities laws, whether Defendants' SEC filings contained untrue statements of material facts, and whether Defendants SEC filings omitted to disclose material facts required to be stated therein.

As these questions of law and fact are common to all members of the Class, Rule 23(a)(2)'s commonality requirement is satisfied.

### 3.     The Class Representative and Settlement Class Satisfy Typicality

Typicality under Rule 23(a)(3) requires that the claims of the class representative are "typical" of the claims of the class. Fed. R. Civ. P.23(a)(3). In the Second Circuit, typicality is satisfied when the claims of each class member "arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). The claims need not be identical to each other, so long as the proposed class representatives can point to a common "course of conduct" by defendants and members of the class were all subject to the same misstatements and fraudulent conduct. *In re Marsh & McLennan Companies Inc., Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

Lead Plaintiff's claims are typical of the claims of other Class Members. Lead Plaintiff and all Class Members: (i) purchased shares of Bit Digital common stock during the Class Period; (ii) seek recovery for the claims arising out of the same set of facts; and (iii) have substantially similar interests in showing Defendants made material misrepresentations or omitted to disclose material facts required to be stated in their SEC filings. Lead Plaintiff and other Class Members all allege they were damaged by purchases of Bit Digital common stock during the Class Period. The harm to Class Members was all caused by the same course of conduct by Defendants. Typicality is therefore satisfied.

### 4.        The Class Representative Satisfies Adequacy

Under Rule 23 a class representative is deemed to be adequate if they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts in this Circuit evaluate two factors: (i) if the claims of the proposed class representative conflicts with those of the larger class; and (ii) if the representative's counsel are qualified, experienced, and generally able to conduct the litigation. If there is no conflict, and representative's counsel are experienced, qualified, and able to conduct the litigation, adequacy is satisfied. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase& Co.*, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014). Lead Plaintiff satisfies the first element, Lead Counsel satisfies the second, therefore Lead Plaintiff is an adequate class representative.

Lead Plaintiff's claims are aligned with those of the proposed settlement class. Lead Plaintiff was harmed by Defendant's alleged misstatements and omissions in the same manner as the Class. Lead Plaintiff has precisely the same incentives as the Class in maximizing recovery by showing Defendants made false or misleading statements or omitted to disclose information they were required to disclose to investors. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77

(S.D.N.Y. 2006) (no conflict of interest between class representative and class members "where plaintiffs and class members share common goal of maximizing recovery").

Lead Plaintiff's counsel is also qualified, experienced, and capable. Block & Leviton LLP is highly experienced in class action securities litigation and from the outset has shown the willingness and ability to prosecute this action vigorously. *See* Declaration of Jacob A. Walker dated October 18, 2022, Ex. 2 (B&L Firm Resume).

Therefore, with Lead Plaintiff and the Class sharing identical interests, and Block & Leviton being experienced, capable counsel, who have pursued this litigation vigorously, adequacy is satisfied.

### 5.    Common Questions of Law and Fact Predominate

Under Rule 23, class certification is allowed in those circumstances where "questions of law or fact common to class members predominate over any questions affect[ing] only individual members[.]" Fed. R. Civ. P. 23(b)(3). In the Second Circuit, class-wide issues of law and fact predominate where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has explained that in cases based on misrepresentations or omissions under federal securities laws "predominance is a test readily met." *Amchem*, 521 U.S. at 620.

The core factual and legal questions here are common to all Class Members and the same as all securities fraud class actions: (i) was there an untrue statement made or omission of required disclosure by Defendants?; and (ii) was the misstatement or omission objectively material? *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 319 F.R.D. 230, 238 (S.D.N.Y. 2015).

As the questions of law and fact are common between class members and predominate over any individual questions, predominance is satisfied.

### 6.     A Class Action is Superior to Other Methods of Adjudication

Rule 23 also establishes several factors for courts to use in determining whether class action litigation is superior to individual actions:

> "(A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulty in managing a class action."

Fed. R. Civ. P. 23(b)(3).

First, as this is a request for class certification for purposes of a settlement only, the Supreme Court has held that the Court need not examine any potential problems with case management. *See Amchem*, 521 U.S. at 620. Next, there is no evidence that putative Class Members desire to bring individual actions. Finally, it is desirable to concentrate the claims in this Court, as Bit Digital common stock trades on the NASDAQ exchange, located in this District. The Court is also already familiar with the factual and legal issues here.

As a result, all the requirements of Rule 23(a) and (b) are satisfied and there are not issues that prevent the Court from certifying the Class for purposes of the settlement, appointing Lead Plaintiff the class representative, and appointing Lead Counsel as counsel for the Class.

### D.     The Proposed Form and Manner of Notice to the Class is Appropriate

Rule 23(c)(2)(B) requires a settlement to be noticed by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Civ. P. 23(c)(2)(B). As outlined in the Settlement, Defendants will provide to the Claims Administrator a list of names and addresses of holders of record of Bit Digital

common stock during the Class Period on the transfer agent's books in an electronic format acceptable to the Claims Administrator. The Claims Administrator shall then mail to all shareholders of record identified the Postcard Notice substantially in the form of Exhibit A-1. The Notice will direct all prospective Class Members to a website created by the Claims Administrator for the Case that will contain information about the Settlement, the Notice, and the Proof of Claim and Release Form, substantially in the form of Exhibit A-2, along with instructions on how to submit a Claim Form, an objection, or a request for exclusion from the Settlement. The Postcard will also provide a toll-free number where members of the Class can request a full Notice and Claim Form be mailed to them. Further, substantially in the form of Exhibit A-3, the Notice will be published once over a national newswire service.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains all the information required by Rule 23(c)(2)(B), S.D.N.Y. Local Rule 23.1, and the PSLRA, and will serve to "apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Lead Plaintiff requests the notice procedures be approved.

The proposed Claims Administrator is Kroll Settlement Administration. Lead Counsel distributed a request for proposal and received bid proposals from six potential settlement administrators. Lead Counsel ultimately selected Kroll as they submitted the most competitive bid. Lead counsel respectfully requests that the Court authorize Kroll as the Claims Administrator.

### E.    Proposed Schedule

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following procedural schedule for the Court's consideration. The proposed Notice Order includes blank dates that must be established by the Court to properly bring about the Settlement. The Settling Parties present the following general timeline:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Class Members ("Notice Date") | No later than 20 business days after the entry of the Preliminary Approval Order |
| Deadline for published summary notice over newswire | No later than 10 business days after the Notice Date |
| Deadline for final approval papers | 30 calendar days before the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections | 7 calendar days before the Final Approval Hearing |
| Deadline for filing reply papers | 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing | At least 100 calendar days after the entry of the Preliminary Approval Order |
| Deadline for submitting Proof of Claim and Release Forms | No later than 120 calendar days after the Notice Date |

The Court need only schedule a Settlement Hearing at least 100 days after granting preliminary approval; all other deadlines stem from those two dates. If this schedule is not convenient for the Court, Lead Plaintiff requests that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all parties sufficient time to comply with the proposed Preliminary Approval Order.

## IV.    CONCLUSION

Lead Plaintiff requests that the Court grant the unopposed Motion.

October 24, 2022

/s/ Jacob A. Walker
Jeffrey C. Block
Jacob A. Walker, *pro hac vice*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Attorneys for Lead Plaintiff*
*and the Proposed Class*