**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: BIT DIGITAL, INC. SECURITIES LITIGATION<br><br>    This document relates to:<br><br>    All Actions | Lead Case No. 1:21-cv-00515-ALC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jacob A. Walker, *pro hac vice*
Sarah E. Delaney
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com

*Attorneys for Lead Plaintiff and the Class*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   FACTUAL AND PRODECURAL BACKGROUND ........................................... 2

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL............................. 3

    A.    APPLICABLE LAW FAVORS AND ENCOURAGES SETTLEMENTS ............ 3

    B.    THE SETTLEMENT MUST BE PROCEDURALLY AND SUBSTANTIVELY
        FAIR, REASONABLE,  AND ADEQUATE ......................................................... 3

    C.    THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR,
        REASONABLE, AND ADEQUATE .................................................................... 5

      1.    The Settlement Satisfies the Requirements of Rule 23(e)(2) .................................. 5

        a.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ............ 5

        b.    The Proposed Settlement is the Product of Serious, Informed, Non-Collusive
            Negotiations ........................................................................................................ 6

        c.    The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and
            Delays of Trial and Appeal ................................................................................ 7

        d.    The Proposed Method for Distributing Relief is Effective ................................... 10

        e.    Lead Counsel's Request for Attorneys' Fees is Reasonable ................................. 10

        f.    The Parties Have No Other Agreements ................................................................. 11

        g.    The Settlement Ensures Class Members Are Treated Equitably .......................... 11

      2.    The Proposed Settlement Satisfies the Remaining Grinnell Factors ...................... 11

        a.    The Lack of Objections to Date Supports Final Approval .................................... 11

        b.    Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding
            the Settlement ....................................................................................................... 12

i

    c.  Defendants' Ability to Withstand a Greater Judgement......................................... 13

    d.  The Proposed Settlement Amount is Reasonable in View of the Best Possible

        Recovery and the Risks of Litigation .................................................................... 13

IV.  THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE............................................. 14

V.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR
    PURPOSES OF EFFECTUATING THE SETTLEMENT.................................................... 16

VI.  NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE
    23 AND DUE PROCESS................................................................................................... 17

VII. CONCLUSION ................................................................................................................ 19

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ................................................................. 14

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................................... 16

*Charron v. Pinnacle Grp. NY LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ......................................................... 8

*Charron v. Wiener*,
731 F.3d 241 (2d. Cir. 2013) ....................................................................... 8

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 .............................................................................. 10, 18

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................... 14, 16

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .......................................................................... 6

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......................................................................... 5

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................ 1, 4, 9

*Goldman Sachs Group Inc. v. Arkansas Teacher Ret. Sys.*,
141 S.Ct. 1951 (2021) ............................................................................... 10

*In re Agent Orange Prod. Liab. Litig.*,
597 F.Supp. 740 (E.D.N.Y. 1984) ....................................................... 12, 17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171, 174 (S.D.N.Y. 2014) ........................................... 3, 8, 18, 20

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation* ,
909 F. Supp. 2d at 267 ......................................................................... 15, 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) .............................................. 6

*In re Citigroup Inc. Sec. Litig.*,
965 F.Supp.2d 369 (S.D.N.Y. 2013)............................................................. 3

*In re Facebook, Inc., IPO Securities and Derivative Litigation,*
343 F. Supp. 3d 394 (S.D.N.Y. 2018).................................................... 14, 17

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................... 5, 15, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................... 15

*In re IMAX Securities Litigation*,
283 F.R.D.178 (S.D.N.Y. 2012) .............................................................. 18

*In re Loop Indus., Inc. Sec. Litig.*,
No. 7:20-CV-08538-NSR, 2023 WL 127294 (S.D.N.Y. Jan. 5, 2023) ....................................... 23

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................. 21

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)......................................................... 5

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................. 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y July 21, 2020) ......................................... 7, 18

*In re Sony SXRD Rear Projection Television Settlement Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................. 16

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)......................................... 14, 20

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................... 11

*Martignago v. Merrill Lynch & Co.*, Inc.,
2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013) ........................................... 15

*McMahon v. Olivier Cheng Catering and Events, LLC*,
2010 WL 2399328 ................................................................................................ 8, 10

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)................................................................................. 17

*Padro v. Astrue*,
2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ...................................................... 22

*Pearlstein v. BlackBerry Ltd.*,
No. 13-cv-7060-CM-KHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................ 9, 11, 17, 19

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019) ......................................................... 6

