**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE: BIT DIGITAL, INC.
SECURITIES LITIGATION

     This document relates to:

     All Actions

---

Lead Case No. 1:21-cv-00515-ALC

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)**


**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jacob A. Walker, *pro hac vice*
Sarah E. Delaney
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com

*Attorneys for Lead Plaintiff and the
Class*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PRODECURAL BACKGROUND................................................ 2

III.    ARGUMENT ................................................................................................. 2

    A.   LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES
         AND EXPENSES FROM THE COMMON FUND................................................ 2

    B.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE
         PERCENTAGE-OF-THE-FUND METHOD......................................................... 6

    C.   THE FEE REQUEST IS REASONABLE WHEN A LODESTAR CROSS-
         CHECK IS APPLIED .......................................................................................... 8

        a.   The Time and Labor Expended by Counsel ..................................................... 10

        b.   The Risks of the Litigation ............................................................................. 11

            i.   The Contingent Nature of Lead Counsel's Representation Supports the
                Requested Fee ............................................................................................. 11

            ii.   Risks of Establishing Liability and Damages ............................................... 13

        c.   The Magnitude and Complexity of the Litigation ............................................ 14

        d.   The Quality of the Representation Supports the Requested Fee....................... 15

        e.   Public Policy Considerations ........................................................................... 16

        f.   The Class' Reaction to the Fee Request to Date Supports the Requested Fee . 17

IV.    COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY FOR
         THE PROSECUTION OF THIS LITIGATION ..................................................... 17

V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15

U.S.C. §78U-4(A)(4) ............................................................................................... 18

VI.   CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................ 16

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 Civ. 4825(JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)........................ 10

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ................................................................................ 3

*Athale v. Sinotech Energy Ltd., et al.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)............................................................. 9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)................................................................................................... 3

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................... 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................... 3

*Chatelain v. Prudential-Bache Sec. Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992)........................................................................... 14

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 .................................................................................................. 14

*Citiline Holdings, Inc. v. iStar Fin., Inc.*,
No. 08-cv-03612 (S.D.N.Y. Apr. 5, 2013) ................................................................ 7

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
No. 1:12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015) ................... 7

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
954 F. Supp. 2d 276 (S.D.N.Y. 2013)........................................................................ 7

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................... 3, 15

*City of Warren Police and Fire Ret. Sys. V. World Wrestling Entm't*,
2021 WL 2736135 (S.D.N.Y. June 30, 2021) ........................................................... 18

*Cornwell v. Credit Suisse Grp.*,
No. 08-cv-03758 (S.D.N.Y. July 18, 2011) ......................................................... 8

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) .......................................................... 4, 5, 8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................... 11

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
2010 WL 4537550 (S.D.N.Y November 8, 2010) ................................................ passim

*Flores v. Anjost Corp.*,
No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014).................................. 5, 8

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................... passim

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019).................... 19

*Hayes v. Harmony Gold Mining Co.*,
509 Fed. App'x 21 (2d Cir. 2013)................................................................... 4

*Hayes v. Harmony Gold Mining Co.*,
No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011).................................. 7

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................ 4, 7

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...................................................................... 13

*In re Ikon Office Solutions, Inc., Securities Litigation*,
194 F.R.D. at 194....................................................................................... 14

*In re Acclaim Entm't, Inc. Sec. Litig.*,
Master File No. 2:03-CV-1270 (E.D.N.Y. Oct. 2, 2007) ............................................ 7

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................... 6, 7, 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................... 14

iv

*In re Bayer AG Sec. Litig.*,
No. 03 Civ. 1546 (WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ................................... 14

*In re BHP Billiton Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)............................................................................. 9

*In re Bisys Sec. Litig.*,
No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...................................... 15

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011).................................... 17

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................ 5, 8, 11

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ................................................................................................. 11

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ............................................................................ 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................. 3

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................ 6, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................................... 18

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................... 13

*In re L.G. Philips LCD Co. Sec. Litig.*,
No. 1:07-cv-00909 (S.D.N.Y. Mar. 17, 2011)........................................................................... 7

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................... 13, 15

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ........................................... 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................................ 4, 5, 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997)..............................................................................11

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ..............................................................18

*In re Sadia S.A. Sec. Litig.*,
No. 08 Civ. 9528, 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011)...........................7, 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)...........19

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................3, 11

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........3, 6, 16, 19

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)........................................................................................................4

*Khait v. Whirlpool Corp.*,
No. 06-cv-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...........................4, 5, 7

*Lopez v. Fashion Nova*,
2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ...............................................................8