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
No. 01-CV-11814-MP, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................... 11

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................ 5

*Torretto v. Donnelley Fin. Sols., Inc.*,
No. 1:20-CV-02667-GHW, 2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) ................... 14, 22

*Vargas v. Capital One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ............................................................................ 21

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)................................................................................... 20

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ......................................................... 5, 14

**RULES**

Fed. R. Civ. P. 23(e)(2).................................................................................... passim

## I.   PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Lead Plaintiff Joseph Franklin Monkam Nitcheu ("Lead Plaintiff"), on behalf of himself and the Class, respectfully submits this memorandum of law in support of his motion for final approval of the $2,100,000 Settlement reached in this Litigation and for approval of the Plan of Allocation.[1]  The terms of the Settlement are set forth in the Stipulation of Class Action Settlement dated October 12, 2022 (ECF No. 68-1) ("Stipulation").  The Court preliminarily approved the Settlement on November 22, 2022.  (ECF No. 69) ("Preliminary Approval Order").

Lead Plaintiff's $2.1 million recovery is the result of a rigorous effort over approximately one-and-a-half years to prosecute this highly contested litigation, and was reached following lengthy arm's-length settlement negotiations by experienced and knowledgeable counsel.  The Settlement represents a very favorable result for the Class under the circumstances and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Lead Plaintiff faced.  Lead Plaintiff's claims centered on misstatements concerning Bit Digital's bitcoin mining business and operations, including statements about: (1) Bit Digital's operations in China; (2) Bit Digital's bitcoin mining machines and the number of miners; and (3) the acquisition of XMAX.  ¶¶71-77, 121-128.[2]  While Lead Plaintiff believes in the merit of his claims,

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Class Action Settlement dated October 12, 2022, which is attached to the Declaration of Jacob A. Walker, dated October 24, 2022, as Exhibit 1.  ECF No 68.
[2] Citations to "¶__" refer to paragraphs of the Amended Complaint.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

1

Defendants presented strong arguments at the motion to dismiss stage that Lead Plaintiff did not adequately plead that the alleged misstatements were materially false or misleading or made with scienter.  As is inherent in all litigation, Lead Plaintiff faced the risk that the Court would grant Defendants' motion to dismiss, which was pending at the time the Settling Parties reached agreement.  Lead Plaintiff and the Class also faced the additional hurdles of class certification, summary judgement, and trial if the Litigation continued.  Even if Lead Plaintiff prevailed in the Litigation, the Class would likely face collection difficulties from Bit Digital due to its lack of applicable directors and officers liability insurance.

Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, including by conducting a significant factual investigation into the merits of the claims, engaging in briefing in connection with Defendants' motion to dismiss, and participating in vigorous settlement negotiations.  Given the risks to proceeding with the Litigation and the recovery obtained, Lead Plaintiff respectfully submits that the $2.1 million Settlement and the Plan of Allocation – which is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    FACTUAL AND PRODECURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Walker Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Litigation, and the risks of continued litigation and the negotiations leading to the Settlement.

## III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Applicable Law Favors and Encourages Settlements

In general, class action settlements are "encouraged by the courts and favored by public policy." *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 – 117 (2d Cir. 2005); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). "[T]he more complex, expensive, and time-consuming future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court" *In re Citigroup Inc. Sec. Litig.*, 965 F.Supp.2d 369, 381-382 (S.D.N.Y. 2013).

### B.    The Settlement Must Be Procedurally and Substantively Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements and provides that courts should consider the following factors when determining whether a class action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which largely overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the Grinnell [F]actors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 310-11 (S.D.N.Y. 2020).

For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate, not every factor need be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "'[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also In re Glob. Crossing Sec. & ERISA*

*Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

Courts have also noted that satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

**C.     The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate**

**1.     The Settlement Satisfies the Requirements of Rule 23(e)(2)**

**a.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Class Members. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y July 21, 2020) ("Lead Plaintiff has claims that are typical of and coextensive with those of other Class Members and had no interests antagonistic to those other Class Members. Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants."). Lead Plaintiff and Lead Counsel have adequately represented the Class by zealously prosecuting this action, including by, among other

things, conducting an extensive investigation of the relevant factual events, drafting a highly detailed amended complaint, opposing Defendants' motion to dismiss, and preparing for and participating in lengthy settlement negotiations. *See generally* Walker Decl. Through each step of the Litigation, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Class. Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

### b. The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

As described above, the Settlement was only reached after approximately one-and-a-half years of litigation, including vigorous negotiation by counsel. The parties began discussing the possibility of settling the Litigation after the Court asked the parties about their respective positions and willingness to engage in such discussions at the November 15, 2021 pre-motion conference. *See* ECF No. 37 at 2-6. The parties began serious settlement discussions in June 2022, which were ultimately concluded following multiple exchanges in August 2022. *See* Walker Decl. ¶23. The fact the Settlement was reached through arm's-length negotiation between experienced, informed counsel strongly supports the conclusion that the Settlement is fair. *See Wal-Mart*, 396 F.3d at 116.