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................6, 16

*Martinek v. Amtrust Fin. Servs., Inc.*,
No. 19-cv-8030-KPF, 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022).......................6

*Missouri v. Jenkins*,
491 U.S. 274 (1989)........................................................................................................6

*Monzon v. 103W77 Partners, LLC*,
No. 13 Civ 5951, 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .....................................4

*N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC*,
No. 08-CV-5093 (S.D.N.Y. Nov. 5, 2014)....................................................................9

*Pearlstein v. BlackBerry Ltd.*,
No. 13-civ-7060-CM-KHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .................5

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 13

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999).................................................................................... 5

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................... 4

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).............................. 11, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................. 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................... 4, 5, 8, 9

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)................................. 16

**STATUTES**

15 U.S.C. §78u-4(a)(6) ........................................................................................ 6, 17, 18

## I.      INTRODUCTION

Lead Counsel, having secured a $2.1 million recovery for the benefit of the Class, respectfully applies for an award of attorneys' fees in the amount of 25% of the Settlement Amount and $15,902.41 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts, as well as an award of $5,000 to Lead Plaintiff Joseph Franklin Monkam Nitcheu in connection with his representation of the Class.[1] The Settlement is a great result for the Class given the serious obstacles to recovery, the credible defenses to liability and damages that Defendants have articulated, the fact that the Court might have accepted those arguments at the motion to dismiss stage, and the recovery relative to the amount of estimated recoverable damages suffered by the Class.

As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested award.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Significantly, following the Court-ordered notice program in which Postcard Notice was mailed to potential Class Members, not a single Class Member has objected to the requested fees or the expenses (not to exceed $30,000, as set forth in the Notice) to date.[2]

As detailed below (as well as in the Walker Declaration and Settlement Memorandum), the Settlement achieved here followed intense litigation against determined adversaries, and represents a very favorable result for Lead Plaintiff and the Class, particularly when judged in the context of

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Class Action Settlement dated October 12, 2022, which is attached to the Declaration of Jacob A. Walker, dated October 24, 2022, as Exhibit 1.  ECF No 68.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

[2] As of the date of this fee memorandum, which is before the February 14, 2023 deadline for filing objections, Lead Counsel has not received any objection to the fee and expense request. If any timely objections are received from Class Members, Lead Counsel will address them in its reply brief, which will be filed with the Court no later than February 14, 2023.

the significant litigation risks in this action.  The $2.1 million Settlement that Lead Counsel and Lead Plaintiff obtained provides the Class with an immediate and certain recovery in a case that faced significant risks to establishing falsity, scienter, and loss causation, as well as potential difficulty collecting from Defendants who lacked applicable insurance.  Walker Decl., ¶¶34-40. In achieving this result, Lead Counsel worked over 520 hours over the course of approximately one-and-a-half years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorneys' fee award of 25%, together with payment of litigation expenses, properly reflects the many significant risks taken by Lead Counsel in prosecuting the action, as well as the result achieved.  When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is clear that an award of fees of 25% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the expenses requested by Lead Counsel are reasonable in amount.  Lead Plaintiff's requested award is also reasonable, and adequately reflects his efforts and contributions to the Litigation.

## II.      FACTUAL AND PRODECURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Walker Declaration for a detailed discussion of the factual background and procedural history of the Litigation, as well as the efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Litigation.

## III.     ARGUMENT

### A.      Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

2

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The Second Circuit has also approved this method. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally toward the costs associated with litigation pursued on their behalf. *See id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and to discourage future alleged misconduct of a similar nature. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted).

In addition, private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and

are 'a necessary supplement to [SEC] action.'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).   Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

This Court and many others have found that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that it recovered, is the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate the attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (citing *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded.")); *see Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (Carter, J.).[3]

---

[3] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Hayes v. Harmony Gold Mining Co.*, 509 Fed. App'x 21, 24 (2d Cir. 2013) (unpubl.) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members" and "accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . .") (citation omitted); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011).

In contrast, "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").[4]

The "trend in this Circuit is toward the percentage method." *Whirlpool*, 2010 WL 2025106, at *8.[5]  The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage-of-the-fund method or lodestar method may be used to determine appropriate attorneys' fees); *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by

---

[4] Under the lodestar method, a court first multiplies the number of hours each attorney or paraprofessional spent on the case by each attorney's and paraprofessional's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work.  As discussed herein, in this case, a lodestar cross-check on the requested percentage-of-the-fund fee results in a multiplier of 1.43.