The Settling Parties and their counsel have engaged in vigorous litigation since the action was first filed on January 20, 2021. *See* ECF No. 1. Lead Counsel thoroughly investigated the underlying facts of the case and drafted an extensive amended complaint. *See* ECF No 24. Defendants have been vigorously represented by Kagan, Caspersen & Bogart PLLC throughout the Litigation, and Defendants' motion to dismiss was pending at the time the Settling Parties reached agreement. The Settlement was only reached after a detailed process of analyzing the claims and the many challenges associated with litigating those claims to trial.

Lead Counsel, which has extensive experience prosecuting securities class actions around the country, strongly believe this Settlement is in the best interests of the Class.  It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel."  *See Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at \*4 (settlement was "procedurally fair, reasonable, adequate, and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").  Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### c.  The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth, fifth, and sixth *Grinnell* factors address the substantive fairness of the Settlement in light of the risks posed by continuing litigation.  "[I]n evaluating the settlement of a securities class action, federal courts, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'"  *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060-CM-KHP, 2022 WL 4554858, at \*3 (S.D.N.Y. Sept. 29, 2022) (citation omitted) "Accordingly, '[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.'" *Id.* As set forth below, these factors weigh in favor of final approval.

The proposed Settlement creates a cash settlement fund of $2.1 million. This represents a certain, direct benefit to Class Members, and Lead Counsel believes this provides a great outcome given the significant challenges faced in the Litigation.  While Lead Plaintiff and Lead Counsel believe that the claims asserted in this case are meritorious, they recognize that continued litigation presented substantial risks.  Most notably, the Amended Complaint had yet to survive a motion to dismiss, which was pending at the time the Settlement was reached.  In their motion to dismiss, Defendants raised numerous arguments about the J Capital Report, the only corrective disclosure alleged in the case, including arguments that it cannot properly serve as a corrective disclosure or otherwise be relied upon for Lead Plaintiff's allegations.  *See* ECF Nos. 40-42, 50.

Even if the Court had denied the motion to dismiss, Lead Plaintiff and the Class would have been required to overcome similar arguments about the price impact of the J Capital report at the class certification stage.  *See Goldman Sachs Group Inc. v. Arkansas Teacher Ret. Sys.*, 141 S.Ct. 1951, 1963 (2021).  Defendants would likely argue that the timing of the issuance of the report and other simultaneous market factors at the time of the drop in the price of Bit Digital common stock would have negated any price impact from the publication report.  Even if class certification were granted by the Court, Lead Plaintiff's ability to maintain that status through trial also presented a risk.  Defendants could have moved to decertify the class or trim the class period before trial or on appeal, because class certification may be reviewed at any stage of the litigation. *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).  In general, the "risk of maintaining class status throughout trial … weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

Similar challenges to Lead Plaintiff's ability to prove loss causation would also have to be overcome at summary judgment. Although Lead Plaintiff's damages expert has calculated maximum potential damages at roughly $123 million, there was a real risk the Class could recover nothing at all if any of Defendants' arguments were successful. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."). Even if Lead Plaintiff were to overcome these potential challenges, Defendants' lack of a directors and officers insurance policy covering the Class Period, as well as their status a foreign company and Chinese national, created the very real chance of recovering nothing for Class Members, even after successfully litigating the case through trial. *See BlackBerry*, 2022 WL 4554858, at *3 ("Moreover, this case involved foreign defendants—a complexity courts have recognized in approving class action settlements.") (citing *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814-MP, 2004 WL 1087261, at *2 (S.D.N.Y. May 14, 2004) (approving settlement where defendant, many witnesses, and documents were located abroad)).