[5] *See also Wal-Mart*, 396 F.3d at 121; *see also Davis*, 827 F. Supp. 2d at 183-85; *Pearlstein v. BlackBerry Ltd.*, No. 13-civ-7060-CM-KHP, 2022 WL 4554858, at *9 (S.D.N.Y. Sept. 29, 2022) (finding that attorneys' fees are properly determined on a percentage-of-recovery basis)*; Payment Card Interchange Fee*, 991 F. Supp. 2d at 440 ("The trend in this Circuit, and the method I adopt here, is a percentage of the fund."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) ("The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.").

the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award attorneys' fees based on a percentage of the fund.

### B.   The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

Here, at 25%, the requested fee is equal to, or less than, the percentage fee awards granted in many other comparable securities class actions within the Second Circuit. *See, e.g., Martinek v. Amtrust Fin. Servs., Inc.*, No. 19-cv-8030-KPF, 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (awarding attorneys' fees in the amount of 33.33% of the $13 million settlement amount);

*In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding one-third of $18.5 million settlement, plus expenses; *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding fees of 30% of $33 million recovery, plus expenses); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 08-cv-03612, slip op. at 1 (S.D.N.Y. Apr. 5, 2013), ECF No. 127 (awarding 30% of $29 million settlement fund); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement fund); *In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909, slip op. at 1 (S.D.N.Y. Mar. 17, 2011), ECF No. 82 (awarding 30% of $18 million settlement fund); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (awarding 25% of $21 million settlement fund); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.); *In re Acclaim Entm't, Inc. Sec. Litig.*, Master File No. 2:03-CV-1270, slip op. at 9 (E.D.N.Y. Oct. 2, 2007), ECF No. 147 (awarding 30% of $13.65 million settlement); *Hicks*, 2005 WL 2757792, at **9-10 (awarding 30% of $10 million settlement fund).

Moreover, courts in this District have recognized that 25% "is an 'increasingly used benchmark.'" *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013) (awarding 25% of $19.5 million settlement fund). The requested 25% fee is also well within the range of percentage fees awarded in other, non-securities, complex class actions within the Second Circuit (including by this Court) further confirming the reasonableness of the requested 25% award. *See, e.g.*, *Whirlpool*, 2010 WL 2025106, at *8 (Carter, J.) (awarding fees of 33% of $9.25 million settlement fund in FLSA case; "Class Counsel's request for 33% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit[,]" citing

other awards of 33%); *Flores*, 2014 WL 321831, at *8 (awarding fees of 1/3 of settlement amount in wage-and-hour case); *Davis*, 827 F. Supp. 2d at 185-86 (awarding fees of 1/3 of $42 million settlement fund in wage-and-hour case).

### C.    The Fee Request Is Reasonable When a Lodestar Cross-Check is Applied

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48. In cases like this, fees representing multiples of the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation, lodestar multipliers between 2 and 5 are commonly awarded. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48 (awarding fee representing a multiplier of 3.41, which was "comparable to multipliers in other large, complex cases"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, ECF No. 117 (S.D.N.Y. July 18, 2011) (awarding fee representing a multiplier of 4.7); *see also Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, '[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.'").

Here, a lodestar cross-check fully supports the requested percentage fee. In this entirely contingent action that raised myriad complex issues, Lead Counsel devoted over 520 hours of attorney and other professional support time in the prosecution and investigation of the Litigation. *See* Fee Decl., Ex. A.  Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $368,020.00.  *See id.*

The requested fee of 25% of the Settlement Amount will equal $525,000 (plus interest), which represents a multiplier of 1.43.  Thus, the 25% fee requested is supported by a lodestar cross-check.[6]  Lead Counsel's requested 25% fee is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this, when calculated as a percentage of the fund, and pursuant to a lodestar cross-check.

### D.    The Relevant *Goldberger* Factors Confirm that the Requested Fee is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses he percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

1.   the time and labor expended by counsel;

2.   the risks of the litigation;

3.   the magnitude and complexity of the litigation;

4.   the requested fee in relation to the settlement;

---

[6] *See, e.g., Wal-Mart Stores*, 396 F.3d at 123 (upholding multiplier of 3.5); *N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC*, No. 08-CV-5093, ECF No. 286 (S.D.N.Y. Nov. 5, 2014) (awarding fees representing 2.27 multiplier); *In re BHP Billiton Sec. Litig.*, 2019 WL 1577313, at *1-*2 (S.D.N.Y. Apr. 10, 2019) (awarding fee representing 2.7 multiplier); *Athale v. Sinotech Energy Ltd., et al.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65, finding it "not unreasonable under the particular facts of this case" and "sufficient to compensate counsel for the work they have put in and the risks they took, as well as to reward them for zealously litigating the dispute and timely resolving the action'").