While Lead Plaintiff believes in the merits of the Litigation, success was far from guaranteed and would only have come after protracted and costly litigation. Even if successful, concrete recovery for the Class would be another challenge with the potential to functionally nullify any success in the Litigation. In light of the risks of continued litigation and challenges in recovery after litigation, the $2.1 million Settlement represents a favorable result that provides immediate, certain benefit to Class Members and is free of obvious deficiencies. *See Wal-Mart*, 396 F.3d at 119 ("There is a range of reasonableness with respect to a settlement . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion"); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) (adequacy of a settlement is judged "not in comparison with recovery in best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiff's case").

### d.   The Proposed Method for Distributing Relief is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement.   Pursuant to the Preliminary Approval Order, Kroll mailed the Postcard Notice to potential Class Members, caused the Summary Notice to be transmitted over *PR Newswire*, and established a website and toll-free telephone number dedicated to the Settlement.   *See* Declaration of Justin R. Hughes Regarding Notice Dissemination, Publication, and Requests for Exclusion and Objections Received to Date ("Hughes Decl."), ¶¶2, 9, submitted herewith.   Class Members have until February 14, 2023 to object to the Settlement and to request exclusion from the Class.   While the objection and exclusion date has not yet passed, there are no objections to the adequacy of the Settlement to date, and no requests for exclusion from the Class.   *Id.*, ¶14.

### e.   Lead Counsel's Request for Attorneys' Fees is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."   Fed. R. Civ. P. 23(e)(2)(C)(iii).   Consistent with the Notice, and as discussed in Lead Counsel's accompanying fee memorandum, counsel for Lead Plaintiff seeks an award of attorneys' fees in the amount of 25% of the Settlement Amount, and expenses in the amount of $15,902.41, in addition to interest on both amounts, to be paid at the time of award.   As set forth in Lead Counsel's fee memorandum, this request is in line with recent fee awards in this District in similar common-fund cases.

Lead Counsel's fee request is reasonable, and Lead Plaintiff has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments.  Accordingly, this factor supports final approval of the Settlement.

### f.   The Parties Have No Other Agreements

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).  The Settling Parties have no other agreements that require disclosure.

### g.   The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether Settlement Class members are treated equitably.  The proposed Settlement does not grant preferential treatment to any member of the Class.  The $2,100,000 recovery constitutes a significant and certain benefit to Class Members. The Plan of Allocation provides for the distribution of the Net Settlement Fund to Authorized Claimants who submit a timely and valid claim form showing a loss on their transactions in Bit Digital securities in the Class Period.  Lead Plaintiff's damages expert was consulted in creating a formula for apportionment of the Net Settlement Fund on a *pro rata* basis.  Because all Class Members are treated the same and provided a simple *pro rata* distribution from the Net Settlement fund, the Plan of Allocation is a fair and reasonable method of allocating the Net Settlement Fund to Authorized Claimants.

### 2.    The Proposed Settlement Satisfies the Remaining *Grinnell* Factors

### a.   The Lack of Objections to Date Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy[.]'"  *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).  Thus, the "absence of objections may itself be taken as evidencing the fairness of a settlement."  *City of Providence v. Aeropostale, Inc.*, 2014 WL

1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

The deadline to submit objections is February 14, 2023. To date, there have been no objections and no requests for exclusion. Hughes Decl., ¶14. This positive reaction of the Class supports approval of the Settlement. *See Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-02667-GHW, 2023 WL 123201, at *2 (S.D.N.Y. Jan. 5, 2023) ("The favorable response of the Settlement Class Members to the Settlement is an indication of its fairness."); *Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the settlement class "demonstrates that the Class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

### b. Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267; *Martignago v. Merrill Lynch & Co*., Inc., 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement.  As detailed in the Walker Decl., Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation, opposing Defendants' motion to dismiss, and participating in hard-fought settlement discussions with Defendants.  During the negotiations, Defendants' counsel pressed the arguments raised in their motion to dismiss, in addition to further arguments they intended to make if the case were to progress.  Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case. This factor weighs in favor of final approval.

### c.  Defendants' Ability to Withstand a Greater Judgement

This factor is not dispositive when all other factors favor approval.  *See Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011) ("[D]efendants' ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement").  A "defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *In re Sony SXRD Rear Projection Television Settlement Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).  Here, although Bit Digital may have been able to endure a larger judgment, all other factors favor final approval.

### d.  The Proposed Settlement Amount is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  A court need only determine whether the

settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *BlackBerry*, 2022 WL 4554858, at *6 ("A court's 'determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum.'").