5.  the quality of representation; and

6.  public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested

fee is fair and reasonable.

### a.  The Time and Labor Expended by Counsel

Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the

Class.  Since the Litigation began in 2021, Lead Counsel and their paraprofessionals devoted over

520 hours to prosecuting the Class' claims.  As detailed in the Walker Declaration, submitted

herewith, counsel, among other things:

- conducted an extensive factual investigation;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted a detailed amended complaint;

- opposed Defendants' motion to dismiss the amended complaint for failure to state a claim;

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally*, Walker Decl.  Moreover, Lead Counsel, with the assistance of its damages expert

Global Economics Group, prepared the proposed Plan of Allocation based primarily on an analysis

estimating the amount of artificial inflation in the price of Bit Digital common stock during the

Class Period. Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided

any unnecessary duplication of effort.  Moreover, additional hours and resources will necessarily

be expended assisting Class Members with the completion and submission of their Proof of Claim

and Release forms, shepherding the claims process, and responding to Class Member inquiries.

*See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825(JLC), 2013 WL 1364147, at

*6 (S.D.N.Y. Apr. 2, 2013).  The significant amount of time and effort devoted to this case by

Lead Counsel to obtain a $2.1 million recovery, work that will not end with the Court's approval
of the Settlement, confirms that the 25% fee request is reasonable.

      **b.   The Risks of the Litigation**

            **i.   The Contingent Nature of Lead Counsel's Representation Supports the
Requested Fee**

      The risk undertaken in the litigation is often considered the most important *Goldberger*

factor. *Goldberger*, 209 F.3d at 54; *Converse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d

at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge,
> when successful, as little as he would charge a client who in advance had agreed to pay for
> his services, regardless of success. Nor, particularly in complicated cases producing large
> recoveries, is it just to make a fee depend solely on the reasonable amount of time
> expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free,

and class actions confront even more substantial risks than other forms of litigation." *Teachers'*

*Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y.

May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this

[contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential*

*Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have

recognized that the attorney's contingent fee risk is an important factor in determining the fee

award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment.

*See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee

award where court failed to account for, among other things, risk of underpayment to counsel).

When considering the reasonableness of attorneys' fees in a contingency action, the court should

consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at

55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this Litigation on a wholly contingent fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation or even the recovery of expenses. Unlike Defendants' Counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began in 2021, and would have received no compensation or payment of their expenses had this case not been resolved successfully.

From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs that a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that they would receive no attorneys' fees at all. Indeed, it is possible that, if not for the Settlement, the

entire case may have been disposed of in response to Defendants' motion to dismiss.[7]  Losses in

contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive.

Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the

requested fee.  *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have

recognized that the risk associated with a case undertaken on a contingent fee basis is an important

factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148

(S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel

should be rewarded for having borne and successfully overcome that risk.").

### ii.  Risks of Establishing Liability and Damages

While Lead Plaintiff remains confident in its claims, its ability to ultimately prove liability

was far from certain.  As detailed in the Walker Declaration and in the Settlement Memorandum,

Defendants raised numerous challenges to Lead Plaintiff's allegations of falsity, scienter, loss

causation, and damages.  Walker Decl., ¶¶34-40.  Even assuming arguendo that Lead Plaintiff was

able to overcome Defendants' motion to dismiss, these arguments would no doubt be raised again

at the summary judgment and trial stages.  Therefore, whether Lead Plaintiff ultimately would

prove liability under the Exchange Act was far from assured.

---

[7]  There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite their diligence and expertise.  *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds).

Moreover, there is no way to know how a jury would decide these issues. The damage assessments of the parties' respective trial experts would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### c. The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia*, 2019 WL 5257534, at *18 ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'"). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described in the Walker Declaration, this Litigation involved a number of difficult and complex questions concerning

liability, loss causation, and damages in a case involving the complex bitcoin mining industry that would have required extensive additional efforts by Lead Counsel in preparing for trial.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 25% fee. *City of Providence*, 2014 WL 1883494, at *16.

### d.  The Quality of the Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submit that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at §III.C.; *see also Flag Telecom*, 2010 WL 4537550, at *28; *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Lead Counsel are experienced securities class action and complex litigation practitioners. *See* Fee Decl., Ex. C. This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial cash recovery in a very difficult case, without the risk of trial. *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g., Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.");

*Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Kagan, Caspersen & Bogart PLLC, who presented skilled defenses and spared no effort in representing their clients. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### e.  Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate [Lead] Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). "Congress, the Executive Branch, and [the Supreme Court], moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013).

Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

16

**f.   The Class' Reaction to the Fee Request to Date Supports the Requested Fee**

In accordance with the Court-approved notice program, the Claims Administrator has sent copies of the Postcard Notice to potential Class Members, informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus expenses not to exceed $30,000, plus interest on both amounts.  The Claims Administrator also caused the Summary Notice to be transmitted over *PR Newswire*, and established a website and toll-free telephone number dedicated to the Settlement.  *See* Hughes Decl. ¶¶2, 9.  The time to object to the fee request expires on February 14, 2023.  To date, however, not a single objection to the fee and expense amounts set forth in the Notice has been received.  The fact that no objections have been received to date supports the fairness of the fee request.

**IV.     COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY FOR THE PROSECUTION OF THIS LITIGATION**

Lead Counsel also respectfully request an award of $15,902.41 in expenses incurred while prosecuting the Litigation.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  Submitted herewith is a declaration regarding these expenses, which are properly recovered by counsel.  *See* Fee Decl., ¶¶3-9.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (counsel in class actions should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.

Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Lead Counsel's expenses include, for example, the costs of hiring a damages expert and consultants, travel, computerized research, and printing.  A complete breakdown by category of the expenses incurred is set forth in the accompanying Fee Declaration.  These expenses were critical to Lead Counsel's success in achieving the Settlement.  *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").  So far, not a single objection to the expense amount set forth in the Notice has been received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.     LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78U-4(A)(4)

Lead Plaintiff seeks approval of an award of $5,000, to be deducted from the Settlement Fund, for time and expenses incurred in representing the Class.  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  Many courts in this District have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class.  *See, e.g., In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500); *City of Warren Police and Fire Ret. Sys. V. World Wrestling Entm't*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.70 to lead plaintiff); *Guevoura Fund Ltd. v.*

*Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *23 (S.D.N.Y. Dec. 18, 2019)

(awarding lead plaintiff "$10,000 in reimbursement for their time.").[8]

As set forth in the Lead Plaintiff Declaration, Lead Plaintiff took an active role in

prosecuting the Litigation, including: reviewing and authorizing filing of the Amended Complaint;

reviewing and evaluating status reports regarding the Litigation; reviewing and considering

pleadings and briefs in the Litigation; consulting with Lead Counsel during the course of the

Litigation regarding case strategy, developments, and efforts to negotiate the Settlement; and

analyzing potential settlement amounts and providing settlement authority.  Lead Plaintiff Decl.,

¶¶3, 7.  Similar activities have been found to support PSLRA awards to class representatives.  *See,*

*e.g., Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit);

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *22

(S.D.N.Y. July 21, 2020) ("Courts in this Circuit routinely award such costs and expenses both to

reimburse the named plaintiffs for expenses incurred through their involvement with the action

and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the

litigation and to incur such expenses in the first place.").

In addition, payment of the award, when combined with Lead Counsel's expenses of

$15,902.41, would not exceed the $30,000 maximum expenses described in the Notice to the Class.

*See* Hughes Decl. Ex. B (Notice).  Accordingly, Lead Plaintiff's requested award is reasonable,

justified under the PSLRA, and should be approved.

---

[8] Congress, in fact, intended to grant courts discretion to grant awards in appropriate cases. *See*
H.R. Rep. No. 104-369, at 6 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for
reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and
[the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at
10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement
for reasonable costs and expenses (including lost wages) directly relating to representation of the
class.").

## VI.      CONCLUSION

Lead Counsel's efforts have yielded a very favorable result for the Class.  Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Amount and expenses in the amount of $15,902.41, plus interest on both amounts, as well as an award of $5,000 to Lead Plaintiff.

DATED: February 3, 2023                         */s/ Jacob A. Walker*
                                                Jeffrey C. Block
                                                Jacob A. Walker, *pro hac vice*
                                                Sarah E. Delaney
                                                **BLOCK & LEVITON LLP**
                                                260 Franklin Street, Suite 1860
                                                Boston, MA 02110
                                                (617) 398-5600 phone
                                                (617) 507-6020 fax
                                                jeff@blockleviton.com
                                                jake@blockleviton.com
                                                sarah@blockleviton.com

                                                *Lead Counsel for Lead Plaintiff and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Jacob A. Walker, hereby certify that on February 3, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ JACOB A. WALKER*
JACOB A. WALKER