Here, because Lead Plaintiff faces "serious challenges to establishing liability, consideration of [his] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). The Settlement represents a recovery of approximately 1.7% of Lead Plaintiff's expert's estimate of maximum possible recoverable damages, an amount roughly equivalent to the median ratios of settlement amounts to investor losses recorded in the past three years. *See* Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (NERA Jan. 25, 2022) at 24, figure 22 (recording median percentages of 1.6 in 2019 and 1.8 in 2020 and 2021).[3]

In sum, the *Grinnell* and Rule 23(e)(2) factors both weigh strongly in favor of the Court's approval of the Settlement.

## IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

_____

[3] Available at: https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf.

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, it must be "fair, reasonable, and adequate." *Signet*, 2020 WL 4196468, at *13. "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.  A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as set forth in the Notice, the Plan of Allocation was prepared with the assistance of Lead Counsel's damages expert, Global Economics Group, and has a rational basis, as it is based on the same methodology underlying Lead Plaintiff's measure of damages: the amount of artificial inflation in the price of Bit Digital common stock during the Class Period. *See BlackBerry*, 2022 WL 4554858, at *8 (approving plan of allocation that "appears to fairly and rationally allocate the proceeds of the Net Settlement Fund among Class Members and comes by the recommendation of experienced Class Counsel").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proof of Claim Forms that are approved for payment from the Net Settlement Fund under the Plan.  The Plan treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim Form, and does not otherwise exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized

Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See* Hughes Decl., Ex. B (Notice).

Lead Plaintiff and Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court.  Indeed, there have been no objections to the Plan of Allocation to date, which further supports approval.  *See Veeco*, 2007 WL 4115809, at *7.

## V.   THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

The Second Circuit has repeatedly held that certifying a class for a class action settlement is appropriate.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).   In the motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proof of Claim Forms, could be issued.  *See* ECF No. 67 at 9-14.  In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) and found that Lead Plaintiff met the requirements for purposes of settlement.  ECF No. 69, ¶¶1-4.  Specifically, in the Preliminary Approval Order, the Court preliminarily certified a Settlement Class of "all Persons who purchased Bit Digital common stock between December 21, 2020 and January 11, 2021, inclusive."  *Id.*, ¶1.[4]   In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.  *Id.*, ¶4.

---

[4] Excluded from the Class are Defendants and their families, the officers, directors, and affiliates, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.  *Id.*

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Rules 23(a) and 23(b)(3), and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.

## VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a class action settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy the requirements of Rule 23(c)(2)(B), S.D.N.Y. Local Rule 23.1, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In accordance with the Preliminary Approval Order, Kroll Settlement Administration ("Kroll"), the Court-approved Claims Administrator, completed distribution of the Postcard Notice, publication of the Summary Notice, and the establishment of

a website and toll-free telephone number dedicated to this settlement.  Hughes Decl., ¶2.  The Postcard Notice directed all prospective Class Members to a website created by Kroll with information about the Settlement, the Notice, and the Proof of Claim and Release Form, along with instructions on how to submit a claim, an objection, or a request for exclusion from the Settlement.  *Id.*, ¶11.  This combination of mailing the Postcard Notice to Class Members, publication of the Summary Notice, and establishment of a website and toll-free telephone numner was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'").

Similar methods of providing notice have been routinely approved for use in securities class actions and other similar class actions.  *E.g., Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-02667-GHW, 2023 WL 123201, at *3 (S.D.N.Y. Jan. 5, 2023) (approving notice plan where "the Settlement Class was notified of the Settlement directly via U.S. Mail, and Claimants were able to submit claims for Out-of-Pocket Losses and Documented or Attested Time either via a Settlement Website or by mail."); *In re Loop Indus., Inc. Sec. Litig.*, No. 7:20-CV-08538-NSR, 2023 WL 127294, at *2 (S.D.N.Y. Jan. 5, 2023) (granting final approval where notice was "implemented in accordance with the Preliminary Approval Order" and included "dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice.").

## VII.    CONCLUSION

The $2.1 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a substantial recovery for the Class under the circumstances, particularly in light of the significant risks associated with continued litigation, including the possibility of no recovery for the Class. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED: February 3, 2023

/s/ Jacob A. Walker
Jeffrey C. Block
Jacob A. Walker, *pro hac vice*
Sarah E. Delaney
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com

*Lead Counsel for Lead Plaintiff and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

  I, Jacob A. Walker, hereby certify that on February 3, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

                    */s/ JACOB A. WALKER*
                     JACOB A. WALKER